# Greene County

Online Court Records System

Circuit Court

- Home
- Criminal
- Civil
- Print Reports
- Contact

Welcome, Julie Logout

- **Civil**
  - Search by Party Name
  - Search by Case Number
  - Search by Case Reference
- **Court Tools**
  - User Tools

- General
- Party Info
- Filings
- Attorneys
- Fees
- Rule Docket
- Additional Parties

| Date / Time | Party Name | Entry |
|---|---|---|
| Aug 26 2019 - 3:31 PM | | Alias Summons Issued on Purdue Pharma Inc 8/26/2019 |
| Aug 26 2019 - 9:24 AM | | cost bill for fax filing to Larry Montgomery $9.00 |
| Aug 26 2019 - 9:12 AM | | Notice of Special Limited Appearance of Counsel for Defendants Sacklers |
| Aug 23 2019 - 3:53 PM | | CONSENT ORDER EXTENDING TIME TO FILE REPSONSE- BB (CVS Defendants) |

| | |
|---|---|
| Aug 16 2019 - 11:57 AM | Civil Summons Served on CVS Health Corporation |
| Aug 16 2019 - 11:16 AM | Civil Summons Served on Assertio Therapeutics Inc |
| Aug 16 2019 - 10:54 AM | ORDER GRANTING EXTENSION OF TIME TO RESPOND TO COMPLAINT- BB (as to AmerisourceBergen Drug Corporation and Cardinal Health Inc) |
| Aug 16 2019 - 9:46 AM | Civil Summons Served on Amneal Pharmaceuticals Inc |
| Aug 15 2019 - 2:38 PM | Defendant, AmerisourceBergen Drug Corp and Cardinal Consent Motion for Order Extending Time to File Response Defendant, Kroger Co., Kroger Limited Partnership, Walmart, Walmart Stores, and WalGreens Consent Motion for Order Extending Time to File Response |
| Aug 13 2019 - 4:16 PM | Civil Summons Served on Jassen Pharmaceutica Inc F/K/A Janssen Pharmaceuticals Inc 8/13/2019 |
| Aug 13 2019 - 4:10 PM | Civil Summons Served on Kroger Limited Partnership II |
| Aug 13 2019 - 3:46 PM | Civil Summons Served on Johnson & Johnson |
| Aug 13 2019 - 3:43 PM | Civil Summons Served on Abbott Laboratories 8/13/2019 |
| Aug 13 2019 - 3:38 PM | Civil Summons Served on Actavis LLC 8/13/2019 |
| Aug 13 2019 - 3:35 PM | Civil Summons Served on Cephalon Inc |
| Aug 13 2019 - 3:32 PM | Civil Summons Served on CVS Indiana LLC 8/13/2019 |
| Aug 13 2019 - 3:28 PM | Civil Summons Served on Russell Gasdia |
| Aug 13 2019 - 1:33 PM | Civil Summons Served on Teva Pharmaceuticals USA INC |
| | Civil Summons Served on The Purdue Frederick Co |

| | |
|---|---|
| Jul 23 2019 - 10:22 AM | Civil Summons Served on Alicia Naylor |
| Jul 18 2019 - 2:23 PM | Civil Summons Served on Janssen Pharmaceuticals Inc 7/18/2019 |
| Jul 18 2019 - 2:22 PM | Civil Summons Served on Mallinckrodt LLC 7/18/2019 |
| Jul 18 2019 - 2:21 PM | Civil Summons Served on Endo Pharmaceuticals Inc 7/18/2019 |
| Jul 18 2019 - 2:20 PM | Civil Summons Served on Abbott Laboratories Inc 7/18/2019 |
| Jul 18 2019 - 2:19 PM | Civil Summons Served on Wal-Mart Inc 7/18/2019 |
| Jul 18 2019 - 2:18 PM | Civil Summons Served on Wal-Mart Stores East LP 7/18/2019 |
| Jul 18 2019 - 2:17 PM | Civil Summons Served on CVS Pharmacy Inc 7/18/2019 |
| Jul 18 2019 - 2:15 PM | Civil Summons Served on Amerisourcebergen Drug Corporation 7/18/2019 |
| Jul 18 2019 - 1:01 PM | Civil Summons Served on Lowell B Grizzle 7/18/2019 |
| Jul 18 2019 - 12:55 PM | Civil Summons Served on P & S Pharmacy 7/18/2019 |
| Jul 12 2019 - 5:25 PM | Civil Summons Issued on Gregory Madron 7/12/2019 |
| Jul 12 2019 - 5:22 PM | Civil Summons Issued on CVS Pharmacy Inc 7/12/2019 |
| Jul 12 2019 - 5:20 PM | Civil Summons Issued on Alicia Naylor 7/12/2019 |
| Jul 12 2019 - 5:19 PM | Civil Summons Issued on Sharon Naylor 7/12/2019 |
| Jul 12 2019 - 5:18 PM | Civil Summons Issued on Henry Babenco 7/12/2019 |
| Jul 12 2019 - 5:17 PM | Civil Summons Issued on Lowell B Grizzle 7/12/2019 |

| | |
|---|---|
| Jul 12 2019 - 4:57 PM | Civil Summons Issued on Actavis LLC 7/12/2019 |
| Jul 12 2019 - 4:56 PM | Civil Summons Issued on Watson Laboratories Inc 7/12/2019 |
| Jul 12 2019 - 4:55 PM | Civil Summons Issued on Allergan PLC 7/12/2019 |
| Jul 12 2019 - 4:53 PM | Civil Summons Issued on Specgx LLC 7/12/2019 |
| Jul 12 2019 - 4:52 PM | Civil Summons Issued on Mallinckrodt PLC 7/12/2019 |
| Jul 12 2019 - 4:51 PM | Civil Summons Issued on Mallinckrodt LLC 7/12/2019 |
| Jul 12 2019 - 4:50 PM | Civil Summons Issued on Endo Pharmaceuticals Inc 7/12/2019 |
| Jul 12 2019 - 4:49 PM | Civil Summons Issued on Endo Health Solutions Inc 7/12/2019 |
| Jul 12 2019 - 4:48 PM | Civil Summons Issued on Assertio Therapeutics Inc 7/12/2019 |
| Jul 12 2019 - 4:46 PM | Civil Summons Issued on Abbott Laboratories Inc 7/12/2019 |
| Jul 12 2019 - 4:45 PM | Civil Summons Issued on Jassen Pharmaceutica Inc F/K/A Janssen Pharmaceuticals Inc 7/12/2019 |
| Jul 12 2019 - 4:45 PM | Civil Summons Issued on Abbott Laboratories 7/12/2019 |
| Jul 12 2019 - 4:43 PM | Civil Summons Issued on Janssen Pharmaceuticals Inc 7/12/2019 |
| Jul 12 2019 - 4:42 PM | Civil Summons Issued on Cephalon Inc 7/12/2019 |
| Jul 12 2019 - 4:42 PM | Civil Summons Issued on Johnson & Johnson 7/12/2019 |
| Jul 12 2019 - 4:41 PM | Civil Summons Issued on Teva Pharmaceuticals USA INC 7/12/2019 |
| Jul 12 2019 - 4:41 PM | Civil Summons Issued on Teva Pharmaceutical Industries LTD 7/12/2019 |

| | |
|---|---|
| Jul 12 2019 - 4:29 PM | Civil Summons Issued on Purdue Pharma L.P. 7/12/2019 |
| Jul 12 2019 - 4:29 PM | Complaint |
| Jul 12 2019 - 4:00 PM | Civil Case Created |
| Jul 12 2019 - 1:53 PM | Filing Entered: Civil Summons - Filed For Takoma Regional Hospital, Inc F/K/A Takoma Hospital Inc - Filed Against Henry Schein Inc |
| Jul 12 2019 - 1:53 PM | Civil Summons Issued on Henry Schein Inc 7/12/2019 |

Copyright © 2019 Greene County. All Rights Reserved.

CT Corporation

## Service of Process Transmittal

08/05/2019
CT Log Number 535989082

**TO:** Alicia Cautela
Cardinal Health, Inc.
7000 Cardinal Pl
Dublin, OH 43017-1091

**RE:** **Process Served in Ohio**

**FOR:** Cardinal Health, Inc. (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TAKOMA REGIONAL HOSPITAL, INC., ETC., ET AL., PLTFS. vs. PURDUE PHARMA L.P., ET AL., DFTS. // To: Cardinal Health, Inc. |
| **DOCUMENT(S) SERVED:** | Notice, Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Greene County Circuit Court, TN<br>Case # CC19CV295BB |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - Opioid |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Columbus, OH |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 08/05/2019 postmarked on 08/01/2019 |
| **JURISDICTION SERVED :** | Ohio |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons, upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Gary E. Brewer<br>1702 W. Andrew Johnson Hwy<br>Morristown, TN 37816<br>423-587-2730 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/05/2019, Expected Purge Date: 08/10/2019<br><br>Image SOP<br><br>Email Notification, Laura Garza laura.garza@cardinalhealth.com<br><br>Email Notification, David Orensten david.orensten@cardinalhealth.com<br><br>Email Notification, Corey Goldsand corey.goldsand@cardinalhealth.com<br><br>Email Notification, Joshua Stine joshua.stine@cardinalhealth.com<br><br>Email Notification, Alicia Cautela alicia.cautela@cardinalhealth.com<br><br>Email Notification, Mary Donahue mary.donahue@cardinalhealth.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>4400 Easton Commons Way |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

State of Tennessee
Department of State
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks Avenue, 6th Floor
Nashville, TN 37243

CERTIFIED MAIL

7018 0360 0000 7605 8650

U.S. POSTAGE PITNEY BOWES
ZIP 37243 $ 016.45⁰
02 4W
0000336983 AUG 01 2019

CARDINAL HEALTH INC
SUITE 125
4400 EASTON COMMONS WAY
: C/O C T CORPORATION SYSTEM
COLUMBUS, OH 43219

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB

Jury Demanded

STATE OF TENNESSEE, GREENE COUNTY:
I, Chris Shepard, Circuit Court Clerk (Circuit, Criminal, Sessions, Juvenile) do hereby certify that the foregoing is a true and exact copy of the original Summons in the above styled case, as the same appears of record on file in my office.
WITNESS my hand and official seal of office in Greeneville, Tennessee, this 15 of July 2019
[signature]
Circuit Court Clerk

TO THE ABOVE NAMED DEFENDANTS:

TO: Cardinal Health, Inc.
c/o C T Corporation System
4400 Easton Commons Way
Suite 125
Columbus, OH 43219

Method of Service:
TN Department of State
Division of Business Services
Summons Section
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

[signature]
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

RECEIVED
STATE OF TENNESSEE
2019 JUL 29 PM 1:15
TRE HARGETT
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

IN THE CIRCUIT COURT FOR GREENE COUNTY, TENNESSEE
AT GREENVILLE

| | |
|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. F/K/A TAKOMA HOSPITAL, INC., AMISUB (SFH), INC., BAPTIST WOMENS HEALTH CENTER, LLC, CAMPBELL COUNTY HMA, LLC, CLARKSVILLE HEALTH SYSTEM, G.P., CLEVELAND TENNESSEE HOSPITAL COMPANY, LLC, COCKE COUNTY HMA, LLC, DICKENSON COMMUNITY HOSPITAL, HAWKINS COUNTY MEMORIAL HOSPITAL F/K/A HAWKINS COUNTY MEMORIAL HOSPITAL, JEFFERSON COUNTY HMA, LLC, JOHNSTON MEMORIAL HOSPITAL, INC., LEBANON HMA, LLC F/K/A LEBANON HMA, INC., LEXINGTON HOSPITAL CORPORATION, METRO KNOXVILLE HMA, LLC, MOUNTAIN STATES HEALTH ALLIANCE F/K/A JOHNSON CITY MEDICAL CENTER HOSPITAL, INC., NORTHEAST TENNESSEE COMMUNITY HEALTH CENTERS, INC., NORTON COMMUNITY HOSPITAL, SAINT FRANCIS HOSPITAL – BARTLETT, INC. F/K/A TENET HEALTH SYSTEM BARTLETT, INC., SHELBYVILLE HOSPITAL COMPANY, LLC F/K/A SHELBYVILLE HOSPITAL CORPORATION, SMYTH COUNTY COMMUNITY HOSPITAL, TULLAHOMA HMA, LLC F/K/A TULLAHOMA HMA, INC., and WELLMONT HEALTH SYSTEM F/K/A BRMC/HVHMC, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY; RICHARD SACKLER; BEVERLY SACKLER; DAVID SACKLER; ILENE SACKLER LEFCOURT; | No. CC19CV295 BB<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED**<br><br>FILED<br>TIME 9:15 Am<br>JUL 12 2019<br>Chris Sherwood Robbins<br>Circuit Court Clerk |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 2

A. The Opioid Crisis in Tennessee and Southwest Virginia ..... 2

B. The Opioid Crisis Nationally ..... 9

C. The Impact of Opioids on Hospitals ..... 18

D. Financial Impact of Defendants' Activities on Plaintiffs ..... 22

E. The Roles of Defendants in Causing and Perpetuating the Opioid Crisis ..... 25

II. JURISDICTION AND VENUE ..... 28

III. PARTIES ..... 28

A. PLAINTIFFS ..... 28

1. Ballad Health Hospitals ..... 28
2. Henderson County Community Hospital ..... 31
3. Johnson City Community Health and Affiliates ..... 31
4. Saint Francis Hospital - Bartlett ..... 32
5. Saint Francis Hospital - Memphis ..... 32
6. Saint Thomas Hospital for Specialty Surgery ..... 32
7. Tennova Healthcare – Clarksville ..... 32
8. Tennova Healthcare – Cleveland ..... 33
9. Tennova Healthcare – Harton ..... 33
10. Tennova Healthcare – Jefferson ..... 33
11. Tennova Healthcare – LaFollette Medical Center ..... 33
12. Tennova Healthcare – Lebanon ..... 33
13. Tennova Healthcare – Newport Medical Center ..... 34
14. Tennova Healthcare – North Knoxville and Turkey Creek ..... 34
15. Tennova Healthcare - Shelbyville ..... 34

B. DEFENDANTS ..... 34

1. Marketing Defendants ..... 34

a. Purdue ..... 34

b. Teva and Associated Companies ..... 42

c. Janssen and Associated Companies ..... 45

d. Endo and Associated Companies ..... 47

V. THE MARKETING DEFENDANTS' FALSE, DECEPTIVE, AND UNFAIR MARKETING OF OPIOIDS ..... 67

A. The Marketing Defendants' False and Deceptive Statements About Opioids ..... 70

1. Falsehood #1: The Risk of Addiction from Chronic Opioid Therapy is Low ..... 71

a. Purdue and Abbott's Misrepresentations Regarding Addiction Risk ..... 72

b. Endo's Misrepresentations Regarding Addiction Risk ..... 80

c. Janssen's Misrepresentations Regarding Addiction Risk ..... 82

d. Cephalon's Misrepresentations Regarding Addiction Risk ..... 83

e. Mallinckrodt's Misrepresentations Regarding Addiction Risk ..... 84

2. Falsehood #2: To the Extent There is a Risk of Addiction, It Can Be Easily Identified and Managed ..... 86

3. Falsehood #3: Signs of Addictive Behavior are "Pseudoaddiction" Requiring More Opioids ..... 89

4. Falsehood #4: Blaming Addicted Patients as "Untrustworthy" "Abusers" ..... 93

5. Falsehood #5: Opioid Withdrawal Can Be Avoided by Tapering ..... 94

6. Falsehood #6: Opioid Doses Can Be Increased Without Limit or Greater Risk ..... 95

7. Falsehood #7: Long-term Opioid Use Improves Functioning ..... 97

8. Falsehood #8: Alternative Forms of Pain Relief Pose Greater Risks Than Opioids ..... 102

9. Falsehood #9: OxyContin Provides Twelve Hours of Pain Relief ..... 106

10. Falsehood #10: New Formulations of Certain Opioids Successfully Deter Abuse ..... 111

a. Purdue's Deceptive Marketing of Reformulated OxyContin and Hysingla ER ..... 111

b. Endo's Deceptive Marketing of Reformulated Opana ER ..... 115

c. Other Marketing Defendants' Misrepresentations Regarding Abuse Deterrence ..... 120

B. The Marketing Defendants Directly Targeted Hospitals ..... 121

C. The Marketing Defendants Disseminated Their Misleading Messages About Opioids Through Multiple Direct and Indirect Channels ..... 123

a. The Marketing Defendants Focused on Vulnerable Populations 172

b. The Marketing Defendants Focused on Having Opioids Perceived as a "First Line" of Medication for "Opioid-Naïve" Patients, Rather Than as a Last Resort for Cancer Patients and the Terminally Ill ..... 174

2. Increasing Dosages and Increasing Them Quickly to Keep Patients on Longer ..... 175

E. The Marketing Defendants' Scheme Succeeded, Creating a Public Health Epidemic ..... 176

1. The Marketing Defendants Dramatically Expanded Opioid Prescribing and Use ..... 177

2. The Marketing Defendants' Deception in Expanding Their Market Created and Fueled the Opioid Epidemic ..... 179

F. Each of the Marketing Defendants Made Materially Deceptive Statements and Concealed Material Facts ..... 180

1. Purdue ..... 181

2. Endo ..... 186

3. Janssen ..... 188

4. Assertio ..... 189

5. Cephalon ..... 190

6. Actavis ..... 191

7. Mallinckrodt ..... 192

VI. DEFENDANTS THROUGHOUT THE SUPPLY CHAIN DELIBERATELY DISREGARDED THEIR DUTIES TO MAINTAIN EFFECTIVE CONTROLS AND TO IDENTIFY, REPORT, AND TAKE STEPS TO HALT SUSPICIOUS ORDERS ..... 192

A. All Defendants Have, and Breached, Duties to Guard Against, and Report, Unlawful Diversion and to Report and Prevent Suspicious Orders ..... 194

1. Defendants' Use of Trade and Other Organizations ..... 199

a. Pain Care Forum ..... 199

b. Healthcare Distribution Alliance ..... 201

2. Defendants Were Aware of and Have Acknowledged Their Obligations to Prevent Diversion and to Report and Take Steps to Halt Suspicious Orders ..... 206

3. Defendants Kept Careful Track of Prescribing Data and Knew About Suspicious Orders and Prescribers ..... 207

b. Walgreens ..... 270

c. Rite Aid ..... 273

VII. DEFENDANTS' UNLAWFUL CONDUCT AND BREACHES OF LEGAL DUTIES CAUSED THE HARM AND SUBSTANTIAL DAMAGE ALLEGED HEREIN ..... 275

VIII. CONSPIRACY ALLEGATIONS ..... 280

A. Conspiracy Among the Purdue Defendants ..... 280

B. Conspiracy Among the Marketing Defendants ..... 281

C. Conspiracy Among the Marketing Defendants and the Supply Chain Defendants ..... 284

IX. ADDITIONAL FACTS PERTAINING TO PUNITIVE DAMAGES ..... 286

A. The Marketing Defendants Persisted in Their Fraudulent Scheme Despite Repeated Admonitions, Warnings, and Even Prosecutions ..... 287

1. FDA Warnings to Janssen Failed to Deter Janssen's Misleading Promotion of Duragesic ..... 287

2. Governmental Action, Including Large Monetary Fines, Failed to Stop Cephalon From Falsely Marketing Actiq For Off-label Uses ..... 288

3. FDA Warnings Did Not Prevent Cephalon from Continuing False and Off-Label Marketing of Fentora ..... 289

4. A Guilty Plea and a Large Fine did not Deter Purdue from Continuing its Fraudulent Marketing of OxyContin ..... 290

5. Endo Continued to Aggressively Promote Opana After Becoming Aware of Its Widespread Abuse ..... 292

B. Repeated Admonishments and Fines Did Not Stop the Distributor Defendants from Ignoring Their Obligations to Control the Supply Chain and Prevent Diversion ..... 292

X. JOINT ENTERPRISE ALLEGATIONS ..... 294

XI. TOLLING AND FRAUDULENT CONCEALMENT ..... 295

XII. WAIVER OF CERTAIN CLAIMS FOR RELIEF ..... 297

CLAIMS FOR RELIEF ..... 298

FIRST CLAIM FOR RELIEF ..... 298

SECOND CLAIM FOR RELIEF ..... 301

A. Defendants Owed a Duty of Care ..... 301

B. Defendants Breached Their Duty of Care ..... 302

1. Defendants' Conduct, in Violation of Applicable Statutes, Constitutes Negligence *Per Se* ..... 302

> "The opioid epidemic is the deadliest drug crisis in American history, and Appalachia has suffered the consequences more than perhaps any other region," Attorney General William P. Barr announced in a press release on April 17, 2019.[1]

> The decade of the 1990s was the era of the blockbuster drug, the billion-dollar pill, and a pharmaceutical sales force arms race was part of the excess of the time ... A pharmaceutical Wild West emerged. Salespeople stampeded into offices. They made claims that helped sell the drugs to besieged doctors. Those claims also lead years later to blockbuster lawsuits and criminal cases against their companies.[2]

## COMPLAINT

Plaintiffs Takoma Regional Hospital, Inc. f/k/a Takoma Hospital, Inc., AMISUB (SFH), Inc., Baptist Womens Health Center, LLC, Campbell County HMA, LLC, Clarksville Health System, G.P., Cleveland Tennessee Hospital Company, LLC, Cocke County HMA, LLC, Dickenson Community Hospital, Hawkins County Memorial Hospital f/k/a Hawkins County Memorial Hospital, Jefferson County HMA, LLC, Johnston Memorial Hospital, Inc., Lebanon HMA, LLC f/k/a Lebanon HMA, Inc., Lexington Hospital Corporation, Metro Knoxville HMA, LLC, Mountain States Health Alliance f/k/a Johnson City Medical Center Hospital, Inc., Northeast Tennessee Community Health Centers, Inc., Norton Community Hospital, Saint Francis Hospital – Bartlett, Inc. f/k/a Tenet Health System Bartlett, Inc., Shelbyville Hospital Company, LLC f/k/a Shelbyville Hospital Corporation, Smyth County Community Hospital, Tullahoma HMA, LLC f/k/a Tullahoma HMA, Inc., and Wellmont Health System f/k/a BRMC/HVHMC, Inc. (collectively "Plaintiffs") bring this Complaint against Defendants Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company; Richard Sackler; Beverly Sackler; David Sackler;

---

[1] Press Release, U.S. Dep't of Justice, Appalachian Regional Prescription Opioid (ARPO) Strike Force Takedown Results in Charges Against 60 Individuals, Including 53 Medical Professionals (Apr. 17, 2019), https://www.justice.gov/opa/pr/appalachian-regional-prescription-opioid-arpo-strike-force-takedown-results-charges-against

[2] Sam Quinones, Dreamland: The True Tale of America's Opiate Epidemic, 133 (Bloomsbury Press 2015) (hereinafter referred to as "Dreamland").

2. Northeast Tennessee and southwest Virginia, the areas served by Plaintiffs, are among the areas most affected by the opioid epidemic in the country. These areas have been in the center of extremely significant law enforcement efforts by the federal government and state Attorneys General, including a significant criminal case brought against Purdue and its executives in Abingdon, Virginia that resulted in criminal and civil penalties of more than $600 million.

3. On June 27, 2018, Virginia Attorney General Mark R. Herring filed a lawsuit in the Circuit Court of Tazewell County, Virginia, against Purdue Pharma for Purdue's violation of the Virginia Consumer Protection Act. The complaint alleged that Purdue has benefited from an opioid crisis that it helped create and prolong through a decades-long campaign of lies and misrepresentations.[3]

4. On May 14, 2019, Tennessee Attorney General Herbert H. Slatery III brought a case in the Circuit Court of Knox County, Tennessee, against Endo Pharmaceuticals and Endo Health Solutions Inc. for unlawful and false claims that Endo has made about the safety and benefits of its opioid products. The lawsuit alleges that Endo violated the Tennessee Consumer Protection Act and contributed to a devastating public health crisis in Tennessee.[4]

5. The opioid epidemic poses an ongoing crisis in Tennessee and in southwest Virginia. Drug overdoses have become the leading cause of accidental death in Tennessee. From

---

[3] Press Release, Commonwealth of Virginia Office of the Attorney General, Attorney General Herring Sues Purdue Pharma For Lies That Helped Create And Prolong Opioid Crisis (June 27, 2018), https://www.oag.state.va.us/media-center/news-releases/1214-june-27-2018-attorney-general-herring-sues-purdue-pharma-for-lies-that-helped-create-and-prolong-opioid-crisis?highlight=WyJwaGFybWEiXQ.

[4] Press Release, State of Tennessee Office of The Attorney General, Tennessee Attorney General Sues Opioid Maker Endo Pharmaceuticals (May 14, 2019), https://www.tn.gov/attorneygeneral/news/2019/5/14/pr19-14.html.

("PWID"[9]) has consistently increased, even in the face of interventions such as closing "pill mills" and the establishment of a prescription drug monitoring program. The progression from prescription opioids to the use of illicit drugs, particularly injectable heroin, is well documented, with approximately 75% of heroin users reporting that their initial drug use was through prescription.[10]

9. The 110th General Assembly of the Tennessee State Legislature approved new legislation (SB 2257 and HB 1831) to address a significant part of former Governor Bill Haslam's "TN Together" plan to combat the opioid crisis in the state. The new law, signed by former Governor Haslam on May 21, 2018, limits the duration and dosage of opioid prescriptions for new patients, with exceptions. With initial opioid prescriptions limited to a three-day supply, Tennessee now has one of the strictest and most aggressive opioid policies in the nation.[11]

10. In 2017, Virginia's Board of Medicine ordered that, to prevent doctor-shopping, all doctors were to check the drug-monitoring system every time they issued a prescription. This

---

[9] The term "PWID" means "persons who inject drugs" in this complaint. However, in legal jargon, "PWID" is sometimes known as "possession with intent to distribute." That is not the intended meaning here.

[10] Theodore J. Cicero, PhD et al., *The Changing Face of Heroin Use in The United States: A Retrospective Analysis of The Past 50 Years*, JAMA PSYCHIATRY (2014); 71(7):821-826, doi:10.1001/jamapsychiatry.2014.366, *available at* https://jamanetwork.com/journals/jamapsychiatry/fullarticle/1874575.

[11] *Opioid Facts in Tennessee*, THE TENNESSEE ALUMNUS, Fall 2018, *available at* https://1pstnvro9pz4ageywbeh0819me-wpengine.netdna-ssl.com/wp-content/uploads/2018/09/Opioid-Facts-Fall-2018.pdf (hereinafter "*Opioid Facts in Tennessee*").

Widespread drug addiction imposes costs on the community including health care and substance abuse treatment costs – a substantial portion of which were provided by Plaintiffs – as well as other costs borne by the community, increased costs and burdens imposed on the criminal justice system and the costs associated with the lost productivity of addicts.[15]

14. Children have been especially vulnerable to the opioid epidemic. Along with overdose deaths, the number and rate of neonatal abstinence syndrome ("NAS") – a condition suffered by babies born to mothers addicted to opioids – has also increased dramatically in Tennessee and southwest Virginia. In 2017, there were 1,015 NAS births in Tennessee.[16] In east Tennessee, the number of infants born with NAS has skyrocketed, with some counties reporting rates eight times the national average. The number of NAS cases in Virginia rose 11% in a 1-year period, from 741 in 2016 to 819 in 2017.[17] These infants will spend weeks in neonatal intensive care units while they painfully withdraw from the drugs – a process so painful that it traps many adults on opioids. Children are also injured by the removal from their homes due to opioid abuse and addiction.

15. Tennessee and southwest Virginia have seen an increase in blood-borne diseases caused by intravenous drug use, including hepatitis C (HCV) and human immunodeficiency (HIV). Intravenous use of opioids, which has been a particular problem with easy-to-inject Opana

---

[15] Alex Brill & Scott Ganz, *The Geographic Variation in the Cost of the Opioid Crisis*, at 1-4, Am. Enter. Inst. (Mar. 20, 2018), *available at* https://www.aei.org/wp-content/uploads/2018/03/Geographic_Variation_in_Cost_of_Opioid_Crisis.pdf

[16] *Id.*

[17] National Institute on Drug Abuse, Virginia Opioid Summary, (last updated March 2019), *available at* https://www.drugabuse.gov/opioid-summaries-by-state/virginia-opioid-summary.

17. A recent study in 2019, co-authored by economists at the University of Tennessee, found that Tennessee is among the states with the highest number of heavy opioid-prescribing practitioners. On average, providers in Tennessee write 1.4 opioid prescriptions per person per year. At the average dosage per prescription, this rate is equivalent to prescribing 80 opioid doses to every man, woman, and child in Tennessee each year. The researchers emphasized that addressing the opioid epidemic is going to require considerable funding and an increased focus on treatment therapy. In addition to quelling the adverse health effects of the epidemic, they said, there are considerable economic gains to be attained from addressing the core issue of addiction.[22]

18. Across Tennessee and southwest Virginia, families and communities face heartbreaking tragedies that cannot be adequately conveyed by statistics, and they have faced them all too often. Many grieving families have been financially tapped out by the costs of repeated cycles of addiction treatment programs; other have lost hope and given up. The increasing number of cases takes both a physical and mental toll on investigators, first-responders, and hospitals such as Plaintiffs.

**B. <u>The Opioid Crisis Nationally</u>**

19. The United States is in the midst of an opioid epidemic caused by Defendants' unlawful marketing, sale, and distribution of prescription opioids that has resulted in addiction, criminal activity, serious health issues, and the loss of life.[23]

---

[22] Matthew C. Harris et al., *Prescription Opioids and Labor Market Pains: The Effect of Schedule II Opioids on Labor Force Participation and Unemployment*, J. Human Resources 0517-8782R1 (January 10, 2019), doi: 10.3368/jhr.55.4.0517-8782R1, *available at* http://cber.haslam.utk.edu/staff/harris/Opioids_HKMG.pdf.

[23] As used herein, the term "opioid" refers to the entire family of opiate drugs including natural, synthetic, and semi-synthetic opiates.

of Americans who died in the entire Iraq War.[29]

22. According to the CDC, opioid overdoses killed more than 45,000 people, nationally, over a 12-month timeframe that ended in September 2017. It is already the deadliest drug epidemic in American history.[30] If current trends continue, lost lives from opioid overdoses will soon represent the vast majority of all drug overdose deaths in the United States.




Note: Drug overdose data available since 1999. Source: Centers for Disease Control and Prevention | By THE NEW YORK TIMES.[31]

---

[29] U.S. Dep't of Health and Human Services, *What is the U.S. Opioid Epidemic?* (Jan. 2019), https://www.hhs.gov/opioids/about-the-epidemic/index.html; German Lopez, *2017 was the worst year ever for drug overdose deaths in America*, VOX, Aug. 16, 2018, https://www.vox.com/science-and-health/2018/8/16/17698204/opioid-epidemicoverdose-deaths-2017.

[30] The Editorial Board, *An Opioid Crisis Foretold*, THE NEW YORK TIMES, Apr. 21, 2018, https://www.nytimes.com/2018/04/21/opinion/an-opioid-crisis-foretold.html.

[31] *Id.*

25. On October 28, 2017, the President of the United States declared the opioid crisis a public health emergency.[38]

26. This suit takes aim at the primary cause of the opioid crisis: A false narrative marketing scheme, in which the distributors joined and conspired, involving the false and deceptive marketing of prescription opioids, which was designed to dramatically increase demand for and sale of opioids and opioid prescriptions.

27. On the demand side, the Defendants who manufacture, sell and market prescription opioid painkillers (the "Marketing Defendants") precipitated the crisis. These opioids have various brand names and generic names, and include OxyContin, fentanyl, hydrocodone, oxycodone, and others mentioned in this Complaint. Through a massive marketing campaign premised on false and incomplete information, the Marketing Defendants engineered a dramatic shift in how and when opioids are prescribed by the medical community and used by patients.

28. The Marketing Defendants relentlessly and methodically—but untruthfully—asserted that the risk of addiction was low when opioids were used to treat chronic pain and overstated the benefits and trivialized the risk of the long-term use of opioids. However, opioids are extremely addictive. Studies have found diagnosed opioid dependence rates in primary care settings as high as 26%.[39] Among opioid users who received four prescriptions in a year, 41.3%

---

drug overdose deaths continue to rise; increase fueled by synthetic opioids, (March 18, 2018), https://www.cdc.gov/media/releases/2018/p0329-drug-overdose-deaths.html.

[38] Julie Hirschfeld Davis, *Trump Declares Opioid Crisis a 'Health Emergency' but Requests No Funds*, THE NEW YORK TIMES, Oct. 26, 2017, https://www.nytimes.com/2017/10/26/us/politics/trump-opioid-crisis.html.

[39] Dowell, CDC Guideline, *supra* n. 26.

opioid prescribing for children and adolescents, for conditions such as headaches and sports injuries.

30. The Marketing Defendants' goal was simple: dramatically increase sales by convincing doctors to prescribe opioids not only for the kind of severe pain associated with cancer or short-term post-operative pain, but also for common chronic pain, such as back pain and arthritis. They did this even though they knew that opioids were addictive and subject to abuse, and that their claims regarding the risks, benefits, and superiority of opioids for long-term use were untrue and unfounded.

31. The Supply Chain Defendants— as defined *infra* in paragraph 240, including the Distributor Defendants, National Retail Pharmacies Defendants and Pill Mill Defendants—saw the profit potential in opioid sales, participated in the conspiracy by ignoring their legal responsibilities, and flooded affected areas with opioids while knowing they were contributing to, but profiting from, widespread addiction and human misery. The Supply Chain Defendants, through their willingness to uncritically supply whatever quantities of opioids pharmacies ordered and fill prescriptions without scrutiny or hesitation, normalized overprescribing and caused widespread proliferation and availability of these dangerous drugs throughout communities in Tennessee and southwest Virginia.

32. Defendants succeeded. Opioid abuse has quickly become one of the nation's most pressing health management issues, not only because of its toll on patients, but increasingly because of the financial impact on hospitals and the rest of the healthcare system.[44]

33. The Marketing Defendants and Supply Chain Defendants extract billions of dollars

---

[44] Jennifer Bresnick, *Hospitals Face Higher Costs, More ED Visits from Opioid Abuse*, HealthIT Analytics (Dec. 21, 2016), https://healthitanalytics.com/news/hospitals-face-higher-costs-more-ed-visits-from-opioid-abuse.

problem."[45]

36. In August 2016, then U.S. Surgeon General Vivek Murthy published an open letter to physicians nationwide, enlisting their help in combating this "urgent health crisis" and linking that crisis to deceptive marketing. He wrote that the push to aggressively treat pain, and the "devastating" results that followed, had "coincided with heavy marketing to doctors [m]any of [whom] were even taught—incorrectly—that opioids are not addictive when prescribed for legitimate pain."[46]

37. In a 2016 report, the CDC explained that "[o]pioid prescribing has quadrupled since 1999 and has increased in parallel with [opioid] overdoses."[47] Patients receiving opioid prescriptions for chronic pain account for the majority of overdoses. For these reasons, the CDC concluded that efforts to rein in the prescribing of opioids for chronic pain are critical "to reverse the epidemic of opioid drug overdose deaths and prevent opioid-related morbidity."[48]

38. Defendants' practice of continually filling opioid prescriptions, including from suspicious prescribers, and failing to report suspicious orders of opioids has enabled an oversupply of opioids to communities, including communities in the regions that Plaintiffs serve. The

---

[45] *America's Addiction to Opioids: Heroin and Prescription Drug Abuse*, U.S. Senate, Caucus on International Narcotics Control, 113th Cong., at 3 (May 14, 2014) (statement); Testimony of Dr. Nora D. Volkow, Director, National Institute on Drug Abuse, *available at* https://www.drugabuse.gov/about-nida/legislative-activities/testimony-to-congress/2014/americas-addiction-to-opioids-heroin-prescription-drug-abuse.

[46] Letter from Vivek H. Murthy, M.D., U.S. Surgeon General, *available at* http://www.turntheriderx.org/ (last accessed July 23, 2018).

[47] Rose A. Rudd et al., Centers for Disease Control and Prevention, Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014, 64(50); 1378-82, Morbidity and Mortality Weekly Report (Jan. 2016), *available at* https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm (hereinafter "2000-2014 Increases in Drug and Opioid Overdose Deaths").

[48] *Id.*

epidemic. In addition to the cost of the opioid drugs themselves, hospitals have incurred and continue to incur millions of dollars in damages for the costs of uncompensated care as a result of the unlawful marketing, distribution, and sale of opioids. Arguably, more than any other institution, hospitals directly and monetarily bear the brunt of the opioid crisis.

43. Plaintiffs are struggling from the relentless and crushing financial burdens caused by the epidemic of opioid addiction.

44. The effects of the opioid epidemic on hospitals may soon become even worse. The coverage rules under the Affordable Care Act ("ACA") are in transition, thus creating the possibility of increased costs for hospitals for treatment of opioid-addicted patients admitted under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.[50]

45. Plaintiffs encounter patients with opioid addiction on a daily basis. They must deal with patients who have serious medical conditions that require extra care and expense because the patients are addicted to opioids.

46. The statistics are startling. Adult hospitalizations due substantially to opioid-related medical conditions doubled from 2000 to 2012. From 2005 to 2014, emergency department visits exhibited a 99.4% cumulative increase.[51]

47. Between 2005 and 2014, there was a dramatic increase nationally in

---

are more complex and expensive due to opioid addiction; illnesses or conditions claimed by a person with opioid addiction in order to obtain an opioid prescription; and any other condition identified in Plaintiffs' records as related to opioid use and abuse.

[50] American Hospital Association, *AHA Priorities to Address the Opioid Crisis*, https://www.aha.org/guidereports/2018-03-02-aha-priorities-address-opioid-crisis (last accessed August 1, 2018).

[51] *Id.*

hospitals, patients, and government programs.[56] In 2012, hospitals provided almost $15 billion for opioid-related inpatient care, more than double of what they billed in 2002.[57] A substantial portion of these costs were under-insured or unreimbursed.

51. In 2012, an average hospital stay for a patient with an opioid-related condition cost about $28,000 and only about 20% of the hospital stays related to those incidents were covered by private insurance. The number increased to $107,000 if there was an associated infection, with merely 14% covered by insurance.[58]

52. Patients with complex opioid addiction-related histories (medically and psychosocially) often cannot get treatment at skilled nursing facilities if they are discharged by hospitals.

53. The cost of treating opioid overdose victims in hospital intensive care units jumped 58% in a seven-year span. Between 2009 and 2015, the average cost of care per opioid overdose admission increased from $58,000 to $92,400. This was during a period where the overall medical cost escalation was about 19%. This cost increase also highlights a troubling trend: overdose patients are arriving in worse shape, requiring longer stays and a higher level of treatment.[59]

54. Pregnant women and their children have been significantly impacted by the opioid epidemic. There are negative consequences of drug use for pregnant women including increased

---

[56] *Id.*

[57] Shefali Luthra, *Opioid Epidemic Fueling Hospitalizations, Hospital Costs*, KAISER HEALTH NEWS, May 2, 2016, https://khn.org/news/opioid-epidemic-fueling-hospitalizations-hospital-costs/.

[58] *Id.*

[59] Casey Ross, *The Cost of Treating Opioid Overdose Victims is Skyrocketing*, STAT NEWS, Aug. 11, 2017, https://www.statnews.com/2017/08/11/opioid-overdose-costs/.

58. Plaintiffs have treated, and continue to treat, numerous patients for opioid-related conditions, including: (1) opioid overdose; (2) opioid addiction; (3) hepatitis C, HIV and other infections occurring as a result of intravenous drug use; (4) neonatal treatment in their NICU for babies born opioid-dependent, for which treatment is specialized, intensive, complex, lengthy and highly expensive; and (5) psychiatric and related treatment for patients with opioid addiction in need of mental health treatment programs.

59. Plaintiffs have incurred and continue to incur substantial unreimbursed costs for their treatment of patients with opioid-related conditions. These patients with opioid-related conditions seek treatment from Plaintiffs as a proximate result of the opioid epidemic created and engineered by Defendants. As a result, Plaintiffs' monetary losses with respect to treatment of these patients were and are foreseeable to Defendants and were and are the proximate result of Defendants' acts and omissions specified herein.

60. Plaintiffs also have incurred and continue to incur operational costs in the form of surgical procedures and other care that have been and are more complex and expensive than would otherwise be the case if the patients were not opioid affected. Surgical procedures on opioid affected patients have been and are complicated and costly and require special protective measures and related prescription drugs.

61. Additionally, individuals with opioid addiction have presented and continue to present themselves to Plaintiffs claiming to have illnesses and medical problems in an effort to obtain opioids. Plaintiffs have incurred and continue to incur operational costs related to the time and expenses in diagnosing, testing, and otherwise attempting to treat these individuals.

62. The costs incurred by Plaintiffs are the direct and proximate result of the false narrative campaign and the opioid epidemic created and engineered by Defendants.

companies aggressively advertised to and persuaded hospitals and their doctors to purchase and prescribe highly addictive, dangerous, opioids and turned patients into drug addicts for their own corporate profit. Such actions were unlawful.

69. Plaintiffs also bring this suit against the Supply Chain Defendants of these highly addictive drugs. In addition to participating in the false narrative campaign described below, the Supply Chain Defendants unlawfully breached their legal duties under Tennessee and Virginia law to monitor, detect, investigate, report, and refuse to fill suspicious orders of prescription opiates, which enabled the manufacturers' deceptive advertising to increase sales, profits and distribution of their products to hospitals, including Plaintiffs.

**E. <u>The Roles of Defendants in Causing and Perpetuating the Opioid Crisis</u>**

70. The Marketing Defendants' push to increase opioid sales worked. Through publications and websites, endless streams of sales representatives, "education" programs, and other means, the Marketing Defendants dramatically increased their sales of prescription opioids and reaped billions of dollars of profit as a result. Since 1999, the amount of prescription opioids sold in the U.S. has nearly quadrupled. In 2016, 289 million prescriptions for opioids were filled in the U.S.—enough to medicate every adult in America around the clock for a month.

71. On the supply side, the crisis was fueled and sustained by those involved in the supply chain of opioids, including manufacturers, distributors and retail suppliers, who failed to maintain effective controls over the distribution of prescription opioids, and who instead have actively sought to evade such controls. Defendants have contributed substantially to the opioid crisis by selling and distributing far greater quantities of prescription opioids than they know should be necessary for legitimate medical uses, while failing to report, and take steps to halt, suspicious orders when they were identified, thereby exacerbating the oversupply of such drugs and fueling an illegal secondary market.

version of OxyContin that purportedly provided twelve hours of pain relief; and (8) exaggerated the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse, addiction and death.

76. The Marketing Defendants disseminated these common messages to reverse the popular and medical understanding of opioids. They disseminated these messages directly, through their sales representatives, and in speaker groups led by physicians who were recruited by and paid by the Marketing Defendants for their support of the Marketing Defendants' marketing messages.

77. The Marketing Defendants also worked through third parties they controlled by: (a) funding, assisting, encouraging, and directing doctors, known as "key opinion leaders" ("KOLs") and (b) creating, funding, assisting, directing, and/or encouraging seemingly neutral and credible professional societies and patient advocacy groups (referred to hereinafter as "Front Groups"). The Marketing Defendants then worked together with those KOLs and Front Groups to profoundly influence, and at times control, the sources that doctors and patients relied on for ostensibly "neutral" guidance, such as treatment guidelines, continuing medical education ("CME") programs, medical conferences and seminars, and scientific articles. Thus, working individually and collectively, and through these Front Groups and KOLs, the Marketing Defendants persuaded doctors and patients that what they had long known – that opioids are addictive drugs, unsafe in most circumstances for long-term use – was untrue, and quite the opposite, that the compassionate treatment of pain *required* opioids.

78. Each Marketing Defendant knew that its misrepresentations of the risks and benefits of opioids were not supported by or were directly contrary to the scientific evidence. Indeed, the falsity of each Defendant's misrepresentations has been confirmed by the U.S. Food and Drug Administration ("FDA") and the CDC, including by CDC's *Guideline for Prescribing*

of several hospital-operating business entities named as Plaintiffs below. Today, Ballad hospitals serve the over 1.2 million residents in its service area, many of whom are suffering and have suffered for years from the ravages of the opioid epidemic.

84. The Ballad Health system is a product of a merger effective February 1, 2018 between the two regional health systems, now its wholly-owned subsidiaries, which have dominated this service area for many years: Mountain States Health Alliance and Wellmont Health System. The merger was made possible by the passage of legislation in Tennessee and Virginia, which was supported by the governors of both states due to the unique nature of the region and the health issues that the region faces. Many of those issues relate to the opioid epidemic in the predominantly rural Appalachian area that Ballad hospitals serve, exacerbated by the severe mental health problems and associated mental health treatment shortages there.

85. The hospitals that are within the Ballad Health system have continued to serve rural counties in the Appalachian region of northeast Tennessee and southwest Virginia. Over the last decade, eastern Tennessee and southwestern Virginia and the surrounding area have lost many coal mining jobs. The collapse of the coal industry forced many miners into unemployment and their families into insolvency. The resulting sense of hopelessness triggered a mental health crisis, which in turn fueled opioid abuse. Indeed, abuse of prescription pain medication is and has been for many years especially widespread among the growing ranks of out-of-work miners who were often prescribed opioid medications to deal with the rigors of the job. Plaintiffs' hospitals serving these areas are the focus of the rural communities, not just for health care but for community-wide economic stability.

86. Ballad Health operates the following hospitals in Tennessee and Virginia as described in paragraphs 87 through 96.

90. Plaintiff Hawkins County Memorial Hospital, Inc. f/k/a Hawkins County Memorial Hospital, is a mutual benefit corporation organized under the laws of the State of Tennessee, with its principal office located in in Rogersville, Tennessee. It does business as Hawkins County Memorial Hospital in Rogersville, Tennessee.

91. Plaintiff Johnston Memorial Hospital, Inc. is a corporation organized under the laws of the Commonwealth of Virginia, with its principal office located in Abingdon, Virginia. It operates a hospital by the name Johnston Memorial Hospital in Abingdon, Virginia.

92. Plaintiff Takoma Regional Hospital, Inc. f/k/a Takoma Hospital, Inc., is a public benefit corporation organized under the laws of the State of Tennessee, with its principal office located in Greeneville, Tennessee. Takoma Regional Hospital, Inc. operates a hospital under the assumed name Greeneville Community Hospital with two campuses in Greeneville, Tennessee.

93. Plaintiff Norton Community Hospital is a not-for-profit corporation organized under the laws of the Commonwealth of Virginia, with its principal office located in Norton, Virginia. It operates a hospital by the same name in Norton, Virginia.

94. Plaintiff Smyth County Community Hospital is a corporation organized under the laws of the Commonwealth of Virginia, with its principal office located in Marion, Virginia. It operates a hospital by the same name in Marion, Virginia.

**2. Henderson County Community Hospital**

95. Plaintiff Lexington Hospital Corporation is a corporation organized under the laws of the State of Tennessee, with its principal office located in Lexington, Tennessee. It operated under an assumed name Henderson County Community Hospital, and operates a hospital by that name in Lexington, Tennessee.

**3. Johnson City Community Health and Affiliates**

96. Plaintiff Northeast Tennessee Community Health Centers, Inc. is a public benefit

does business as Tennova Healthcare – Clarksville, and operates a hospital by that name in Clarksville, Tennessee.

**8. Tennova Healthcare – Cleveland**

101. Plaintiff Cleveland Tennessee Hospital Company, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal office located in Cleveland, Tennessee. It operates under an assumed name Tennova Healthcare – Cleveland, and operates a hospital by that name in Cleveland, Tennessee.

**9. Tennova Healthcare – Harton**

102. Plaintiff Tullahoma HMA, LLC f/k/a Tullahoma HMA, Inc. is a limited liability company organized under the laws of the State of Tennessee, with its principal office located in Tullahoma, Tennessee. It operates under an assumed name Tennova Healthcare – Harton, and operates a hospital by that name in Tullahoma, Tennessee.

**10. Tennova Healthcare – Jefferson**

103. Plaintiff Jefferson County HMA, LLC is a limited liability company organized under the laws of the State of Tennessee, with its principal office located in Jefferson City, Tennessee. It operates under an assumed name Tennova Healthcare – Jefferson Memorial Hospital, and operates a hospital by that name in Jefferson City, Tennessee.

**11. Tennova Healthcare – LaFollette Medical Center**

104. Plaintiff Campbell County HMA, LLC is a limited liability company organized under the laws of the State of Tennessee, with its principal office located in LaFollette, Tennessee. It operates under an assumed name Tennova Healthcare – LaFollette Medical Center, and operates a hospital by that name in LaFollette, Tennessee.

**12. Tennova Healthcare – Lebanon**

105. Plaintiff Lebanon HMA, LLC f/k/a Lebanon HMA, Inc. is a limited liability

110. Defendant Purdue Pharma Inc. is a New York corporation with its principal place of business in Stamford, Connecticut, and is the general partner of Purdue Pharma, L.P.

111. Defendant The Purdue Frederick Company is a New York corporation with its principal place of business in Stamford, Connecticut. Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., and The Purdue Frederick Company are collectively referred to as "Purdue."

112. The following Defendants, all members of the Sackler family that beneficially owns Purdue, have served on the Board of Purdue during the relevant times indicated in parenthesis:

a. Richard Sackler (at all pertinent times until 2018[61]), a resident of Florida;

b. Beverly Sackler (all pertinent times until 2017), a resident of Connecticut;

c. David Sackler (2012-18), a resident of New York;

d. Ilene Sackler Lefcourt (all pertinent times), a resident of New York;

e. Jonathan Sackler (all pertinent times), a resident of Connecticut;

f. Kathe Sackler (all pertinent times), a resident of Connecticut;

g. Mortimer D.A. Sackler (all pertinent times), a resident of New York[62]; and

h. Theresa Sackler (all pertinent times until 2018), a resident of the United Kingdom.

The foregoing Defendants (collectively, the "Sackler Defendants") controlled Purdue's misconduct. Each of them took a seat on the Board of Directors of Purdue Pharma Inc. Together, the Sackler Defendants, at all pertinent times, constituted a majority of Board, which gave them

---

[61] Defendant Beverly Sackler left the Board in 2017. Defendants Richard, David and Theresa Sackler left the Board in 2018. Defendants Jonathan Sackler, Ilene Sackler Lefcourt, Kathe Sackler, and Mortimer D.A. Sackler remain on the Board.

[62] References to "Mortimer D.A. Sackler" in this Complaint are to Mortimer David Alfons Sackler. Mortimer Sackler's father, the late Mortimer D. Sackler, was also involved in Purdue Pharma during his lifetime.

Richard into the organization is appreciated." To convince the Sackler Defendants to make him CEO, Defendant Landau wrote a plan that he titled: "SACKLER PHARMA ENTERPRISE." He started by admitting that the Sackler Defendants in fact controlled the company like chief executive officers. The family ran "the global Sackler pharmaceutical enterprise ... with the Board of Directors serving as the 'de-facto' CEO."

116. The Sackler Defendants concealed their extensive involvement at all costs. In 2000, the Sackler Defendants were warned that a reporter was "sniffing about the OxyContin abuse story." The Sackler Defendants put the threat on the agenda for the next Board meeting and began covering their tracks. They planned a response that "deflects attention away from the company owners." More recently, in November 2016, staff prepared statements to the press denying the Sackler Defendants' involvement in Purdue. Their draft claimed: "Sackler family members hold no leadership roles in the companies owned by the family trust." A staff member reviewing the draft knew what was up and commented with apparent sarcasm: "Love the ... statement." Staff eventually told the press: "Sackler family members hold no management positions." Some employees worried about the deception. When journalists asked follow-up questions about the Sackler Defendants, communications staff deliberated about whether to repeat the "no management positions" claim. They double-checked that Purdue's top lawyers had ordered the statement. Then they arranged for one of the Sackler Defendants' foreign companies to issue it, so U.S. employees would not be blamed: "The statement will come out of Singapore."

117. Most of all, the Sackler Defendants cared about money. Millions of dollars were not enough. They wanted billions. They cared more about money than about patients, or their employees, or the truth. In 1999, when employee Michael Friedman reported to Defendant Richard Sackler that Purdue was making more than $20,000,000 per week, Richard replied

120. In order to enhance their own and Purdue's social standing and prestige, the Sackler Defendants endowed many cultural, educational and scientific institutions, many of which bear their family name, including many academic programs at Harvard University and Tufts University in Massachusetts, the New York Academy of Sciences, Columbia University, Dia Art Foundation, the Metropolitan Museum of Art and the Guggenheim art museum, all in New York, London's Victoria and Albert Museum, and the Louvre in Paris. There is a Sackler gallery at the Princeton University Art Museum and Sackler museums at Harvard University and Peking University in Beijing. The Sackler Defendants and their relatives include many prominent New York and international socialites.

121. Defendants John Stewart (CEO from 2007 to 2013), Mark Timney (2014 to 2017), a resident of Connecticut, and Craig Landau (2017 to the present), a resident of Connecticut, each directed Purdue's deception as CEO of Purdue Pharma Inc. and Purdue Pharma L.P. Defendant Russell Gasdia, a resident of Massachusetts, carried out the misconduct as Vice President of Sales and Marketing at all pertinent times until June 2014. The Defendants named in this paragraph are collectively referred to as the "Purdue Officer Defendants."

122. Defendant Andrew T. Stokes is a resident of Johnson City, Tennessee, who was employed in pharmaceutical marketing with Purdue from 2008 to April 2016. As of early 2016, Stokes was employed as territory brand manager (or "TBM") for the region centered in Johnson City. He also has experience serving as a regional field trainer and medical marketing representative. Stokes identifies himself as "skilled in Coaching, Sales Operations, Team Building, Hospital Sales, and Sales Force Development."

123. The Sackler Defendants, the Purdue Officer Defendants and Defendant Stokes are collectively referred to as the "Purdue Individual Defendants." Purdue and the Purdue Individual

particularly unfair, deceptive, unreasonable, and unlawful because they already had been given a second chance. From the 1990s until 2007, they directed a decade of misconduct, which led to criminal convictions, a judgment of this Court, and commitments that Purdue would not deceive doctors and patients again. That background confirms that their misconduct since 2007 was knowing, purposeful, reckless, and intentional.

126. Each of the Purdue Individual Defendants acted directly and through agents to transact business and cause injury in Tennessee and southwest Virginia.

127. Purdue employed scores of sales representatives in Tennessee and southwest Virginia to promote Purdue's opioids and sold hundreds of millions of dollars of opioids in Tennessee and southwest Virginia.

128. The Sackler Defendants and Purdue Officer Defendants voted for and/or directed sales representatives to go door-to-door, making thousands of visits to doctors in Tennessee and southwest Virginia. Although they did not knock on the doors to clinics and family practices themselves, these individuals voted for and/or ordered sales representatives to deceptively promote Purdue's dangerous drugs in person, as a central facet of their deceptive marketing scheme that killed hundreds of people in Tennessee and southwest Virginia.

129. The Sackler Defendants and Purdue Officer Defendants voted for and/or directed payments to Tennessee and southwest Virginia doctors to promote Purdue's drugs.

130. The Sackler Defendants and Purdue Officer Defendants all directed the dissemination of tens of thousands of copies of unfair or deceptive marketing materials to doctors and other health care providers throughout Tennessee and southwest Virginia for the purpose of getting more and more prescribers to put their patients on Purdue's drugs for longer and longer periods of time at higher and higher doses. These individuals voted for and/or managed a chain-

guide was submitted by Teva USA, and directs physicians to contact Teva USA to report adverse events. All of Cephalon's promotional websites, including those for Actiq and Fentora, display Teva Ltd.'s logo.[63] Teva USA's parent company, Teva Pharmaceuticals Industries, Ltd. lists Cephalon and Teva USA's sales as its own on its financial reports, and its year-end report for 2012 – the year immediately following the Cephalon acquisition – attributed a 22% increase in its specialty medicine sales to "the inclusion of a full year of Cephalon's specialty sales," including inter alia sales of Fentora.[64] Actiq has been approved by the FDA only for the "management of breakthrough cancer pain in patients 16 years and older with malignancies who are already receiving and who are tolerant to around-the-clock opioid therapy for the underlying persistent cancer pain."[65] Fentora has been approved by the FDA only for the "management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to around-the-clock opioid therapy for their underlying persistent cancer pain."[66] In 2008, Cephalon pled guilty to a criminal violation of the Federal Food, Drug and Cosmetic Act for its

---

[63] *E.g.*, ACTIQ, http://www.actiq.com/ (displaying logo at bottom-left) (last accessed August 1, 2018).

[64] Teva Ltd., Annual Report (Form 20-F), at 62 (Feb. 12, 2013), http://annualreports.com/HostedData/AnnualReportArchive/t/NASDAQ_TEVA_2012.pdf.

[65] *Highlights of Prescribing information, ACTIQ® (fentanyl citrate) oral transmucosal lozenge, CII (2009)*, ACTIQ PI/Med Guide, https://www.accessdata.fda.gov/drugsatfda_docs/label/2009/020747s030lbl.pdf (last accessed August 1, 2018).

[66] *Highlights of Prescribing Information, FENTORA® (fentanyl citrate) buccal tablet, CII (2011)*, https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/021947s015lbl.pdf (last accessed August 1, 2018).

and Opana in the United States. Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc. on December 30, 2008, and began marketing Kadian in 2009.

144. Actavis made thousands of payments to physicians nationwide including in Tennessee and southwest Virginia, ostensibly for activities including participating on speakers' bureaus, providing consulting services, assisting in post-marketing safety surveillance and other services, but in fact to deceptively promote and maximize the use of opioids.

### c. Janssen and Associated Companies

145. Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

146. Defendant Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of J&J.

147. Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which was formerly known as Janssen Pharmaceutica, Inc.

148. Defendant Noramco, Inc. is a Delaware company headquartered in Wilmington, Delaware and was a wholly owned subsidiary of J&J until July 2016. Noramco, Inc. is or had been part of J&J's opium processing. It makes active pharmaceutical ingredients ("APIs") for opioid painkillers.

149. Johnson & Johnson is the only company that owns over 10% of Janssen Pharmaceuticals stock. J&J controls the sale and development of Janssen Pharmaceuticals drugs and Janssen Pharmaceuticals profits inure to J&J's benefit.

150. J&J, Janssen Pharmaceuticals, Inc., Noramco, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "Janssen") are or have been in the business of manufacturing, selling, promoting, and/or distributing both brand name and generic opioids throughout the United States.

including those of Janssen, "market, sell, promote, research, develop, inform and advertise Johnson & Johnson Pharmaceutical Affiliates' products." All Janssen officers, directors, employees, sales associates must certify that they have "read, understood and will abide by" the code. The code governs all of the forms of marketing at issue in this case. J&J made payments to thousands of physicians nationwide, including in Tennessee and southwest Virginia, ostensibly for activities including participating on speakers' bureaus, providing consulting services, assisting in post-marketing safety surveillance and other services, but in fact to deceptively promote and maximize the use of opioids.

### d. Endo and Associated Companies

155. Defendant Endo Health Solutions Inc. is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

156. Defendant Endo Pharmaceuticals Inc. is a wholly owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

157. Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo") are or have been in the business of manufacturing, selling, promoting, and/or distributing both brand name and generic opioids throughout the United States.

158. Endo develops, markets, and sells prescription drugs, including the opioids Opana/Opana ER, Percodan, Percocet, generic versions of oxycodone, oxymorphone, hydromorphone and hydrocodone in the United States. Opioids made up roughly $403 million of Endo's overall revenues of $3 billion in 2012. Opana ER yielded $1.15 billion in revenue from 2010 and 2013, and it accounted for 10% of Endo's total revenue in 2012. On June 8, 2017, the FDA requested that Endo remove Opana ER from the market because of a "serious outbreak" of HIV and hepatitis C due to abuse of the drug after the reformulation of Opana from a nasal spray

162. Abbott, as part of the co-promotional agreement, helped turn OxyContin into the largest selling opioid in the nation. Under the co-promotional agreement with Purdue, the more Abbott generated in sales, the higher the reward. Specifically, Abbott received 25% to 30% of all net sales for prescriptions written by doctors its sales force called on. This agreement was in operation from 1996-2002, following which Abbott continued to receive a residual payment of 6% of net sales up through at least 2006.

163. With Abbott's help, sales of OxyContin went from a mere $49 million in its first full year on the market to $1.2 billion in 2002. Over the life of the co-promotional agreement, Purdue paid Abbott nearly half a billion dollars.

164. Abbott and Purdue's conspiring with Pharmacy Benefit Managers (PBMs) to drive opioid use is well established. As described in an October 28, 2016, article from Psychology Today entitled *America's Opioid Epidemic*:

> Abbott and Purdue actively misled prescribers about the strength and safety of the painkiller [OxyContin]. To undermine the policy of requiring prior authorization, they offered lucrative rebates to middlemen such as Merck Medco [now Express Scripts] and other pharmacy benefits managers on condition that they eased availability of the drug and lowered co-pays. The records were part of a case brought by the state of West Virginia against both drug makers alleging inappropriate and illegal marketing of the drug as a cause of widespread addiction.... One reason the documents are so troubling is that, in public at least, the drug maker was carefully assuring authorities that it was working with state authorities to curb abuse of OxyContin. Behind the scene, however, as one Purdue official openly acknowledged, the drug maker was "working with Medco (PBM) [now Express Scripts] to try and make parameters [for prescribing] less stringent."[71]

**f. Amneal Pharmaceuticals, LLC**

165. Defendant Amneal Pharmaceuticals, LLC ("Amneal LLC") is a Delaware limited

---

[71] American Society of Addiction Medicine, *America's Opioid Epidemic – Court released documents show drug makers blocked efforts to curb prescribing*, PSYCHOLOGY TODAY, Oct. 28, 2016, https://www.psychologytoday.com/blog/side-effects/201610/america-s-opioid-epidemic.

171. Defendant Mallinckrodt LLC (together with Mallinckrodt plc and SpecGx LLC, "Mallinckrodt") is a Delaware corporation with its headquarters in Hazelwood, Missouri. Defendant SpecGx LLC is a Delaware limited liability company with its headquarters in Clayton, Missouri and is a wholly-owned subsidiary of Mallinckrodt plc. Mallinckrodt manufactures, markets, sells and distributes pharmaceutical drugs throughout the United States, and to Plaintiffs. Mallinckrodt is the largest U.S. supplier of opioid pain medications and among the top ten generic pharmaceutical manufacturers in the United States, based on prescriptions.

172. Mallinckrodt manufactures and markets two branded opioids: Exalgo, which is extended-release hydromorphone, sold in 8, 12, 16, and 32 mg dosage strengths, and Roxicodone, which is oxycodone, sold in 15 and 30 mg dosage strengths. In 2009, Mallinckrodt Inc., a subsidiary of Covidien plc, acquired the U.S. rights to Exalgo. The FDA approved Exalgo for treatment of chronic pain in 2012. Mallinckrodt further expanded its branded opioid portfolio in 2012 by purchasing Roxicodone from Xanodyne Pharmaceuticals. In addition, Mallinckrodt developed Xartemis XR, an extended-release combination of oxycodone and acetaminophen, which the FDA approved in March 2014, and which Mallinckrodt has since discontinued. Mallinckrodt promoted its branded opioid products with its own direct sales force.

173. While it has sought to develop its branded opioid products, Mallinckrodt has long been a leading manufacturer of generic opioids. Mallinckrodt estimated that in 2015 it received approximately 25% of the DEA's entire annual quota for controlled substances that it manufactures. Mallinckrodt also estimated, based on IMS Health[73] data for the same period, that

[73] "IMS Health was a [provider of] information, services and technology for the healthcare industry, including U.S. physician prescribing data." It has changed its corporate form and is now known as "IQVIA."

**i. Allergan and Associated Companies**

177. Defendant Allergan plc ("Allergan") is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland. Shares of Allergan are traded on the New York Stock Exchange (NYSE: AGN). In its most recent Form 10-K filed with the SEC, Allergan plc stated that it does business in the United states through its U.S. Specialized Therapeutics and U.S. General Medicine segments, which generated nearly 80% of the company's $15.8 billion in net revenue during the year ended December 31, 2018.

178. Before (the entities defined above as) Activis was sold to Teva Ltd. in August 2016, Actavis was part of the same corporate family as Allergan and sold and marketed opioids as part of a coordinated strategy to sell and market the branded and generic opioids of Allergan and Actavis.

179. Defendant Allergan plc has, at all times, exercised control over these marketing and sales efforts and profits from the sale of its subsidiaries' products ultimately inure to its benefit, including those sales by Actavis during the period of its ownership and control by Allergan. Allergan is or has been in the business of manufacturing, selling, promoting, and/or distributing both brand name and generic opioids throughout the United States, including to Plaintiffs.

180. Collectively, the Purdue Defendants, Actavis, Amneal, Teva, Janssen, Assertio, Endo, Abbott, Allergan and Mallinckrodt are referred to as "Marketing Defendants."

**2. <u>Distributor Defendants</u>**

181. The Distributor Defendants are defined below. At all relevant times, the Distributor Defendants have distributed, supplied, sold, and placed into the stream of commerce prescription opioids, without fulfilling the fundamental duty of wholesale drug distributors to detect and warn of diversion of dangerous drugs for non-medical purposes. The Distributor Defendants universally failed to comply with Tennessee and Virginia law. The Distributor Defendants are engaged in

relevant to this Complaint, Anda distributed prescription opioids throughout the United States, including in Tennessee, southwest Virginia and within the communities served by Plaintiffs.

**c. Cardinal**

186. Defendant Cardinal Health, Inc. ("Cardinal") is an Ohio Corporation with its principal place of business in Dublin, Ohio. In 2016, Cardinal generated revenues of $121.5 billion.

187. Cardinal is a global distributor of pharmaceutical drugs and medical products. It is one of the largest distributors of opioids in the United States. It has annual resources of over $120 billion. Additionally, in December 2013, Cardinal formed a ten-year agreement with CVS Caremark to form the largest generic drug sourcing operation in the United States. Cardinal has, at all relevant times, had distribution centers throughout the United States, including Tennessee and southwest Virginia, and has distributed opioids nationwide.

**d. H. D. Smith, LLC**

188. Defendant H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Co. ("H. D. Smith") through its various DEA registered subsidiaries and affiliated entities, is a wholesaler of pharmaceutical drugs that distributes opioids throughout the United States, including Tennessee, southwest Virginia and the communities served by Plaintiffs. H. D. Smith is a privately held independent pharmaceuticals distributor of wholesale brand, generic and specialty pharmaceuticals and is a Delaware corporation with its principal place of business in Illinois. H. D. Smith Wholesale Drug Co. has been restructured and is currently doing business as H. D. Smith, LLC. H. D. Smith, LLC's sole member is H. D. Smith Holdings, LLC, and its sole member is H. D. Smith Holding Company, a Delaware corporation with its principal place of business in Illinois. H.D. Smith is the largest independent wholesaler in the United States. In January 2018, Defendant AmerisourceBergen acquired H. D. Smith. At all relevant times, H. D. Smith distributed prescription opioids throughout the United States including in Tennessee and southwest Virginia.

Neighbor Pharmacy is incorporated in Tennessee with a principal place of business in Kingsport, Tennessee. Defendant Lowell B. Grizzle is the owner of P&S and a licensed pharmacist.

196. P&S is a retail pharmacy located in Kingsport, Tennessee.

197. At all times relevant to this Complaint, P&S and Grizzle distributed prescription opioids in Tennessee.

198. The United States alleged that in November 2014 an accountability audit of P&S Pharmacy by the U.S. Drug Enforcement Administration ("DEA") uncovered multiple record-keeping violations. Specifically, the United States alleged that P&S and Grizzle failed to maintain complete and accurate records with respect to several Schedule II controlled substances as required by the Controlled Substances Act ("CSA") and failed to note the date and quantity of controlled substances that were received.

199. P&S and Grizzle have agreed to pay the United States $100,000 in civil penalties to settle allegations that P&S and Grizzle violated the CSA. Grizzle was also penalized by the Tennessee State Board of Pharmacy for the same course of conduct.

**b. Lafollette Wellness Center Defendants**

200. Lafollette Wellness Center ("LWC"), formerly located at 2212 Jacksboro Pike, Lafollette, TN 37766, was a pain management clinic.

201. Defendant Henry Babenco was a physician licensed in the State of Tennessee and the supervising physician at LWC. Henry Babenco maintained a DEA Registration Number and prescribed controlled substances to patients at LWC.

202. Defendant Sharon Naylor was an advanced practice registered nurse licensed in the State of Tennessee and owner of LWC.

**b. The Kroger Co.**

213. Defendant The Kroger Co. is an Ohio corporation with headquarters in Cincinnati, Ohio.

214. Defendant, Kroger Limited Partnership II is an Ohio limited partnership with its principal office located in Columbus, Ohio

215. The Kroger Co. and Kroger Limited Partnership II are collectively referred to as "Kroger." Kroger operates 2,268 pharmacies in the United States, including in Tennessee and southwest Virginia. At all times relevant to this Complaint, Kroger distributed prescription opioids throughout the United States, including in Tennessee.

**c. Rite-Aid of Maryland, Inc.**

216. Defendant Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc. ("Rite Aid"), is a Maryland corporation with its principal office located in Camp Hill, Pennsylvania. At all times relevant to this Complaint, Rite Aid distributed prescription opioids throughout the United States, including in Tennessee and southwest Virginia.

**d. Walgreens Boots Alliance, Inc.**

217. Defendant Walgreens Boots Alliance, Inc., also known as Walgreen Co. ("Walgreens") is a Delaware corporation with its principal place of business in Illinois. At all times relevant to this Complaint, Walgreens distributed prescription opioids throughout the United States, including in Tennessee and southwest Virginia.

**e. Wal-Mart Inc.**

218. Defendant Wal-Mart Inc., formerly known as Wal-Mart Stores, Inc., is a Delaware corporation with its principal place of business in Arkansas.

219. Defendant Wal-Mart Stores East, LP is a Delaware limited partnership with its principal place of business in Arkansas.

A. **The History of Opioids**

226. The synthetic opioids manufactured and distributed by Defendants are related to the opium poppy, which has been used to relieve pain for centuries.

227. The opium poppy was a well-known symbol of the Roman Civilization, which signified both sleep and death. The Romans used opium not only as a medicine but also as a poison.[76]

228. During the Civil War, opioids, then known as "tinctures of laudanum," gained popularity among doctors and pharmacists for their ability to reduce anxiety and relieve pain on the battlefield. They were also used in a wide variety of commercial products ranging from pain elixirs to cough suppressants to beverages.

229. Tennessee law and Virginia law each imposes a hierarchy of restrictions on prescribing and dispensing drugs based on their medicinal value, likelihood of addiction or abuse, and safety. Opioids generally have been categorized as Schedule II or Schedule III drugs. Schedule II drugs have a high potential for abuse, have a currently accepted medical use, and may lead to severe psychological or physical dependence; Schedule III drugs are deemed to have a lower potential for abuse, but their abuse may lead to moderate or low physical dependence or high psychological dependence.[77]

230. The effects of opioids vary by duration. Long-acting opioids, such as Purdue's OxyContin and MS Contin, Janssen's Nucynta ER and Duragesic, Endo's Opana ER, and Actavis's Kadian, are designed to be taken once or twice daily and are purported to provide

---

[76] Martin Booth, *Opium: A History*, at 20 (Simon & Schuster Ltd. 1996).

[77] *See* T.C.A. § 39-17-401; T.C.A. § 39-17-404; T.C.A. § 39-17-407; T.C.A. § 39-17-409; Va. Code Ann. §§ 54.1-3443, 3444, and 3447-50. *See also* 21 U.S.C. § 812.

than a few days. Defendants, however, have manufactured, promoted, marketed, and distributed opioids for the management of chronic pain by misleading consumers and medical providers, such as hospitals, through misrepresentations or omissions regarding the appropriate uses, risks, and safety of opioids.

234. As one doctor put it, the widespread, long-term use of opioids "was an experiment on the population of the United States. It wasn't randomized, it wasn't controlled, and no data was collected until they started gathering death statistics."

**B. <u>The Opioid Epidemic</u>**

235. Prescription opioids have become widely prescribed. In 2010, enough prescription opioids were sold to medicate every adult in the United States with a dose of 5 milligrams of hydrocodone every 4 hours for 1 month.[78]

236. Despite the enormous number of prescriptions, recent studies have concluded that treatment with opioids is not superior to treatment with non-opioid medications for improving pain-related function.[79] Even for patients presenting to the emergency room with acute extremity pain, there is no significant or clinically important difference in pain reduction at 2 hours among

---

[78] Katherine M. Keyes et al., *Understanding the Rural-Urban Differences in Nonmedical Prescription Opioid Use and Abuse in the United States*, 104 Am. J. Pub. Health e52-e59 (2014), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3935688/.

[79] Erin E. Krebs, M.D. et al., *Effect of Opioid vs Nonopioid Medications on Pain-Related Function in Patients with Chronic Back Pain or Hip or Knee Osteoarthritis Pain*, 319 JAMA 872-882 (2018), doi: 10.1001/jama.2018.0899, *available at* https://jamanetwork.com/journals/jama/article-abstract/2673971?redirect=true.

238. The CDC has also identified addiction to prescription pain medication as the strongest risk factor for heroin addiction. People who are addicted to prescription opioid painkillers – which, at the molecular level and in their effect, closely resemble heroin – are forty times more likely to be addicted to heroin.[82] According to a recent study, among young urban heroin users, 86% used opioid pain relievers prior to using heroin.[83]

239. The synthetic opioid fentanyl has been a driving force behind the nation's opioid epidemic, killing tens of thousands of Americans in overdoses. The drug is so powerful that it is now being used to execute prisoners on death row.[84]

240. In a November 2016 report, the DEA declared opioid prescription drugs, heroin, and fentanyl as the most significant drug-related threats to the United States.[85]

241. The U.S. opioid epidemic is continuing, and drug overdose deaths nearly tripled during 1999–2014. Among the 47,055 drug overdose deaths that occurred in 2014 in the United States, 28,647 (60.9%) involved an opioid.[86]

---

[82] *See* Centers for Disease Control and Prevention, *Today's Heroin Epidemic*, https://www.cdc.gov/vitalsigns/heroin/index.html (last accessed May 14, 2018).

[83] Nat'l Inst. on Drug Abuse, *Prescription Opioids and Heroin* (Jan. 2018), https://d14rmgtrwzf5a.cloudfront.net/sites/default/files/19774-prescription-opioids-and-heroin.pdf.

[84] Mitch Smith, *Fentanyl Used to Execute Nebraska Inmate, in First for U.S.*, THE NEW YORK TIMES, Aug. 14, 2018, https://www.nytimes.com/2018/08/14/us/carey-dean-moore-nebraska-execution-fentanyl.html.

[85] 2000-2014 Increases in Drug and Opioid Overdose Deaths, *supra* n. 47.

[86] *Id.*

Recovery and Treatment for Patients and Communities Act," or the "SUPPORT for Patients and Communities Act." This Bill passed the House by a vote of 396-14 on June 22, 2018, passed the Senate by a vote of 99-1 on September 17, 2018, and was signed into law by the President on October 24, 2018. Among other provisions, the Bill made it easier to intercept drugs being shipped into the country, authorized new funding for more comprehensive treatment, sped up research on non-addictive painkillers, and provided for broader coverage for substance abuse under Medicare and Medicaid regulations that have occasionally stood in the way of treatment. Congressional interest in the issue is ongoing.

## V. THE MARKETING DEFENDANTS' FALSE, DECEPTIVE, AND UNFAIR MARKETING OF OPIOIDS

246. The opioid epidemic did not happen by accident.

247. Before the 1990s, generally accepted standards of medical practice dictated that opioids should only be used short-term for acute pain, pain relating to recovery from surgery, or for cancer or palliative (end-of-life) care. Due to the lack of evidence that opioids improved patients' ability to overcome pain and function, coupled with evidence of greater pain complaints as patients developed tolerance to opioids over time and the serious risk of addiction and other side effects, the use of opioids for chronic pain was discouraged or prohibited. As a result, doctors generally did not prescribe opioids for chronic pain.

248. Each Marketing Defendant has conducted, and continues to conduct, a marketing scheme designed to persuade doctors and patients that opioids can and should be used for chronic pain, resulting in opioid treatment for a far broader group of patients who are much more likely to become addicted and suffer other adverse effects from the long-term use of opioids. In connection with this scheme, each Marketing Defendant spent, and continues to spend, millions of dollars on

251. The Marketing Defendants intentionally continued their conduct, as alleged herein, with knowledge that such conduct was creating the opioid nuisance and causing the harms and damages alleged herein.

252. As alleged throughout this Complaint, Defendants' conduct created a public health crisis and a public nuisance. The harm and endangerment to the public health, safety, and the environment created by this public nuisance is ongoing and has not been abated.

253. The public nuisance—i.e., the opioid epidemic—created, perpetuated, and maintained by Defendants can be abated and further recurrence of such harm can be abated by, inter alia, (a) educating prescribers (especially primary care physicians and the most prolific prescribers of opioids) and patients regarding the true risks and benefits of opioids, including the risk of addiction, in order to prevent the next cycle of addiction; (b) providing addiction treatment to patients who are already addicted to opioids; and (c) making naloxone widely available so that overdoses are less frequently fatal.

254. Defendants have the ability to act to abate the public nuisance, and the law recognizes that they must do so. It is the manufacturer of a drug that has primary responsibility to ensure the safety, efficacy, and appropriateness of a drug's labeling, marketing, and promotion. All companies in the supply chain of a controlled substance are primarily responsible for ensuring that such drugs are only distributed and dispensed to appropriate patients and not diverted. These responsibilities, to ensure that their products and practices meet state controlled substances and consumer protection laws and regulations, exist independent of any FDA or DEA regulation. As registered manufacturers and distributors of controlled substances, Defendants are placed in a position of special trust and responsibility, and are uniquely positioned, based on their knowledge of prescribers and orders, to act as a first line of defense.

misrepresentation, contributed to an overall narrative that aimed to—and did—mislead doctors, patients, and payors about the risks and benefits of opioids. While this Complaint endeavors to document examples of each Marketing Defendant's misrepresentations and the manner in which they were disseminated, they are just that—examples. The Complaint is not, especially prior to discovery, an exhaustive catalog of the nature and manner of each deceptive statement by each Marketing Defendant.

### 1. Falsehood #1: The Risk of Addiction from Chronic Opioid Therapy is Low

258. Central to the Marketing Defendants' promotional scheme was the misrepresentation that opioids are rarely addictive when taken for chronic pain. Through their marketing efforts, the Marketing Defendants advanced the idea that the risk of addiction is low when opioids are taken as prescribed by "legitimate" pain patients. That, in turn, directly led to the expected and intended result that doctors prescribed more opioids to more patients—thereby enriching the Marketing Defendants and substantially contributing to the opioid epidemic.

259. Each of the Marketing Defendants claimed that the potential for addiction from its opioids was relatively small or non-existent, even though there was no scientific evidence to support those claims. None of them have acknowledged, retracted, or corrected their false statements.

260. In fact, studies have shown that a substantial percentage of long-term users of opioids experience addiction. Addiction can result from the use of any opioid, "even at

**ADDICTION RARE IN PATIENTS TREATED WITH NARCOTICS**

*To the Editor:* Recently, we examined our current files to determine the incidence of narcotic addiction in 39,946 hospitalized medical patients[1] who were monitored consecutively. Although there were 11,882 patients who received at least one narcotic preparation, there were only four cases of reasonably well documented addiction in patients who had no history of addiction. The addiction was considered major in only one instance. The drugs implicated were meperidine in two patients,[2] Percodan in one, and hydromorphone in one. We conclude that despite widespread use of narcotic drugs in hospitals, the development of addiction is rare in medical patients with no history of addiction.

Jane Porter
Hershel Jick, M.D.
Boston Collaborative Drug Surveillance Program
Boston University Medical Center
Waltham, MA 02154

1. Jick H, Miettinen OS, Shapiro S, Lewis GP, Siskind V, Slone D. Comprehensive drug surveillance. JAMA. 1970; 213:1455-60.
2. Miller RR, Jick H. Clinical effects of meperidine in hospitalized medical patients. J Clin Pharmacol. 1978; 18:180-8.

263. As Dr. Jick explained to a journalist years later, he submitted the statistics to NEJM as a letter because the data were not robust enough to be published as a study.[97]

264. Purdue nonetheless began repeatedly citing this letter in promotional and educational materials as evidence of the low risk of addiction, while failing to disclose that its source was a letter to the editor, not a peer-reviewed paper.[98] Citation of the letter, which was largely ignored for more than a decade, significantly increased after the introduction of OxyContin. While first Purdue and then other Marketing Defendants used it to assert that their opioids were not addictive, "that's not in any shape or form what we suggested in our letter," according to Dr. Jick.

[97] Barry Meier, *Pain Killer: A "Wonder" Drug's Trail Of Addiction And Death*, at 47 (Rodale 2003) (herein after "*Pain Killer*").

[98] Porter and Jick Letter, *supra* n. 97.

267. "It's difficult to overstate the role of this letter," said Dr. David Juurlink of the University of Toronto, who led the analysis. "It was the key bit of literature that helped the opiate manufacturers convince front-line doctors that addiction is not a concern."[102]

268. Alongside its use of the Porter and Jick letter, Purdue also crafted its own materials and spread its deceptive message through numerous additional channels. In its 1996 press release announcing the release of OxyContin, for example, Purdue declared, "The fear of addiction is exaggerated."[103]

269. Abbott sales staff were instructed with respect to euphoria patients were receiving on the shorter-acting painkiller Vicodin, they should tell the physician that "OxyContin has fewer such effects." Abbott's "King of Pain" taught his staff of "Royal Crusaders" that OxyContin would "minimize[e] the risk of dependence" and "lower[] euphoria," when, in fact, he had little knowledge of pharmacology and no basis for these statements.

270. At a hearing before the House of Representatives' Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce in August 2001, Purdue emphasized "legitimate" treatment, dismissing cases of overdose and death as something that would not befall "legitimate" patients: "Virtually all of these reports involve people who are abusing the

---

[102] Marilynn Marchione, *Painful words: How a 1980 letter fueled the opioid epidemic*, STAT NEWS, May 31, 2017, https://www.statnews.com/2017/05/31/opioid-epidemic-nejm-letter/.

[103] Press Release, OxyContin, New Hope for Millions of Americans Suffering from Persistent Pain: Long-Acting OxyContin Tablets Now Available to Relieve Pain (May 31, 1996), http://documents.latimes.com/oxycontin-press-release-1996/.

273. Purdue, through its unbranded website *Partners Against Pain*,[108] stated the following: "Current Myth: Opioid addiction (psychological dependence) is an important clinical problem in patients with moderate to severe pain treated with opioids. Fact: Fears about psychological dependence are exaggerated when treating appropriate pain patients with opioids."

274. Former sales representative Steven May, who worked for Purdue from 1999 to 2005, explained to a journalist how he and his coworkers were trained to overcome doctors' objections to prescribing opioids. The most common objection he heard about prescribing OxyContin was that "it's just too addictive."[109] May and his coworkers were trained to "refocus" doctors on "legitimate" pain patients, and to represent that "legitimate" patients would not become addicted. In addition, they were trained to say that the 12-hour dosing made the extended-release opioids less "habit-forming" than painkillers that need to be taken every four hours.

275. According to interviews with prescribers and former Purdue sales representatives, Purdue has continued to distort or omit the risk of addiction while failing to correct its earlier misrepresentations, leaving many doctors with the false impression that pain patients will only rarely become addicted to opioids.

276. With regard to addiction, Purdue's label for OxyContin has not sufficiently disclosed the true risks to, and experience of, its patients. Until 2014, the OxyContin label stated

---

[108] *Partners Against Pain* consists of both a website, styled as an "advocacy community" for better pain care, and a set of medical education resources distributed to prescribers by sales representatives. It has existed since at least the early 2000s and has been a vehicle for Purdue to downplay the risks of addiction from long-term opioid use. One early pamphlet, for example, answered concerns about OxyContin's addictiveness by claiming: "Drug addiction means using a drug to get 'high' rather than to relieve pain. You are taking opioid pain medication for medical purposes. The medical purposes are clear and the effects are beneficial, not harmful."

[109] David Remnick, *How OxyContin Was Sold to the Masses* (Steven May interview with Patrick Radden Keefe), THE NEW YORKER, Oct. 27, 2017, https://www.newyorker.com/podcast/the-new-yorker-radio-hour/how-oxycontin-was-sold-to-the-masses.

at the bottom. Kathe and the *Project Tango* team reviewed their findings that the "market" of people addicted to opioids, measured coldly in billions of dollars, had doubled from 2009 to 2014:




*Purdue's measure of the opioid addiction "market"*

281. Kathe and the staff found that the catastrophe provided an excellent compound annual growth rate ("CAGR"): "Opioid addiction (other than heroin) has grown by ~20% CAGR from 2000 to 2010." Kathe and the staff revealed in their internal documents that Purdue's tactic of blaming addiction on untrustworthy patients was a lie. Instead, the truth is that opioid addiction can happen to anyone who is prescribed opioids:

> - *"This can happen to any-one – from a 50 year old woman with chronic lower back pain to a 18 year old boy with a sports injury, from the very wealthy to the very poor"*

*Purdue's "Project Tango" patient and clinical rationale*

288. APF conveyed through its National Initiative on Pain Control ("NIPC") and its website *www.Painknowledge.com*, which claimed that "[p]eople who take opioids as prescribed usually do not become addicted."

289. Another Endo website, *www.PainAction.com*, stated: "Did you know? Most chronic pain patients do not become addicted to the opioid medications that are prescribed for them."

290. A brochure available on *www.Painknowledge.com* titled "Pain: Opioid Facts," an Endo- sponsored NIPC, stated that "people who have no history of drug abuse, including tobacco, and use their opioid medication as directed will probably not become addicted." In numerous patient education pamphlets, Endo repeated this deceptive message.

291. In a patient education pamphlet titled "Understanding Your Pain: Taking Oral Opioid Analgesics," Endo answers the hypothetical patient question— "What should I know about opioids and addiction?" —by focusing on explaining what addiction is ("a chronic brain disease") and is not ("Taking opioids for pain relief"). It goes on to explain that "[a]ddicts take opioids for other reasons, such as unbearable emotional problems. Taking opioids as prescribed for pain relief is not addiction." This publication is still available online and was edited by KOL Dr. Russell Portenoy.[110]

292. In addition, a 2009 patient education publication, *Pain: Opioid Therapy*, funded by Endo and posted on *www.Painknowledge.com*, omitted addiction from the "common risks" of opioids, as shown below:

---

[110] Margo McCaffery, RN MS, FAAN & Chris Pasero, RN, MS FAAN, *Understanding Your Pain, Taking Oral Opioid Analgesics*, http://www.thblack.com/links/rsd/understand_pain_opioid_analgesics.pdf (last accessed October 26, 2018).

"myth" that opioids are addictive, and asserted as fact that "[m]any studies show that opioids are *rarely* addictive when used properly for the management of chronic pain" (emphasis in original). Until recently, this guide was still available online.

> **Opioid myths**
>
> **Myth:** Opioid medications are always addictive.
>
> **Fact:** Many studies show that opioids are *rarely* addictive when used properly for the management of chronic pain.

297. Janssen's website for Duragesic included a section addressing "Your Right to Pain Relief" and a hypothetical patient's fear that "I'm afraid I'll become a drug addict." The website's response: "Addiction is relatively rare when patients take opioids appropriately."

**d. Cephalon's Misrepresentations Regarding Addiction Risk**

298. Cephalon sponsored and facilitated the development of a guidebook, *Opioid Medications and REMS: A Patient's Guide*, which included claims that "patients without a history of abuse or a family history of abuse do not commonly become addicted to opioids." Similarly, Cephalon sponsored APF's *Treatment Options: A Guide for People Living with Pain* (2007), which taught that addiction is rare and limited to extreme cases of unauthorized dose escalations, obtaining opioids from multiple sources, or theft.

299. For example, a 2003 Cephalon-sponsored CME presentation titled *Pharmacologic Management of Breakthrough or Incident Pain*, posted on Medscape in February 2003, teaches:

302. By 2012, Mallinckrodt, through the C.A.R.E.S. Alliance, was promoting a book titled *Defeat Chronic Pain Now!* This book is still available online.[113] The false claims and misrepresentations in this book include the following statements:

a. "Only rarely does opioid medication cause a true addiction when prescribed appropriately to a chronic pain patient who does not have a prior history of addiction."

b. "It is currently recommended that every chronic pain patient suffering from moderate to severe pain be viewed as a potential candidate for opioid therapy."

c. "When chronic pain patients take opioids to treat their pain, they rarely develop a true addiction and drug craving."

d. "Only a minority of chronic pain patients who are taking long-term opioids develop tolerance."

e. "**The bottom line:** Only rarely does opioid medication cause a true addiction when prescribed appropriately to a chronic pain patient who does not have a prior history of addiction."

f. "Here are the facts. It is very uncommon for a person with chronic pain to become 'addicted' to narcotics IF (1) he doesn't have a prior history of any addiction and (2) he only takes the medication to treat pain."

g. "Studies have shown that many chronic pain patients can experience significant pain relief with tolerable side effects from opioid narcotic medication when taken daily and no addiction."

303. In a 2013 *Mallinckrodt Pharmaceuticals Policy Statement Regarding the Treatment of Pain and Control of Opioid Abuse*, which is still available online, Mallinckrodt stated

---

[113] Bradley S. Galder, M.D. & Charles Argoff, M.D., Defeat Chronic Pain Now!: Groundbreaking Strategies for Eliminating the Pain of Arthritis, Back and Neck Conditions, Migraines Diabetic Neuropathy, and Chronic Illness, (Fair Winds Press 2010), *available at*, https://books.google.com/books?id=VcSQGYKXWdYC&printsec=frontcover&source=gbs_ViewAPI#v=snippet&q=only%20rarely%20does%20opioid%20medication&f=false.

306. Purdue shared its *Partners Against Pain "Pain Management Kit,"* which contains several screening tools and catalogues of Purdue materials.

307. Janssen, on its website *www.PrescribeResponsibly.com*, states that the risk of opioid addiction "can usually be managed" through tools such as opioid agreements between patients and doctors.[114] The website, which directly provides screening tools to prescribers for risk assessments,[115] includes a "[f]our question screener" to purportedly help physicians identify and address possible opioid misuse.[116]

308. Purdue and Cephalon sponsored the APF's Treatment Options: *A Guide for People Living with Pain* (2007), which also falsely reassured patients that opioid agreements between doctors and patients can "ensure that you take the opioid as prescribed" and counseled patients that opioids "give [pain patients] a quality of life we deserve."

309. Purdue sponsored a 2011 webinar taught by Dr. Lynn Webster, entitled *Managing Patient's Opioid Use*: Balancing the Need and Risk. This publication misleadingly taught prescribers that screening tools, urine tests, and patient agreements have the effect of preventing "overuse of prescriptions" and "overdose deaths."

---

[114] Howard A. Heit, MD, FACP, FASAM & Douglas L. Gourlay, MD, MSc, FRCPC, FASAM, *What a Prescriber Should Know Before Writing the First Prescription*, PRESCRIBE RESPONSIBLY. As of the date of this filing, the "Prescribe Responsibly" website is unavailable, but an archived version of this article may be accessed here: https://web.archive.org/web/20171003105720/http://www.prescriberesponsibly.com/articles/before-prescribing-opioids (hereinafter "*What a Prescriber Should Know Before Writing the First Prescription Prescribing Opioids.*").

[115] As of the date of this filing, the website is no longer available, but an archived version is available at https://web.archive.org/web/20190129201700/http://www.prescriberesponsibly.com/risk-assessment-resources.

[116] *Id.*

identified through such screening can take opioids long-term without significant danger of addiction.

### 3. **Falsehood #3: Signs of Addictive Behavior are "Pseudoaddiction" Requiring More Opioids**

314. The Marketing Defendants instructed patients and prescribers that signs of addiction are actually indications of untreated pain, such that the appropriate response is to prescribe even more opioids. Dr. David Haddox, who later became a Senior Medical Director for Purdue, published a study in 1989 coining the term "pseudoaddiction," which he characterized as "the iatrogenic syndrome of abnormal behavior developing as a direct consequence of inadequate pain management."[117] In other words, people on prescription opioids who exhibited classic signs of addiction— for example, asking for more and higher doses of opioids, self-escalating their doses, or claiming to have lost prescriptions in order to get more opioids—were not addicted, but rather simply suffering from under-treatment of their pain.

315. In the materials and outreach they produced, sponsored, or controlled, the Marketing Defendants made each of these misrepresentations and omissions, and have never acknowledged, retracted, or corrected them.

316. Cephalon, Endo, and Purdue sponsored the Federation of State Medical Boards' ("FSMB") *Responsible Opioid Prescribing* (2007) written by Dr. Scott Fishman and discussed in more detail below, which taught that behaviors such as "requesting drugs by name," "demanding or manipulative behavior," seeing more than one doctor to obtain opioids, and hoarding, which are signs of genuine addiction, are all really signs of "pseudoaddiction."

---

[117] David E. Weissman & J. David Haddox, *Opioid pseudoaddiction—an iatrogenic syndrome*, 36(3) Pain 363-66 (Mar. 1989), https://www.ncbi.nlm.nih.gov/pubmed/2710565. ("Iatrogenic" describes a condition induced by medical treatment.)

instead suffer from "pseudoaddiction" because "opioids are frequently prescribed in doses that are inadequate." Doctors on Purdue's payroll admitted in writing that pseudoaddiction was used to describe "behaviors that are clearly characterized as drug abuse" and put Purdue at risk of "ignoring" addiction and "sanctioning abuse." Purdue, nevertheless, urged doctors to respond to signs of addiction by prescribing higher doses of Purdue's drugs.

321. Purdue publications touting the concept of "pseudoaddiction" were regularly provided to the Purdue Individual Defendants by Purdue staff. Staff also regularly reported on the distribution of such materials to the Purdue Individual Defendants.

322. Endo also sponsored a NIPC CME program in 2009 titled *Chronic Opioid Therapy: Understanding Risk While Maximizing Analgesia*, which promoted pseudoaddiction and listed "[d]ifferentiation among states of physical dependence, tolerance, pseudoaddiction, and addiction" as an element to be considered in awarding grants to CME providers.

323. Endo itself has repudiated the concept of pseudoaddiction. In finding that "[t]he pseudoaddiction concept has never been empirically validated and in fact has been abandoned by some of its proponents," the New York Attorney General, in a 2016 settlement with Endo, reported that "Endo's Vice President for Pharmacovigilance and Risk Management testified to [the NY AG] that he was not aware of any research validating the 'pseudoaddiction' concept" and acknowledged the difficulty in distinguishing "between addiction and 'pseudoaddiction.'"[118] Endo thereafter agreed not to "use the term 'pseudoaddiction' in any training or marketing" in New York.

---

[118] Attorney General of the State of New York, *In the Matter of Endo Health Solutions Inc. & Endo Pharmaceuticals Inc.*, Assurance No.:15-228, Assurance of Discontinuance Under Executive Law Section 63, Subdivision 15 at 7, *available at* https://www.ag.ny.gov/pdfs/Endo_AOD_030116-Fully_Executed.pdf.

### 4. Falsehood #4: Blaming Addicted Patients as "Untrustworthy" "Abusers"

327. A recurring strategy employed by the Purdue Defendants, over a period of decades, was to blame any negative consequences from opioid use on moral failings of a minority of users, who would be labeled as "abusers" or "untrustworthy" people.

328. In 2001, Defendant Richard Sackler wrote down his solution to the overwhelming evidence of overdose and death: blame and stigmatize people who become addicted to opioids. Sackler wrote in a confidential email: "we have to hammer on the abusers in every way possible. They are the culprits and the problem. They are reckless criminals." The Sackler Defendants chose to stigmatize people who were hurt by opioids, calling them "junkies" and "criminals."

329. In December 2011, Defendant John Stewart gave a speech titled Providing Relief, Preventing Abuse in Connecticut, which deceptively blamed the addiction, overdose, and death on "abuse." A Purdue pamphlet entitled *Responsible Opioid Prescribing* told doctors that only "a small minority of people seeking treatment may not be reliable or trustworthy" and not suitable for addictive opioid drugs.

330. Purdue managers praised sales representatives for pitching doctors on the idea that prescribing to "trustworthy" patients was safe. A sales rep reported that one doctor: "let me know that she will Rx OxyContin when the pts [patients] has chronic pain and are trustworthy." The rep added that he would "Follow up with Dr and ask what pts does she consider 'trust worthy?'" A Purdue district manager responded: "Great follow up question on what patients does he consider trustworthy."

331. Defendant Richard Sackler, in a 2007 patent application he filed for a purported treatment for opioid addiction, referred to addicts as "junkies." In the application, he asks for a monopoly on the treatment of addicts. He received the patent in January 2018.

### 6. Falsehood #6: Opioid Doses Can Be Increased Without Limit or Greater Risk

337. In materials they produced, sponsored, or controlled, Marketing Defendants instructed prescribers that they could safely increase a patient's dose to achieve pain relief. Each of the Marketing Defendants' claims was deceptive in that they omitted warnings of increased adverse effects that occur at higher doses that were confirmed by scientific evidence.

338. These misrepresentations were integral to the Marketing Defendants' promotion of prescription opioids. As discussed above, patients develop a tolerance to opioids' analgesic effects, so that achieving long-term pain relief requires constantly increasing the dose. Patients who take larger doses, and who escalate to larger doses faster, are much more likely to remain on opioids for a longer period of time, resulting in increased revenue.

339. In addition, sales representatives aggressively pushed doctors to prescribe stronger doses of opioids. For example, one Purdue sales representative wrote about how his regional manager would drill the sales team on their upselling tactics:

> It went something like this. "Doctor, what is the highest dose of OxyContin you have ever prescribed?" "20mg Q12h." "Doctor, if the patient tells you their pain score is still high you can increase the dose 100% to 40mg Q12h, will you do that?" "Okay." "Doctor, what if that patient then came back and said their pain score was still high, did you know that you could increase the OxyContin dose to 80mg Q12h, would you do that?" "I don't know, maybe." "Doctor, but you do agree that you would at least Rx the 40mg dose, right?" "Yes."

340. The next week the representative would see that same doctor and go through the same discussion with the goal of selling higher and higher doses of OxyContin. Stronger doses were more expensive and increased the likelihood of addiction.

341. These misrepresentations were particularly dangerous. Opioid doses at or above 50 MME (morphine milligram equivalents)/day double the risk of overdose compared to 20

suggest a positive association between high-dose opioid use and the risk of overdose and/or overdose mortality." A study of the Veterans Health Administration from 2004 to 2008 found the rate of overdose deaths is directly related to maximum daily dose.

### 7. Falsehood #7: Long-term Opioid Use Improves Functioning

347. Despite the lack of evidence of improved function and the existence of evidence to the contrary, the Marketing Defendants consistently promoted opioids for patients' function and quality of life because they viewed these claims as a critical part of their marketing strategies. In recalibrating the risk-benefit analysis for opioids, increasing the perceived benefits of treatment was necessary to overcome its risks.

348. Janssen, for example, promoted Duragesic as improving patients' functioning and work productivity through an ad campaign that included the following statements: "[w]ork, uninterrupted," "[l]ife, uninterrupted," "[g]ame, uninterrupted," "[c]hronic pain relief that supports functionality," and "[i]mprove[s] . . . physical and social functioning."

349. Purdue noted the need to compete with this messaging, despite the lack of data supporting improvement in quality of life with OxyContin treatment:

> Janssen has been stressing decreased side effects, especially constipation, as well as patient quality of life, as supported by patient rating compared to sustained release morphine . . . We do not have such data to support OxyContin promotion. . . . In addition, Janssen has been using the "life uninterrupted" message in promotion of Duragesic for non-cancer pain, stressing that Duragesic "helps patients think less about their pain." This is a competitive advantage based on our inability to make any quality of life claims.[121]

350. Despite its acknowledgment that "[w]e do not have such data to support OxyContin promotion," Purdue ran a full-page ad for OxyContin in the Journal of the American Medical Association, proclaiming, "There Can Be Life With Relief," and showing a man happily fly-

---

[121] *Pain Killer*, *supra* n. 98, at 281.

cover and lists examples of expected functional improvement from opioids, like sleeping through the night, returning to work, recreation, sex, walking, and climbing stairs. It assures patients that, "[u]sed properly, opioid medications can make it possible for people with chronic pain to 'return to normal.'" Similarly, *Responsible Opioid Prescribing* (2007), sponsored and distributed by Teva, Endo, and Purdue, taught that relief of pain by opioids, by itself, improved patients' function. The book remains for sale online.

355. In addition, Janssen's *Let's Talk Pain* website featured a video interview, which was edited by Janssen personnel, claiming that opioids were what allowed a patient to "continue to function," falsely implying that her experience would be representative.

356. Endo's NIPC website, *www.Painknowledge.com*, claimed that with opioids, "your level of function should improve; you may find you are now able to participate in activities of daily living, such as work and hobbies, that you were not able to enjoy when your pain was worse." In addition to "improved function," the website touted improved quality of life as a benefit of opioid therapy. The grant request that Endo approved for this project specifically indicated NIPC's intent to make claims of functional improvement.

357. Endo was the sole sponsor, through NIPC, of a series of CMEs titled *Persistent Pain in the Older Patient*, which claimed that chronic opioid therapy has been "shown to reduce pain and improve depressive symptoms and cognitive functioning." The CME was disseminated via webcast.

example, a 2006 study-of-studies found that opioids as a class did not demonstrate improvement in functional outcomes over other non-addicting treatments. The few longer-term studies of opioid use had "consistently poor results," and "several studies have showed that Opioids for chronic pain may actually worsen pain and functioning . . ."[126] along with general health, mental health, and social function. Over time, even high doses of potent opioids often fail to control pain, and patients exposed to such doses are unable to function normally.

361. On the contrary, the available evidence indicates opioids may worsen patients' health and pain. Increased duration of opioid use is strongly associated with increased prevalence of mental health disorders (depression, anxiety, post-traumatic stress disorder, and substance abuse), increased psychological distress, and greater health care utilization. The CDC Guideline concluded that "[w]hile benefits for pain relief, function and quality of life with long-term opioid use for chronic pain are uncertain, risks associated with long-term opioid use are clearer and significant."[127] According to the CDC, "for the vast majority of patients, the known, serious, and too-often-fatal risks far outweigh the unproven and transient benefits [of opioids for chronic pain]."[128]

362. As one pain specialist observed, "opioids may work acceptably well for a while, but over the long term, function generally declines, as does general health, mental health, and

---

[126] Thomas Frieden & Debra Houry, *Reducing the Risks of Relief – The CDC Opioid-Prescribing Guideline*, 374 New Eng. J. Med., at 1503 (Apr. 21, 2016), DOI: 10.1056/NEJMp1515917, *available at* https://www.nejm.org/doi/full/10.1056/NEJMp1515917 (hereinafter "*Reducing the Risks of Relief*").

[127] Dowell, CDC Guideline, *supra* n. 26, at 2, 18.

[128] *Reducing the Risks of Relief*, *supra* n. 127.

364. For example, in addition to failing to disclose the risks of addiction, overdose, and death in promotional materials, the Marketing Defendants routinely ignored the risks of hyperalgesia, a "known serious risk associated with chronic opioid analgesic therapy in which the patient becomes more sensitive to certain painful stimuli over time,"[132] hormonal dysfunction,[133] decline in immune function; mental clouding, confusion, and dizziness, increased falls and fractures in the elderly,[134] NAS (when an infant exposed to opioids prenatally suffers withdrawal after birth), and potentially fatal interactions with alcohol or with benzodiazepines, which are used to treat anxiety and may be co-prescribed with opioids, particularly to veterans suffering from pain.[135]

365. The APF's *Treatment Options: A Guide for People Living with Pain*, sponsored by Purdue and Cephalon, warned that risks of NSAIDs increase if "taken for more than a period of

---

[132] Letter from Janet Woodcock, M.D., Dir., Ctr. For Drug Eval. & Res., to Andrew Kolodny, M.D., Pres. *Physicians for Responsible Opioid Prescribing,* Re: Docket No. FDA-2012-P-0818 (Sept. 10, 2013), *available at* http://paindr.com/wp-content/uploads/2013/09/FDA_CDER_Response_to_Physicians_for_Responsible_Opioid_Prescribing_Partial_Petition_Approval_and_Denial.pdf.

[133] H.W. Daniell, Hypogonadism in men consuming sustained-action oral opioids, 3(5) J. Pain 377-84 (2001), https://www.jpain.org/article/S1526-5900(02)00032-9/fulltext.

[134] *See* Bernhard M. Kuschel et al., *The risk of fall injury in relation to commonly prescribed medications among older people – a Swedish case-control study*, 25 Eur. J. Pub. H. 527-32 (July 31, 2014), doi: 10.1093/eurpub/cku120, https://www.ncbi.nlm.nih.gov/pubmed/25085470.

[135] Karen H. Seal et al., *Association of Mental Health Disorders With Prescription Opioids and High- Risk Opioids in US Veterans of Iraq and Afghanistan*, 307(9) J. Am. Med. Ass'n 940-47, (Mar. 7, 2012) doi:10.1001/jama.2012.234, https://jamanetwork.com/journals/jama/fullarticle/1105046.

> Opioids represent a highly effective but controversial and often misunderstood class of analgesic medications for controlling both chronic and acute pain. The phenomenon of tolerance to opioids – the gradual waning of relief at a given dose – and fears of abuse, diversion, and misuse of these medications by patients have led many clinicians to be wary of prescribing these drugs, and/or to restrict dosages to levels that may be insufficient to provide meaningful relief.[138]

369. To help allay these concerns, Endo emphasized the risks of NSAIDs as an alternative to opioids. The article included a case study that focused on the danger of extended use of NSAIDs, including that the subject was hospitalized with a massive upper gastrointestinal bleed believed to have resulted from his protracted NSAID use. In contrast, the article did not provide the same detail concerning the serious side effects associated with opioids.

370. Additionally, Purdue, acting with Endo, sponsored *Overview of Management Options*, a CME issued by the AMA in 2003, 2007, 2010, and 2013. The 2013 version remains available for CME credit. The CME taught that NSAIDs and other drugs, but not opioids, are unsafe at high doses.

371. As a result of the Marketing Defendants' deceptive promotion of opioids over safer and more effective drugs, opioid prescriptions increased even as the percentage of patients visiting a doctor for pain remained constant. A study of 7.8 million doctor visits between 2000 and 2010 found that opioid prescriptions increased from 11.3% to 19.6% of visits, as NSAID and acetaminophen prescriptions fell from 38% to 29%, driven primarily by the decline in NSAID prescribing.[139]

---

[138] *Id.*

[139] M. Daubresse, et al., *Ambulatory Diagnosis and Treatment of Nonmalignant Pain in the United States, 2000-2010*, 51(10) Med. Care, 870-878 (2013), *available at* https://insights.ovid.com/pubmed?pmid=24025657 ("For back pain alone, the percentage of patients prescribed opioids increased from 19% to 29% between 1999 and 2010, even as the use




Figure 1

374. The reduced release of the drug over time means that the OxyContin no longer provides the same level of pain relief; as a result, in many patients, OxyContin does not last for the twelve hours for which Purdue promotes it—a fact that Purdue has known at all times relevant to this action.

375. OxyContin tablets provide an initial absorption of approximately 40% of the active medicine. This has a two-fold effect. First, the initial rush of nearly half of the powerful opioid triggers a powerful psychological response. OxyContin thus behaves more like an immediate release opioid, which Purdue itself once claimed was more addicting in its original 1995 FDA-approved drug label. Second, the initial burst of oxycodone means that there is less of the drug at the end of the dosing period, which results in the drug not lasting for a full twelve hours and precipitates withdrawal symptoms in patients, a phenomenon known as "end of dose" failure. (The FDA found in 2008 that a "substantial number" of chronic pain patients will experience end-of-dose failure with OxyContin.)




379. Purdue's 12-hour messaging was key to its competitive advantage over short-acting opioids that required patients to wake in the middle of the night to take their pills. Purdue advertisements also emphasized "Q12h" dosing. These include an advertisement in the February 2005 *Journal of Pain* and 2006 *Clinical Journal of Pain* featuring an OxyContin logo with two pill cups, reinforcing the twice-a-day message. A Purdue memo to the OxyContin launch team stated that "OxyContin's positioning statement is 'all of the analgesic efficacy of immediate-release oxycodone, with convenient q12h dosing,'" and further that "[t]he convenience of q12h dosing was emphasized as the most important benefit."[141]

380. Purdue executives therefore maintained the messaging of twelve-hour dosing even when many reports surfaced that OxyContin did not last twelve hours. Instead of acknowledging a need for more frequent dosing, Purdue instructed its representatives to push higher-strength pills, even though higher dosing carries its own risks, as noted above. Higher dosing also means that

[141] Purdue Meeting Memo, *OxyContin launch*, LOS ANGELES TIMES, May 5, 2016, *available at* http://documents.latimes.com/oxycontin-launch-1995/.

384. Purdue's failure to disclose the prevalence of end-of-dose failure meant that prescribers were misinformed about the true effects of OxyContin in a manner that preserved Purdue's competitive advantage and profits, at the expense of patients, who were placed at greater risk of overdose, addiction, and other adverse effects.

### 10. <u>Falsehood #10: New Formulations of Certain Opioids Successfully Deter Abuse</u>

385. Rather than take the widespread abuse of and addiction to opioids as reason to cease their untruthful marketing efforts, Marketing Defendants Purdue and Endo seized them as an opportunity to compete. These companies developed and oversold "abuse-deterrent formulations" ("ADF") opioids as a solution to opioid abuse and as a reason that doctors could continue to safely prescribe their opioids, as well as an advantage of these expensive branded drugs over other opioids. These Defendants' false and misleading marketing of the benefits of their ADF opioids preserved and expanded their sales and falsely reassured prescribers thereby prolonging the opioid epidemic. Other Marketing Defendants, including Actavis and Mallinckrodt, also promoted their branded opioids as formulated to be less addictive or less subject to abuse than other opioids.

386. The CDC Guideline confirms that "[n]o studies" support the notion that "abuse-deterrent technologies [are] a risk mitigation strategy for deterring or preventing abuse," noting that the technologies "do not prevent opioid abuse through oral intake, the most common route of opioid abuse, and can still be abused by non-oral routes." Tom Frieden, the former Director of the CDC, reported that his staff could not find "any evidence showing the updated opioids [ADF opioids] actually reduce rates of addiction, overdoses, or death."

#### a. Purdue's Deceptive Marketing of Reformulated OxyContin and Hysingla ER

387. Reformulated ADF OxyContin was approved by the FDA in April 2010. It was not until 2013 that the FDA, in response to a citizen petition filed by Purdue, permitted reference to

d. asserted or suggested that Purdue's ADF opioids are safer than other opioids, could not be abused or tampered with, and were not sought out for diversion; and

e. failed to disclose that Purdue's ADF opioids do not impact oral abuse or misuse.

391. If pressed, Purdue acknowledged that perhaps some "extreme" patients might still abuse the drug but claimed the ADF features protect the majority of patients. These misrepresentations and omissions are misleading and contrary to Purdue's ADF labels, Purdue's own information, and publicly available data.

392. Purdue knew or should have known that reformulated OxyContin is not more tamper-resistant than the original OxyContin and is still regularly tampered with.

393. In 2009, the FDA noted in permitting ADF labeling that "the tamper-resistant properties will have no effect on abuse by the oral route (the most common mode of abuse)." In the 2012 medical office review of Purdue's application to include an abuse-deterrence claim in its label for OxyContin, the FDA noted that the overwhelming majority of deaths linked to OxyContin were associated with oral consumption, and that only 2% of deaths were associated with recent injection and only 0.2% with snorting the drug.

394. The FDA's Director of the Division of Epidemiology stated in September 2015 that no data that she had seen suggested the reformulation of OxyContin "actually made a reduction in abuse," between continued oral abuse, shifts to injection of other drugs (including heroin), and defeat of the ADF mechanism. Even Purdue's own funded research shows that half of OxyContin abusers continued to abuse the drug orally after the reformulation rather than shift to other drugs.

395. A 2013 article presented by Purdue employees, based on review of data from poison control centers, concluded that ADF OxyContin can reduce abuse, but ignored important negative findings. The article revealed that abuse merely shifted to other drugs and that, when the actual

399. Despite its own evidence of abuse, and the lack of evidence regarding the benefit of Purdue's ADF opioids in reducing abuse, Dr. J. David Haddox, the Vice President of Health Policy for Purdue, falsely claimed in 2016 that the evidence does not show that Purdue's ADF opioids are being abused in large numbers. Purdue's recent advertisements in national newspapers also continues to claim its ADF opioids as evidence of its efforts to reduce opioid abuse, continuing to mislead prescribers, patients, payors, and the public about the efficacy of its actions.

**b. Endo's Deceptive Marketing of Reformulated Opana ER**

400. Opana ER was particularly likely to be tampered with and abused. That is because Opana ER has lower "bioavailability" than other opioids, meaning that the active pharmaceutical ingredient (the "API" or opioid) does not absorb into the bloodstream as rapidly as other opioids when taken orally. Additionally, when swallowed whole, the extended-release mechanism remains intact, so that only 10% of Opana ER's API is released into the patient's bloodstream relative to injection; when it is taken intranasally, that rate increases to 43%. The larger gap between bioavailability when consumed orally versus snorting or injection, the greater the incentive for users to manipulate the drug's means of administration.

401. In December 2011, Endo obtained approval for a new formulation of Opana ER that added a hard coating that the company claimed made it crush-resistant.

402. Even prior to its approval, the FDA advised Endo that it could not market the new Opana ER as abuse-deterrent.

403. Nonetheless, in August of 2012, Endo submitted a citizen petition asking the FDA for permission to change its label to indicate that Opana ER was abuse-resistant, both in that it was less able to be crushed and snorted and that it was resistant to injection by syringe. Borrowing a page from Purdue's playbook, Endo announced it would withdraw original Opana ER from the

it developed Opana ER for patient safety reasons and that the new formulation would help, for example, "where children unintentionally chew the tablets prior to an accidental ingestion."[149]

407. However, in a 2013 decision rejecting the petition, the FDA found that "study data show that the reformulated version's extended-release features can be compromised when subjected to . . . cutting, grinding, or chewing." The FDA also determined that "reformulated Opana ER" could also be "readily prepared for injections and more easily injected[.]" In fact, the FDA warned that preliminary data—including in Endo's own studies—suggested that a higher percentage of reformulated Opana ER abuse is via injection than was the case with the original formulation.

408. In 2009, only 3% of Opana ER abuse was by intravenous means. Since the reformulation, injection of Opana ER has increased by more than 500%. Endo's own data, presented in 2014, found that between October 2012 and March 2014, 64% of abusers of Opana ER did so by injection, compared with 36% for the old formulation.[150] The transition into injection of Opana ER made the drug even less safe than the original formulation. Injection carries risks of HIV, hepatitis C, and, in reformulated Opana ER's specific case, the blood-clotting disorder thrombotic thrombocytopenic purpura (TTP), which can cause kidney failure.

409. Publicly, Endo sought to minimize the problem. On a 2013 call with investors, when asked about an outbreak of TTP in Ohio from injecting Opana ER, Endo sought to limit its import by assigning it to "a very, very distinct area of the country."

---

[149] Citizens Petition, FDA Docket 2012-8-0895, at 2.

[150] Theresa Cassidy et al., *The Changing Abuse Ecology: Implications for Evaluating the Abuse Pattern of Extended-Release Oxymorphone and Abuse-Deterrent Opioid Formulations*, Inflexxion (Sept. 7, 2014), https://www.inflexxion.com/changing-abuse-ecology-extended-release-oxymorphone/.

an Endo press release, described Opana ER as "crush-resistant." This article was posted on the *Pain Medicine News* website, which was accessible to patients and prescribers.

414. In 2015, the Indiana Department of Public Health determined that an HIV outbreak in Southeastern Indiana was linked to injection of Opana,[151] the first documented HIV outbreak in the United States associated with injection of a prescription painkiller. After the outbreak, the FDA required "that Endo Pharmaceuticals remove [Opana ER] from the market." The agency sought removal "based on its concern that the benefits of the drug may no longer outweigh its risks."[152]

415. In March 2017, because Opana ER could be "readily prepared for injection" and was linked to outbreaks of HIV and TTP, an FDA advisory committee recommended that Opana be withdrawn from the market. The FDA adopted this recommendation on June 8, 2017.[153] Endo announced on July 6, 2017 that it would agree to stop marketing and selling Opana ER.[154] However, by this point, the damage had been done. Even then, Endo continued to insist, falsely, that it "has taken significant steps over the years to combat misuse and abuse."

---

[151] Press Release, State of Ind. Health Dep't, HIV Outbreak in Southeastern Indiana, (Feb. 25, 2015), http://www.in.gov/activecalendar/EventList.aspx?fromdate=1/1/2015&todate=12/31/2015&display=Month&type=public&eventidn=210259&view=EventDetails&information_id=211489.

[152] Jen Christensen, *FDA wants Opioid Painkiller Pulled off Market*, CNN (June 8, 2017), https://www.cnn.com/2017/06/08/health/fda-opioid-opana-er-bn/index.html; FDA Requests Removal of Opana ER, *supra* n. 70.

[153] *Id.*; FDA Requests Removal of Opana ER, *supra* n. 70.

[154] Endo Provides Update on Opana ER, *supra* n. 71.

ingestion—and their statements regarding abuse-deterrent formulations give the misleading impression that these reformulated opioids can be prescribed safely.

419. In sum, each of the nine categories of misrepresentations discussed above regarding the use of opioids to treat chronic pain was either not supported by or was contrary to the scientific evidence. In addition, the Defendants' misrepresentations and omissions as set in this Complaint are misleading and contrary to the Marketing Defendants' products' labels.

## B. The Marketing Defendants Directly Targeted Hospitals

420. From the beginning, hospitals were directly targeted by the Marketing Defendants. Internal documents from the 1995 "OxyContin Launch" orchestrated by Defendants Purdue and Abbott (1) identified "hospital pharmacists" as among their "audience," (2) identified "hospitals" among their "institutional targets," (3) identified an objective of "[f]ormulary acceptance in 75% of hospitals for first twelve months," and (4) identified an objective of developing a "successful distribution program" to "hospitals."

421. In 1996, Purdue made a deal with Defendant Abbott under which Abbott's sales force would promote Purdue's lead opioid, OxyContin, in hospitals. Abbott's co-promotion of OxyContin was, in the words of Abbott's counsel, by terms of its contract, dedicated to "hospitals, surgical centers and hospital-based surgeons." Promoting the use of OxyContin for "postoperative pain" and "support[ing] the Abbott agreement" were paramount objectives identified in Purdue's internal documents. "Abbott and Purdue consciously targeted hospitals. [Purdue] representatives will work with their Abbott counterparts to make calls on all Pharmacy and Therapeutic (P&T)

"commissions." From 1996 through 2002, Abbott was paid $374 million in commissions, according to those documents. Total sales of the drug during that time were nearly $5 billion. From 2003 to 2006, OxyContin sales were nearly $6 billion. From 1996 to 2005, inclusive, Abbott's "commissions" exceeded $500 million.

424. The importance of targeting hospital emergency rooms was illustrated by a study that demonstrated that patients who receive an opiate prescription within 7 days of surgery are 44% more likely to still be using the medication one year after surgery than patients who do not receive an opioid prescription."[159]

**C. <u>The Marketing Defendants Disseminated Their Misleading Messages About Opioids Through Multiple Direct and Indirect Channels</u>**

425. The Marketing Defendants spread their false and deceptive statements by marketing their branded opioids directly to doctors and patients throughout the United States. The Marketing Defendants also deployed seemingly unbiased and independent third parties that they controlled to spread their false and deceptive statements about the risks and benefits of opioids for the treatment of chronic pain throughout the country, including those communities served by Plaintiffs.

426. Across the pharmaceutical industry, "core message" development is funded and overseen on a national basis by the drug manufacturers' corporate headquarters. This comprehensive approach ensures that the Marketing Defendants' messages are accurately and consistently delivered across marketing channels – including detailing visits, speaker events, and

[159] Cheryl Genord et al., *Opioid exit plan: A pharmacist's role in managing acute postoperative pain*, Journal of the American Pharmacists Association (Jan. 2017), at 593, *available at* https://www.japha.org/article/S1544-3191(17)30016-X/fulltext (hereinafter "Opioid Exit Plan").

important means of disseminating the false narrative and increasing opioid prescriptions, and, accordingly, their sales.

430. Each Marketing Defendant promoted opioids through sales representatives (also called "detailers") and, in consideration of a reasonable opportunity for further investigation and discovery, Plaintiffs allege that small group speaker programs were designed to reach out to individual prescribers. By establishing close relationships with doctors, the Marketing Defendants were able to disseminate their misrepresentations in targeted, one-on-one settings that allowed them to promote their opioids and to allay individual prescribers' concerns about prescribing opioids for chronic pain.

431. In accordance with common industry practice, the Marketing Defendants purchased and closely analyzed prescription sales data from IMS Health (now IQVIA), a healthcare data collection, management, and analytics corporation. This data allowed them to precisely track the rates of initial and renewal prescribing by individual doctors, which allowed them to target and tailor their appeals. Sales representatives visited hundreds of thousands of doctors and disseminated the misinformation and materials described above.

432. Marketing Defendants devoted and continue to devote massive resources to direct sales contacts with doctors. In 2014 alone, Marketing Defendants spent $166 million on detailing branded opioids to doctors. This amount is twice as much as Marketing Defendants spent on detailing in 2000. The amount includes $108 million spent by Purdue, $34 million by Janssen, $13 million by Teva, and $10 million by Endo.

433. Cephalon's quarterly spending steadily climbed from below $1 million in 2000 to more than $3 million in 2014 (and more than $13 million for the year), with a peak, coinciding with the launch of Fentora, of more than $27 million in 2007, as shown below:




436. Janssen's quarterly spending dramatically rose from less than $5 million in 2000 to more than $30 million in 2011, coinciding with the launch of Nucynta ER (with yearly spending at $142 million for 2011), as shown below:



439. Each of these in-person sales visits cost Purdue money — on average more than $200 per visit. But Purdue made that money back many times over, because it convinced doctors to prescribe its addictive drugs. When Purdue identified a doctor as a profitable target, including several targets in Tennessee and southwest Virginia, Purdue visited the doctor frequently: often weekly, sometimes almost every day. Purdue salespeople, including Defendant Stokes, asked doctors to list specific patients they were scheduled to see and pressed the doctors to commit to put the patients on Purdue opioids. By the time a patient walked into a clinic, the doctor, in Purdue's words, had already "guaranteed" that he would prescribe Purdue's drugs.

440. Purdue judged its sales representatives by how many opioids they got doctors to prescribe. Sales representatives who generated the most prescriptions won bonuses and prizes. These incentives included a "Toppers Club sales contest" for sales representatives to win bonuses, based on how much a representative increased OxyContin use in her territory and how much the representative increased the broader prescribing of opioids — the same "availability of product" and "prescribing practices" factors that worsen the risk of diversion and abuse. Purdue also maintained a "President's Club Leaders Board" for Hysingla ER, indicating which territory brand managers had been most successful in meeting marketing objectives. As of February 2016, Defendant Stokes was ranked fifth nationally.

441. Purdue continued to incentivize its representatives to sell opioids even after some competitors had ended that practice. Representatives who failed to get enough patients on opioids were placed on probation, put on performance improvement plans, and they would be threatened with loss of their jobs if they did not generate more opioid sales. Those unable to generate more sales were fired. In 2015 alone, Purdue replaced 14% of its sales representatives and 20% of its District Managers for failing to create enough opioid sales.

at higher doses, and for longer periods of time. Compared to Tennessee and southwest Virginia doctors and nurses who prescribed Purdue opioids without seeing reps, Purdue's top targets were ***at least ten times more likely*** to prescribe Purdue opioids to patients who overdosed and died.

445. As of the fourth quarter of 2013, Purdue employed 632 sales representatives (including Defendant Stokes) and, during that quarter they visited prescribers 176,227 times – an annualized rate of over 700,000 visits. These statistics, including statistics specific to Tennessee and southwest Virginia, were regularly reported to the Sackler Defendants and Purdue Officer Defendants. In 2013, Purdue spent over $9 million on meals alone for its prescribers.

446. The sales visits of its staff were so important to the Sackler Defendants that Defendant Richard Sackler himself went into the field in 2013 to promote opioids to doctors alongside a sales representative. Defendant Gasdia and Purdue's Chief Compliance Officer were well aware that this was "a potential compliance risk." To make sure the Sackler Defendants' involvement in marketing stayed secret, staff instructed: "Richard needs to be mum and be anonymous." When he returned, Richard Sackler argued to the Vice President of Sales that a legally required warning about Purdue's opioids wasn't needed. He asserted that the warning "implies a danger of untoward reactions and hazards that simply aren't there." Richard Sackler insisted there should be "less threatening" ways to describe Purdue opioids.

447. Purdue intensified its marketing efforts in subsequent years, in an effort to counteract decreasing sales (sales of OxyContin peaked in 2010, and decreased somewhat in subsequent years). For 2018, the Sacklers approved a target for sales representatives to visit prescribers 1,050,000 times – which would include thousands of visits to Tennessee and southwest Virginia prescribers — almost double the number of sales visits they had ordered during the peak of OxyContin sales in 2010.

*Opioid Manufacturers and Third Party Advocacy Groups*,[163] which arose out of a 2017 Senate investigation and, drawing on disclosures from Purdue, Janssen, Insys, and other opioid manufacturers, "provides the first comprehensive snapshot of the financial connections between opioid manufacturers and advocacy groups and professional societies operating in the area of Office opioids policy,"[164] found that the Marketing Defendants made millions of dollars' worth of contributions to various Front Groups.[165]

450. The Marketing Defendants also "made substantial payments to individual group executives, staff members, board members, and advisory board members" affiliated with the Front Groups subject to the Senate Committee's study.[166]

451. As the Senate's *Fueling an Epidemic* Report found, the Front Groups "amplified or issued messages that reinforce industry efforts to promote opioid prescription and use, including guidelines and policies minimizing the risk of addiction and promoting opioids for chronic pain."[167] They also "lobbied to change laws directed at curbing opioid use, strongly criticized landmark CDC guidelines on opioid prescribing, and challenged legal efforts to hold physicians and industry executives responsible for over prescription and misbranding."[168]

452. The Marketing Defendants took an active role in guiding, reviewing, and approving many of the false and misleading statements issued by the Front Groups, ensuring that Defendants

---

[163] *Id.* at 1.

[164] *Id.*

[165] *Id.* at 3.

[166] *Id.* at 10.

[167] *Id.* at 12-15.

[168] *Id.* at 12.

Endo's control of NIPC was such that Endo listed it as one of its "professional education initiative[s]" in a plan Endo submitted to the FDA. Yet, Endo's involvement in NIPC was nowhere disclosed on the website pages describing NIPC or on *www.painknowledge.org*. Endo estimated it would reach 60,000 prescribers through NIPC.

456. APF was often called upon to provide "patient representatives" for the Marketing Defendants' promotional activities, including for Purdue's "*Partners Against Pain*" and Janssen's "*Let's Talk Pain*." Although APF presented itself as a patient advocacy organization, it functioned largely as an advocate for the interests of the Marketing Defendants, not patients. As Purdue told APF in 2001, the basis of a grant to the organization was Purdue's desire to strategically align its investments in nonprofit organizations that shared its business interests.

457. In practice, APF operated in close collaboration with Defendants, submitting grant proposals seeking to fund activities and publications suggested by Defendants and assisting in marketing projects for Defendants.

458. This alignment of interests was expressed most forcefully in the fact that Purdue hired APF to provide consulting services on its marketing initiatives. Purdue and APF entered into a "Master Consulting Services" Agreement on September 14, 2011. That agreement gave Purdue substantial rights to control APF's work related to a specific promotional project. Moreover, based on the assignment of particular Purdue "contacts" for each project and APF's periodic reporting on their progress, the agreement enabled Purdue to be regularly aware of the misrepresentations APF was disseminating regarding the use of opioids to treat chronic pain in connection with that project. The agreement gave Purdue—but not APF—the right to end the project (and, thus, APF's funding) for any reason.

Portenoy, who was also a spokesperson for Purdue. The consensus statement, which also formed the foundation of the 1998 Guidelines, was published on the AAPM's website.

462. AAPM's corporate council includes Purdue, Assertio, Teva and other pharmaceutical companies. AAPM's past presidents include Haddox (1998), Dr. Scott Fishman ("Fishman") (2005), Dr. Perry G. Fine ("Fine") (2011) and Dr. Lynn R. Webster ("Webster") (2013), all of whose connections to the opioid manufacturers are well-documented as set forth below.

463. Fishman, who also served as a KOL for Marketing Defendants, stated that he would place the organization "at the forefront" of teaching that "the risks of addiction are . . . small and can be managed."[170]

464. AAPM has received over $2.2 million in funding since 2009 from opioid manufacturers. AAPM maintained a corporate relations council, whose members paid $25,000 per year (on top of other funding) to participate. The benefits included allowing members to present educational programs at off-site dinner symposia in connection with AAPM's marquee event – its annual meeting held in Palm Springs, California, or other resort locations.

---

[170] Interview by Paula Moyer with Scott M. Fishman, M.D., Professor of Anesthesiology and Pain Medicine, Chief of the Division of Pain Medicine, Univ. of Cal., Davis (2005), *available at* http://www.medscape.org/viewarticle/500829.

the risk of a patients' addiction to opioids was low. Dr. David Haddox, who co-authored the AAPM/APS statement, was a paid speaker for Purdue at the time. Dr. Portenoy was the sole consultant. The consensus statement remained on AAPM's website until 2011.

470. AAPM and APS issued their own guidelines in 2009 ("2009 Guidelines"). AAPM, with the assistance, prompting, involvement, and funding of Defendants, issued the treatment guidelines discussed herein, and continued to recommend the use of opioids to treat chronic pain. Fourteen of the 21 panel members who drafted the 2009 Guidelines, including KOL Dr. Fine, received support from Defendants Janssen, Cephalon, Endo, and Purdue. Of these individuals, six received support from Purdue, eight from Teva, nine from Janssen, and nine from Endo.

471. Dr. Gilbert Fanciullo, now retired as a professor at Dartmouth College's Geisel School of Medicine, who served on the AAPM/APS Guidelines panel, has since described them as "skewed" by drug companies and "biased in many important respects," including the high presumptive maximum dose, lack of suggested mandatory urine toxicology testing, and claims of a low risk of addiction.

472. The 2009 Guidelines have been a particularly effective channel of deception. They have influenced not only treating physicians, but also the scientific literature on opioids; they were reprinted in the Journal of Pain, have been cited hundreds of times in academic literature, were disseminated during the relevant time period, and were and are available online. Treatment guidelines are especially influential with primary care physicians and family doctors to whom Marketing Defendants promoted opioids and whose lack of specialized training in pain management and opioids makes them more reliant on, and less able to evaluate, these guidelines.

author—taught not that opioids could be appropriate in only limited cases after other treatments had failed, but that opioids were "essential" for treatment of chronic pain, including as a first prescription option.

479. A 2004 iteration of the 1998 Guidelines and the 2007 book, *Responsible Opioid* Prescribing, also made the same claims as the 1998 Guidelines. These guidelines were posted online and were available to and intended to reach physicians nationwide, including in Perry County.

480. FSMB's 2007 publication *Responsible Opioid Prescribing* was backed largely by drug manufacturers, including Purdue, Endo and Cephalon. Purdue paid $100,000 for the printing and distribution of FSMB's Guidelines.[178]

481. The publication also received support *from* the American Pain Foundation (APF) and the American Academy of Pain Medicine (AAPM). The publication was written by Dr. Fishman, and Dr. Fine served on the Board of Advisors. In all, 163,131 copies of *Responsible Opioid Prescribing* were distributed by state medical boards.[179] The FSMB website describes the book as "the leading continuing medical education (CME) activity for prescribers of opioid medications." This publication asserted that opioid therapy to relieve pain and improve function is a legitimate medical practice for acute and chronic pain of both cancer and non-cancer origins;

---

[178] John Fauber, *Follow the Money: Pain, Policy, and Profit*, MILWAUKEE JOURNAL SENTINEL/MEDPAGE TODAY (Feb. 19, 2012), https://www.medpagetoday.com/neurology/painmanagement/31256.

[179] Email from Dr. Scott Fishman to Charles Ornstein, ProPublica (Dec. 15, 2011), *available at* https://assets.documentcloud.org/documents/279033/fishman-responses-to-propublica.pdf.

Cephalon paid FSMB $180,000 over a 3-year period, 2007-2008 and 2011.[183] Endo paid FSMB $371,620 over a 5-year period.[184] Mallinckrodt paid FSMB $100,000 in 2011.[185]

**d. The Alliance for Patient Access**

485. Founded in 2006, the Alliance for Patient Access ("APA") is a self-described patient advocacy and health professional organization that styles itself as "a national network of physicians dedicated to ensuring patient access to approved therapies and appropriate clinical care."[186] It is run by Woodberry Associates LLC, a lobbying firm that was also established in 2006.[187] As of June 2017, the APA listed 30 "Associate Members and Financial Supporters." The list includes J&J, Endo, Mallinckrodt, Purdue, and Cephalon.

486. APA's board members have also directly received substantial funding from pharmaceutical companies.[188] For instance, board vice president Dr. Srinivas Nalamachu ("Nalamachu"), who practices in Kansas, received more than $800,000 from 2013 through 2015

---

[183] *Id.*

[184] *Id.*

[185] *Id.*

[186] The Alliance for Patient Access, *About AfPA*, http://allianceforpatientaccess.org/about-afpa/#membership (last accessed August 1, 2018). References herein to APA include two affiliated groups: the Global Alliance for Patient Access and the Institute for Patient Access.

[187] Mary Chris Jaklevic, *Non-profit Alliance for Patient Access uses journalists and politicians to push Big Pharma's agenda*, HEALTH NEWS REVIEW (Oct. 2, 2017), https://www.healthnewsreview.org/2017/10/non-profit-alliance-patient-access-uses-journalists-politicians-push-big-pharmas-agenda/ (hereinafter "Jaklevic, *Non-profit Alliance for Patient Access*").

[188] All information concerning pharmaceutical company payments to doctors in this paragraph is from ProPublica's Dollars for Docs database, *available at* https://projects.propublica.org/docdollars/.

***

> In some states, physicians who fail to consult prescription monitoring databases before prescribing pain medications for their patients are subject to fines; those who repeatedly fail to consult the databases face loss of their professional licensure. Such penalties seem excessive and may inadvertently target older physicians in rural areas who may not be facile with computers and may not have the requisite office staff. Moreover, threatening and fining physicians in an attempt to induce compliance with prescription monitoring programs represents a system based on punishment as opposed to incentives. . .
>
> We cannot merely assume that these programs will reduce prescription pain medication use and abuse.[191]

488. The white paper also purports to express concern about policies that have been enacted in response to the prevalence of pill mills:

> Although well intentioned, many of the policies designed to address this problem have made it difficult for legitimate pain management centers to operate. For instance, in some states, [pain management centers] must be owned by physicians or professional corporations, must have a Board certified medical director, may need to pay for annual inspections, and are subject to increased record keeping and reporting requirements. . .. [I]t is not even certain that the regulations are helping prevent abuses.[192]

489. In addition, in an echo of earlier industry efforts to push back against what they termed "opiophobia," the white paper laments the stigma associated with prescribing and taking pain medication:

> Both pain patients and physicians can face negative perceptions and outright stigma. When patients with chronic pain can't get their prescriptions for pain medication filled at a pharmacy, they may feel like they are doing something wrong – or even criminal. . . .

---

[191] *Id.* at 4-5 (footnote omitted).

[192] *Id.* at 5-6.

abuse, and public health and safety consequences'"[197] and, according to DEA chief administrative law judge John J. Mulrooney, the law would make it "all but logically impossible" to prosecute manufacturers and distributors, like Defendants here, in the courts.[198] The law passed both Houses of Congress and was signed into law in 2016.

### e. The U.S. Pain Foundation

493. The U.S. Pain Foundation ("USPF") was another Front Group with systematic connections and interpersonal relationships with the Marketing Defendants. The USPF was one of the largest recipients of contributions from the Marketing Defendants, collecting nearly $3 million in payments between 2012 and 2015 alone.[199] The USPF was also a critical component of the Marketing Defendants' lobbying efforts to reduce the limits on over-prescription. The U.S. Pain Foundation advertised its ties to the Marketing Defendants, listing opioid manufacturers like Pfizer, Teva, Assertio, Endo, Purdue, McNeil (i.e., Janssen), and Mallinckrodt as "Platinum," "Gold," and "Basic" corporate members.[200] Industry Front Groups like the American Academy of Pain Management, the American Academy of Pain Medicine, the American Pain Society, and PhRMA are also members of varying levels in the USPF.

---

[197] Bill Whitaker, *Ex-DEA Agent: Opioid Crisis Fueled by Drug Industry and Congress*, CBS NEWS (last updated Oct. 17, 2017) https://www.cbsnews.com/news/ex-dea-agent-opioid-crisis-fueled-by-drug-industry-and-congress/.

[198] John J. Mulrooney, II & Katherine E. Legel, *Current Navigation Points in Drug Diversion Law: Hidden Rocks in Shallow, Murky, Drug-Infested Waters*, 101 Marquette L. Rev. (forthcoming Feb. 2018), https://www.documentcloud.org/documents/4108121-Marquette-Law-Review-Mulrooney-Legel.html.

[199] *Fueling an Epidemic*, *supra* n. 161, at 4.

[200] *Id.* at 12; U.S. Pain Foundation, *Transparency*, https://uspainfoundation.org/transparency/. (last accessed on August 1, 2018).

496. More specifically, Purdue paid $11,785 from 2012-2017[206] and provided $40,000 in "corporate roundtable dues" to AGS's Health in Aging Foundation, a 501(c)(3) organization affiliated with the group between 2012 and 2015.[207]

497. The 2009 AGS Guidelines recommended that "[a]ll patients with moderate to severe pain . . . should be considered for opioid therapy." The panel made "strong recommendations" in this regard despite "low quality of evidence" and concluded that the risk of addiction is manageable for patients, even with a prior history of drug abuse.[208] These Guidelines further recommended that "the risks [of addiction] are exceedingly low in older patients with no current or past history of substance abuse." These recommendations are not supported by any study or other reliable scientific evidence. Nevertheless, they have been cited over 500 times in Google Scholar (which allows users to search scholarly publications that would be have been relied on by researchers and prescribers) since their 2009 publication and as recently as this year.

498. One panel member, Dr. Joel Saper, Clinical Professor of Neurology at Michigan State University and founder of the Michigan Headache & Neurological Institute, resigned from the panel because of his concerns that the Guidelines were influenced by contributions that drug companies, including Purdue, Endo, Janssen, and Teva, made to the sponsoring organizations and committee members.

---

[206] *Fueling an Epidemic*, *supra* n. 161.

[207] Letter from Nancy E. Lundebjerg, Chief Executive Office, American Geriatrics Society, to Sen. Claire McCaskill (Oct. 11, 2017).

[208] 2009 AGS Guidelines, *supra* n. 205, at 1342.

### 3. The Marketing Defendants Deceptively Paid KOLs to Promote Opioid Use

504. To falsely promote their opioids, the Marketing Defendants paid and cultivated a select circle of doctors who were chosen and sponsored by the Marketing Defendants for their supportive messages. As set forth below, pro-opioid doctors have been at the hub of the Marketing Defendants' well-funded, pervasive marketing scheme since its inception and were used to create the grave misperception that science and legitimate medical professionals favored the wider and broader use of opioids. These doctors include Dr. Russell Portenoy, Dr. Lynn Webster, Dr. Perry Fine, and Dr. Scott Fishman.

505. Although these KOLs were funded by the Marketing Defendants, the KOLs were used extensively to present the appearance that unbiased and reliable medical research supporting the broad use of opioid therapy for chronic pain had been conducted and was being reported on by independent medical professionals.

506. As the Marketing Defendants' false marketing scheme picked up steam, these pro-opioid KOLs wrote, consulted on, edited, and lent their names to books and articles, and gave speeches and CMEs supportive of opioid therapy for chronic pain. They served on committees that developed treatment guidelines that strongly encouraged the use of opioids to treat chronic pain and they were placed on boards of pro-opioid advocacy groups and professional societies that developed, selected, and presented CMEs.

507. Through use of their KOLs and strategic placement of these KOLs throughout every critical distribution channel of information within the medical community, the Marketing Defendants were able to exert control of each of these modalities through which doctors receive their information.

**a. Dr. Russell Portenoy**

512. In 1986, Dr. Russell Portenoy, who later became Chairman of the Department of Pain Medicine and Palliative Care at Beth Israel Medical Center in New York while at the same time serving as a top spokesperson for drug companies, published an article reporting that "[f]ew substantial gains in employment or social function could be attributed to the institution of opioid therapy."[211]

513. Writing in 1994, Dr. Portenoy described the prevailing attitudes regarding the dangers of long-term use of opioids:

> *The traditional approach to chronic non-malignant pain does not accept the long-term administration of opioid drugs.* This perspective has been justified by the perceived likelihood of tolerance, which would attenuate any beneficial effects over time, and the potential for side effects, worsening disability, and addiction. According to conventional thinking, the initial response to an opioid drug may appear favorable, with partial analgesia and salutary mood changes, but adverse effects inevitably occur thereafter. It is assumed that the motivation to improve function will cease as mental clouding occurs and the belief takes hold that the drug can, by itself, return the patient to a normal life. *Serious management problems are anticipated, including difficulty in discontinuing a problematic therapy and the development of drug seeking behavior induced by the desire to maintain analgesic effects, avoid withdrawal, and perpetuate reinforcing psychic effects. There is an implicit assumption that little separates these outcomes from the highly aberrant behaviors associated with addiction.*[212]

(emphasis added). According to Dr. Portenoy, the foregoing problems could constitute "compelling reasons to reject long-term opioid administration as a therapeutic strategy in all but the most desperate cases of chronic nonmalignant pain."[213]

---

[211] Russell Portenoy & Kathy Foley, *Chronic Use of Opioid Analgesics in Non-Malignant Pain: Report of 38 cases*, 25(2) Pain 171 (1986), *available at* https://www.ncbi.nlm.nih.gov/pubmed/2873550.

[212] Russell Portenoy, *Opioid Therapy for Chronic Nonmalignant Pain: Current Status*, 1 Progress in Pain Res. & Mgmt., 247-287 (H.L. Fields and J.C. Liebeskind eds., 1994) (emphasis added).

[213] *Id.*

Dr. Portenoy has now admitted that he minimized the risks of opioids,[217] and that he "gave innumerable lectures in the late 1980s and '90s about addiction that weren't true."[218] He mused, "Did I teach about pain management, specifically about opioid therapy, in a way that reflects misinformation? Well, against the standards of 2012, I guess I did . . ."[219]

518. In a 2011 interview released by Physicians for Responsible Opioid Prescribing, Portenoy stated that his earlier work purposefully relied on evidence that was not "real" and left real evidence behind:

> I gave so many lectures to primary care audiences in which the Porter and Jick article was just one piece of data that I would then cite, and I would cite six, seven, maybe ten different avenues of thought or avenues of evidence, *none of which represented real evidence*, and yet what I was trying to do was to create a narrative so that the primary care audience would look at this information in [total] and feel more comfortable about opioids in a way they hadn't before. *In essence this was education to destigmatize [opioids], and because the primary goal was to destigmatize, we often left evidence behind.*[220]

519. Several years earlier, when interviewed by journalist Barry Meier for his 2003 book, *Pain Killer*, Dr. Portenoy was more direct: "It was pseudoscience. I guess I'm going to have always to live with that one."[221]

---

[217] Celine Gounder, *Who Is Responsible for the Pain-Pill Epidemic?*, THE NEW YORKER, Nov. 8, 2013, https://www.newyorker.com/business/currency/who-is-responsible-for-the-pain-pill-epidemic (hereinafter "Gounder, *Who Is Responsible*").

[218] Thomas Catan & Evan Perez, *A Pain-Drug Champion Has Second Thoughts*, THE WALL STREET JOURNAL, Dec. 17, 2012, https://www.wsj.com/articles/SB10001424127887324478304578173342657044604.

[219] *Id.*

[220] Harrison Jacobs, *This one-paragraph letter may have launched the opioid epidemic*, BUSINESS INSIDER (May 26, 2016), http://www.businessinsider.com/porter-and-jick-letter-launched-the-opioid-epidemic-2016-5; Andrew Kolodny, *Opioids for Chronic Pain: Addiction is NOT Rare*, YouTube (Oct. 30, 2011), https://www.youtube.com/watch?v=DgyuBWN9D4w&feature=youtu.be.

[221] *Pain Killer*, *supra* n. 98, at 277.

523. At an AAPM annual meeting held February 22 through 25, 2006, Cephalon sponsored a presentation by Webster and others titled, "Open-label study of fentanyl effervescent buccal tablets in patients with chronic pain and breakthrough pain: Interim safety results." The presentation's agenda description states: "Most patients with chronic pain experience episodes of breakthrough pain, yet no currently available pharmacologic agent is ideal for its treatment." The presentation purports to cover a study analyzing the safety of a new form of fentanyl buccal tablets in the chronic pain setting and promises to show the "[i]nterim results of this study suggest that [fentanyl buccal] is safe and well-tolerated in patients with chronic pain and [breakthrough pain]." This CME effectively amounted to off-label promotion of Cephalon's opioids, even though they were approved only for cancer pain.

524. Cephalon sponsored a CME written by Dr. Webster, *Optimizing Opioid Treatment for Breakthrough Pain*, offered by Medscape, LLC from September 28, 2007, through December 15, 2008. The CME taught that non-opioid analgesics and combination opioids containing non-opioids such as aspirin and acetaminophen are less effective at treating breakthrough pain because of dose limitations on the non-opioid component.

**c. Dr. Perry Fine**

525. Dr. Perry Fine's ties to the Marketing Defendants have been well documented. He has authored articles and testified in court cases and before state and federal committees, and he, too, has argued against legislation restricting high-dose opioid prescription for non-cancer patients. He has served on Purdue's advisory board, provided medical legal consulting for Janssen, and participated in CME activities for Endo, along with serving in these capacities for several other drug companies. He co-chaired the APS-AAPM Opioid Guideline Panel, served as treasurer of the

> Overall, the literature provides evidence that the outcomes of drug abuse and addiction are rare among patients who receive opioids for a short period (i.e., for acute pain) and among those with no history of abuse who receive long-term therapy for medical indications.[224]

529. In November 2010, Dr. Fine and others published an article presenting the results of another Cephalon-sponsored study titled "Long-Term Safety and Tolerability of Fentanyl Buccal Tablet for the Treatment of Breakthrough Pain in Opioid-Tolerant Patients with Chronic Pain: An 18-Month Study."[225] In that article, Dr. Fine explained that the 18-month "open-label" study "assessed the safety and tolerability of FBT [Fentora] for the [long-term] treatment of BTP in a large cohort . . . of opioid-tolerant patients receiving around-the-clock . . . opioids for non-cancer pain."[226] The article acknowledged that: (a) "[t]here has been a steady increase in the use of opioids for the management of chronic non-cancer pain over the past two decades"; (b) the "widespread acceptance" had led to the publishing of practice guidelines "to provide evidence- and consensus-based recommendations for the optimal use of opioids in the management of chronic pain"; and (c) those guidelines lacked "data assessing the long-term benefits and harms of opioid therapy for chronic pain."[227]

---

[224] Perry G. Fine, MD & Russell K. Portenoy, MD, *A Clinical Guide to Opioid Analgesia*, at 20, 34, (McGraw-Hill Companies 2004), *available at* http://www.thblack.com/links/RSD/OpioidHandbook.pdf.

[225] Perry G. Fine et al., *Long-Term Safety and Tolerability of Fentanyl Buccal Tablet for the Treatment of Breakthrough Pain in Opioid-Tolerant Patients with Chronic Pain: An 18-Month Study*, 40(5) J. Pain & Symptom Management 747-60 (Nov. 2010), DOI: https://doi.org/10.1016/j.jpainsymman.2010.02.009, *available at* https://www.jpsmjournal.com/article/S0885-3924(10)00390-8/fulltext.

[226] *Id.*

[227] *Id.*

participated yearly in numerous CME activities for which he received "market rate honoraria." As discussed below, he has authored publications, including the seminal guides on opioid prescribing, which were funded by the Marketing Defendants. He has also worked to oppose legislation requiring doctors and others to consult pain specialists before prescribing high doses of opioids to non-cancer patients. He has himself acknowledged his failure to disclose all potential conflicts of interest in a letter in the Journal of the American Medical Association titled "Incomplete Financial Disclosures in a Letter on Reducing Opioid Abuse and Diversion."[232]

533. Dr. Fishman authored a physician's guide on the use of opioids to treat chronic pain titled "Responsible Opioid Prescribing" in 2007, which promoted the notion that long-term opioid treatment was a viable and safe option for treating chronic pain.

534. In 2012, Dr. Fishman updated the guide and continued emphasizing the "catastrophic" "under-treatment" of pain and the "crisis" such under-treatment created:

> Given the magnitude of the problems related to opioid analgesics, it can be tempting to resort to draconian solutions: clinicians may simply stop prescribing opioids, or legislation intended to improve pharmacovigilance may inadvertently curtail patient access to care. As we work to reduce diversion and misuse of prescription opioids, it's critical to remember that the problem of unrelieved pain remains as urgent as ever.[233]

The updated guide still assures that "[o]pioid therapy to relieve pain and improve function is legitimate medical practice for acute and chronic pain of both cancer and non-cancer origins."[234]

---

[232] *Incomplete Financial Disclosures in a Letter on Reducing Opioid Abuse and Diversion, supra* n. 223.

[233] Scott M. Fishman, *Responsible Opioid Prescribing: A Guide for Michigan Clinicians*, 10-11 (Waterford Life Sciences 2012).

[234] *Id.*

individual authors and organizations that developed educational materials for pain management that propagated this erroneous information."[239]

538. In 2001, due to the influence of the Marketing Defendants, the Joint Commission, along with the National Pharmaceutical Council (founded in 1953 and supported by the nation's major research-based biopharmaceutical companies[240]) "introduced standards for [hospitals] to improve their care for patients with pain." The new standards for hospitals put patient pain front and center as the "fifth vital sign." This monograph, entitled *Pain: Current Understanding of Assessment, Management and Treatments* required assessment of pain in all patients.

539. The Joint Commission's first pain management standards placed responsibility for pain control on health care organizations (hospitals), and emphasized the need for hospitals to do systematic assessments and use quantitative measures of pain which was consistent with the position of the Front Group APS.

540. As a result of the Marketing Defendants' efforts to manipulate the standard of care, many hospitals, including Plaintiffs, risked loss of their Joint Commission accreditation if they did not incorporate the "fifth vital sign" standard and put pain at the forefront of their treatment. For example, the emergency department at Oconomowoc Memorial Hospital in Wisconsin achieved 10 consecutive years of patient satisfaction in the 99th percentile, a feat no other emergency hospital in the United States has been able to accomplish.[241] However, during its routine Joint

---

[239] *Id.*

[240] Currently funded by Johnson & Johnson, Purdue and Teva, among others.

[241] Testimony of Tim Westlake, MD, FFSMB, FACEP, U.S. Senate Comm. on Homeland Sec. and Gov't Affairs (Apr. 15, 2016), *available at* https://www.hsgac.senate.gov/imo/media/doc/Testimony-Westlake-2016-04-15-REVISED.pdf.

544. Doctors are required to attend a certain number and, often, type of CME programs each year as a condition of their licensure. These programs are generally delivered in person, often in connection with professional organizations' conferences, online, or through written publications. Doctors rely on CMEs not only to satisfy licensing requirements, but also to get information on new developments in medicine or to deepen their knowledge in specific areas of practice. Because CMEs typically are taught by KOLs who are highly respected in their fields, and are thought to reflect these physicians' medical expertise, they can be especially influential with doctors.

545. The countless doctors and other health care professionals who participate in accredited CMEs constitute an enormously important audience for opioid reeducation. As one target, Defendants aimed to reach general practitioners, whose broad area of practice and lack of expertise and specialized training in pain management made them particularly dependent upon CMEs and, as a result, especially susceptible to the Marketing Defendants' deceptions.

546. The Marketing Defendants sponsored CMEs that were delivered thousands of times, promoting chronic opioid therapy and supporting and disseminating the deceptive and biased messages described in this Complaint. These CMEs, while often generically titled to relate to the treatment of chronic pain, focused on opioids to the exclusion of alternative treatments, inflated the benefits of opioids, and frequently omitted or downplayed their risks and adverse effects.

547. Cephalon sponsored numerous CME programs, which were made widely available through organizations like Medscape, LLC ("Medscape") and which disseminated false and misleading information to physicians across the country.

551. In all, more than 163,000 copies of *Responsible Opioid Prescribing* were distributed nationally.

552. The American Medical Association ("AMA") recognized the impropriety that pharmaceutical company-funded CMEs create, stating that support from drug companies with a financial interest in the content being promoted "creates conditions in which external interests could influence the availability and/or content" of the programs and urged that "[w]hen possible, CME[s] should be provided without such support or the participation of individuals who have financial interests in the education subject matter."[248]

553. Physicians attended or reviewed CMEs sponsored by the Marketing Defendants during the relevant time period and were misled by them.

554. By sponsoring CME programs put on by Front Groups like APF, AAPM, and others, the Marketing Defendants expected and understood that instructors would deliver messages favorable to them, as these organizations were dependent on the Marketing Defendants for other projects. The sponsoring organizations honored this principle by hiring pro-opioid KOLs to give talks that supported chronic opioid therapy. Marketing Defendant-driven content in these CMEs had a direct and immediate effect on prescribers' views on opioids. Producers of CMEs and the Marketing Defendants both measure the effects of CMEs on prescribers' views on opioids and their absorption of specific messages, confirming the strategic marketing purpose in supporting them.

---

[248] Opinion 9.0115, *Financial Relationships with Industry in CME*, Am. Med. Ass'n (Nov. 2011).

### 7. The Marketing Defendants Used "Unbranded" Advertising to Promote Opioid Use for Chronic Pain Without FDA Review

557. The Marketing Defendants also aggressively promoted opioids through "unbranded advertising" to generally tout the benefits of opioids without specifically naming a particular brand-name opioid drug. Instead, unbranded advertising is usually framed as "disease awareness"—encouraging consumers to "talk to your doctor" about a certain health condition without promoting a specific product and, therefore, without providing balanced disclosures about the product's limits and risks. In contrast, a pharmaceutical company's "branded" advertisement that identifies a specific medication and its indication (i.e., the condition which the drug is approved to treat) must also include possible side effects and contraindications—what the FDA Guidance on pharmaceutical advertising refers to as "fair balance." Branded advertising is also subject to FDA review for consistency with the drug's FDA-approved label. Through unbranded materials, the Marketing Defendants expanded the overall acceptance of and demand for chronic opioid therapy without the restrictions imposed by regulations on branded advertising.

558. Many of the Marketing Defendants utilized unbranded websites to promote opioid use without promoting a specific branded drug, such as Purdue's pain-management website, *www.inthefaceofpain.com*. The website contained testimonials from several dozen "advocates," including health care providers, urging more pain treatment. The website presented the advocates as neutral and unbiased, but an investigation by the New York Attorney General later revealed that Purdue paid the advocates hundreds of thousands of dollars.

### 8. The Marketing Defendants Funded, Edited and Distributed Publications That Supported Their Misrepresentations

559. The Marketing Defendants created a body of false, misleading, and unsupported medical and popular literature about opioids that (a) understated the risks and overstated the benefits of long-term use; (b) appeared to be the result of independent, objective research; and (c)

Patient Perceptions and Effect of Treatment with Oral Transmucosal Fentanyl Citrate,"[251] published in the nationally circulated Journal of Pain Medicine, to support its effort to expand the use of its branded fentanyl products. The article's authors (including Dr. Webster, discussed above) stated that the "OTFC [fentanyl] has been shown to relieve BTP [breakthrough pain] more rapidly than conventional oral, normal-release, or 'short acting' opioids" and that "[t]he purpose of [the] study was to provide a qualitative evaluation of the effect of BTP on the [quality of life] of non-cancer pain patients." The number-one-diagnosed cause of chronic pain in the patients studied was back pain (44%), followed by musculoskeletal pain (12%) and head pain (7%). The article cites Portenoy and recommends fentanyl for non-cancer BTP patients:

565. In summary, BTP appears to be a clinically important condition in patients with chronic non-cancer pain and is *associated* with an adverse impact on QoL. This qualitative study on the negative impact of BTP and the potential benefits of BTP-specific therapy suggests several domains that may be helpful in developing BTP-specific, QoL assessment tools.[252]

**9. <u>The Marketing Defendants Used Speakers' Bureaus and Programs to Spread Their Deceptive Messages</u>**

566. In addition to making sales calls, the Marketing Defendants' detailers also identified doctors to serve, for payment, on their speakers' bureaus and to attend programs with speakers with meals paid for by the Marketing Defendants. These speaker programs and associated speaker trainings served three purposes: they provided 1) an incentive to doctors to prescribe, or

---

[251] Donald R. Taylor et al., *Impact of Breakthrough Pain on Quality of Life in Patients With Chronic, Non-cancer Pain: Patient Perceptions and Effect of Treatment With Oral Transmucosal Fentanyl Citrate (OTFC, ACTIQ)*, 8(3) Pain Med. 281-88 (Mar. 2007), https://doi.org/10.1111/j.1526-4637.2007.00298.x, *available at* https://academic.oup.com/painmedicine/article/8/3/281/1829094.

[252] *Id.*

Purdue's failed trial. Purdue even measured how often it targeted osteoarthritis patients. A Purdue marketing presentation concluded that its sales reps were "identifying appropriate patients" because osteoarthritis was specifically mentioned during 35% of sales visits. Purdue also directed sales reps to use marketing materials that highlight patients with osteoarthritis, even though Purdue drugs were never indicated for that disease and Purdue's Butrans trial had failed. At one point, the Purdue Individual Defendants wanted to know if sales reps could sell more by remaining silent about the failed trial: "What can be said in response to a prescriber who asks directly or indirectly, 'can this product be prescribed for my patient with OA?' In responding are we required to specifically mention the failed trials in OA?"

570. The Marketing Defendants targeted these vulnerable patients even though the risks of long-term opioid use were significantly greater for them. For example, a 2016 CDC Guideline observes that existing evidence confirms that elderly patients taking opioids suffer from elevated fall and fracture risks, reduced renal function and medication clearance, and a smaller window between safe and unsafe dosages.[253] Elderly patients taking opioids have also been found to have a greater risk for hospitalizations and increased vulnerability to adverse drug effects and interactions, such as respiratory depression. The 2016 CDC Guideline concludes that there must be "additional caution and increased monitoring" to minimize the risks of opioid use in elderly patients.[254]

---

[253] Dowell, CDC Guideline, *supra* n. 26.

[254] *Id.* at 27.

*of opioid naïve patients ... "*

574. Purdue also promoted its drugs for "opioid-naïve" patients using the deceptive term "first line opioid." "First line" is a medical term for the preferred first step in treating a patient. Opioids are not an appropriate first line therapy. Nevertheless, Purdue's internal documents and testimony from sales representatives shows that Purdue repeatedly promoted OxyContin as "first line" — "the first thing they would take to treat pain."

575. A particularly insidious aspect of Purdue's focus on "naïve" patients, and on keeping patients on opioids longer, was its savings card program. The cards provided a discount on a patient's first five prescriptions. In 2012, Purdue's internal 10-year plan highlighted its discovery that opioid savings cards kept patients on opioids longer: "more patients remain on OxyContin after 90 days." The savings card program was incredibly lucrative -- the return on investment for Purdue was 4.28, so that every $1,000,000 Purdue gave away in savings came back to Purdue as $4,280,000 in revenue because patients stayed on dangerous opioids longer. Discounts could have cut Purdue's revenue ***if*** patients took opioids for a short time. But Purdue's internal 10-year plan highlighted its discovery that opioid savings cards kept patients on opioids longer: "more patients remain on OxyContin after 90 days."

576. Purdue sales representatives did not disclose to doctors that "opioid naïve" patients faced greater risks of overdose and death. Purdue focused on less sophisticated prescribers, such as its "core" prolific prescribers, and certain nurses and PAs who might be more vulnerable to persuasion by its sales representatives.

**2. <u>Increasing Dosages and Increasing Them Quickly to Keep Patients on Longer</u>**

577. In order to promote long-term sales, the Marketing Defendants promoted the prescription of higher dosages of opioids. There were several dimensions to this. First, the

### 1. <u>The Marketing Defendants Dramatically Expanded Opioid Prescribing and Use</u>

581. The Marketing Defendants necessarily expected a return on the enormous investment they made in their deceptive marketing scheme, and they worked to measure and expand their success. Their own documents show that they knew they were influencing prescribers and increasing prescriptions. Studies also show that in doing so, they fueled an epidemic of addiction and abuse.

582. Cephalon also recognized the return of its efforts to market Actiq and Fentora off-label for chronic pain. In 2000, Actiq generated $15 million in sales. By 2002, Actiq sales had increased by 92%, which Cephalon attributed to "a dedicated sales force for ACTIQ" and "ongoing changes to [its] marketing approach including hiring additional sales representatives and targeting our marketing efforts to pain specialists."[255] Actiq became Cephalon's second best-selling drug. By the end of 2006, Actiq's sales had exceeded $500 million.[256] Only 1% of the 187,076 prescriptions for Actiq filled at retail pharmacies during the first six months of 2006 were prescribed by oncologists. One measure suggested that "more than 80 percent of patients who use[d] the drug don't have cancer."[257]

583. Each of the Marketing Defendants tracked the impact of their marketing efforts to measure their impact in changing doctors' perceptions and prescribing of their drugs. They purchased prescribing and survey data that allowed them to closely monitor these trends, and they

---

[255] Cephalon, Inc. Annual Report (Form 10-K) at 28 (Mar. 31, 2003), https://www.sec.gov/Archives/edgar/data/873364/000104746903011137/a2105971z10-k.htm.

[256] John Carreyrou, *Narcotic 'Lollipop' Becomes Big Seller Despite FDA Curbs*, THE WALL STREET JOURNAL, Nov. 3, 2006, https://www.wsj.com/articles/SB116252463810112292.

[257] *Id.*

585. Marketing Defendants spent millions of dollars to market their drugs to prescribers and patients and meticulously tracked their return on that investment. In one recent survey published by the AMA, even though nine in ten general practitioners reported prescription drug abuse to be a moderate to large problem in their communities, 88% of the respondents said they were confident in their prescribing skills, and nearly half were comfortable using opioids for chronic non-cancer pain.[259] These results are directly due to the Marketing Defendants' fraudulent marketing campaign focused on several misrepresentations.

586. Thus, both independent studies and Defendants' own tracking confirm that Defendants' marketing scheme dramatically increased their sales.

**2. <u>The Marketing Defendants' Deception in Expanding Their Market Created and Fueled the Opioid Epidemic.</u>**

587. Independent research demonstrates a close link between opioid prescriptions and opioid abuse. For example, a 2007 study found "a very strong correlation between therapeutic exposure to opioid analgesics, as measured by prescriptions filled, and their abuse."[260] It has been estimated that 60% of the opioids that are abused come, directly or indirectly, through physicians' prescriptions.

---

[259] CS Hwang et al., *Prescription Drug Abuse: A National Survey of Primary Care Physicians*, 175 JAMA Intern. Med. 302 (2014), doi: 10.1001/jamainternmed.2014.6520, https://www.ncbi.nlm.nih.gov/pubmed/25485657.

[260] Theodore J. Cicero et al., *Relationship Between Therapeutic Use and Abuse of Opioid Analgesics in Rural, Suburban, and Urban Locations in the United States*, 16 Pharmacoepidemiology and Drug Safety, 827-40 (2007), doi: 10.1002/pds.1452, https://www.cdhs.udel.edu/content-sub-site/Documents/Publications/Relationship%20Between%20Therapeutic%20Use%20and%20Abuse%20of%20Opioid%20Analgesics.pdf.

### 1. Purdue

592. Defendant Purdue made and/or disseminated deceptive statements, and concealed material facts in such a way to make their statements deceptive, including, but not limited to, the following:

a. Creating, sponsoring, and assisting in the distribution of patient education materials distributed to consumers that contained deceptive statements;

b. Creating and disseminating advertisements that contained deceptive statements concerning the ability of opioids to improve function long-term and concerning the evidence supporting the efficacy of opioids long-term for the treatment of chronic non-cancer pain;

c. Disseminating misleading statements concealing the true risk of addiction and promoting the deceptive concept of pseudoaddiction through Purdue's own unbranded publications and on internet sites Purdue operated that were marketed to and accessible by consumers;

d. Distributing brochures to doctors, patients, and law enforcement officials that included deceptive statements concerning the indicators of possible opioid abuse;

e. Sponsoring, directly distributing, and assisting in the distribution of publications that promoted the deceptive concept of pseudoaddiction, even for high-risk patients;

f. Endorsing, directly distributing, and assisting in the distribution of publications that presented an unbalanced treatment of the long-term and dose-dependent risks of opioids versus NSAIDs;

g. Providing significant financial support to pro-opioid KOL doctors who made deceptive statements concerning the use of opioids to treat chronic non-cancer pain;

h. Providing needed financial support to pro-opioid pain organizations that made deceptive statements, including in patient education materials, concerning the use of opioids to treat chronic non-cancer pain;

i. Assisting in the distribution of guidelines that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain and misrepresented the risks of opioid addiction;

593. More specifically, Purdue made and/or disseminated deceptive statements, and promoted a culture that mislead doctors and patients into believing opioids were safe for chronic care, including, but not limited to, the following:

a. In 1998, Purdue distributed 15,000 copies of an OxyContin video to physicians without submitting it to the FDA for review, an oversight later acknowledged by Purdue. In 2001, Purdue submitted to the FDA a second version of the video, which the FDA did not review until October 2002—after the General Accounting Office inquired about its content. After its review, the FDA concluded that the video minimized the risks from OxyContin and made unsubstantiated claims regarding its benefits to patients.[262]

b. According to training materials, Purdue instructed sales representatives to assure doctors—repeatedly and without evidence—that "fewer than one per cent" of patients who took OxyContin became addicted. (In 1999, a Purdue-funded study of patients who used OxyContin for headaches found that the addiction rate was thirteen per cent.)[263]

c. Andrew Kolodny, the co-director of the Opioid Policy Research Collaborative, at Brandeis University, has worked with hundreds of patients addicted to opioids. He has stated that, though many fatal overdoses have resulted from opioids other than OxyContin, the crisis was initially precipitated by a shift in the culture of prescribing—a shift carefully engineered by Purdue. "If you look at the prescribing trends for all the different opioids, it's in 1996 that prescribing really takes off," Kolodny said. "It's not a coincidence. That was the year Purdue launched a multifaceted campaign that misinformed the medical community about the risks."[264]

d. "Purdue had a speakers' bureau, and it paid several thousand clinicians to attend medical conferences and deliver presentations about the merits of the drug. Doctors were offered all-expenses-paid trips to pain-management seminars in places like Boca Raton. Such spending was worth the investment: doctors who attended these seminars in 1996 wrote OxyContin prescriptions more than twice as often as those who didn't. The company advertised in medical

---

[262] *Empire of Pain*, *supra* n. 101.

[263] *Id.*

[264] *Id.*

physicians who attend such symposia believe that such enticements do not alter their prescribing patterns."[268]

595. As noted above, Purdue utilized Front Groups to help disseminate and defend its false messages. Between January 2012 and March 2017, Purdue made the following contributions:

| | |
|---|---|
| Academy of Integrative Pain Management | $1,091,024.86 |
| American Academy of Pain Management | $725,584.95 |
| ACS Cancer Action Network | $168,500.00[269] |
| American Chronic Pain Association | $312,470.00 |
| American Geriatrics Society | $11,785.00[270] |
| American Pain Foundation | $25,000 |
| American Pain Society | $542,259.52 |
| American Society of Pain Educators | $30,000 |
| American Society of Pain Management Nursing | $242,535.00 |
| The Center for Practical Bioethics | $145,095.00 |
| U.S. Pain Foundation | $359,300.00 |
| Washington Legal Foundation | $500,000.00 |

268 *Commercial Triumph*, *supra* n. 259.

269 Payments from Purdue to the American Cancer Society Cancer Action Network include payments to the American Cancer Society that could potentially have applied to the Cancer Action Network. Production from Purdue Pharma to the Senate Homeland Security and Governmental Affairs Committee (Nov. 13, 2017).

270 The AGS reported that Purdue also provided $40,000 in "corporate roundtable dues" to its AGS Health in Aging Foundation, a 501(c)(3) organization affiliated with the group, between 2012 and 2015. Letter from Nancy E. Lundebjerg, Chief Executive Office, Am. Geriatrics Soc'y, to Sen. Claire McCaskill, *supra* n. 208.

f. Endorsing, directly distributing, and assisting in the distribution of publications that presented an unbalanced treatment of the long-term and dose-dependent risks of opioids versus NSAIDs;

g. Providing significant financial support to pro-opioid KOLs, who made deceptive statements concerning the use of opioids to treat chronic non-cancer pain;

h. Providing needed financial support to pro-opioid pain organizations – including over $5 million to the organization responsible for many of the most egregious misrepresentations – that made deceptive statements, including in patient education materials, concerning the use of opioids to treat chronic non-cancer pain;

i. Targeting the elderly by assisting in the distribution of guidelines that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain and misrepresented the risks of opioid addiction in this population;

j. Endorsing and assisting in the distribution of CMEs containing deceptive statements concerning the use of opioids to treat chronic non-cancer pain;

k. Developing and disseminating scientific studies that deceptively concluded opioids are safe and effective for the long-term treatment of chronic non-cancer pain and that opioids improve quality of life, while concealing contrary data;

l. Directly distributing and assisting in the dissemination of literature written by pro- opioid KOLs that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain, including the concept of pseudoaddiction;

m. Creating, endorsing, and supporting the distribution of patient and prescriber education materials that misrepresented the data regarding the safety and efficacy of opioids for the long-term treatment of chronic non-cancer pain, including known rates of abuse and addiction and the lack of validation for long-term efficacy; and

n. Making deceptive statements concerning the use of opioids to treat chronic non-cancer pain to prescribers through in-person detailing.

i. Targeting the elderly by sponsoring, directly distributing, and assisting in the dissemination of patient education publications targeting this population that contained deceptive statements about the risks of addiction and the adverse effects of opioids, and made false statements that opioids are safe and effective for the long-term treatment of chronic non-cancer pain and improve quality of life, while concealing contrary data;

j. Endorsing and assisting in the distribution of CMEs containing deceptive statements concerning the use of opioids to treat chronic non-cancer pain;

k. Directly distributing and assisting in the dissemination of literature written by pro-opioid KOLs that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain, including the concept of pseudoaddiction;

l. Creating, endorsing, and supporting the distribution of patient and prescriber education materials that misrepresented the data regarding the safety and efficacy of opioids for the long-term treatment of chronic non-cancer pain, including known rates of abuse and addiction and the lack of validation for long-term efficacy;

m. Targeting veterans by sponsoring and disseminating patient education marketing materials that contained deceptive statements concerning the use of opioids to treat chronic non-cancer pain; and

n. Making deceptive statements concerning the use of opioids to treat chronic non-cancer pain to prescribers through in-person detailing.

**4. <u>Assertio</u>**

600. Defendant Assertio has, since at least October 2011, made and/or disseminated untrue, false and deceptive statements, and concealed material facts in such a way to make their statements deceptive with respect to Lazanda and (with the acquisition from Janssen in January 2015) of Nucynta and Nucynta ER, including, but not limited to:

a. Promoting the usage of Lazanda with patients not suffering from cancer;

b. Endorsing, supporting, and pressuring its sales representative to target pain management physicians, particularly those who historically wrote large numbers of Lazanda-like drugs;

e. Providing needed financial support to pro-opioid pain organizations that made deceptive statements, including in patient education materials, concerning the use of opioids to treat chronic non-cancer pain;

f. Endorsing and assisting in the distribution of CMEs containing deceptive statements concerning the use of opioids to treat chronic non-cancer pain;

g. Endorsing and assisting in the distribution of CMEs containing deceptive statements concerning the use of Cephalon's rapid-onset opioids;

h. Directing its marketing of Cephalon's rapid-onset opioids to a wide range of doctors, including general practitioners, neurologists, sports medicine specialists, and workers' compensation programs, serving chronic pain patients;

i. Making deceptive statements concerning the use of Cephalon's opioids to treat chronic non-cancer pain to prescribers through in-person detailing and speakers' bureau events, when such uses are unapproved and unsafe; and

j. Making deceptive statements concerning the use of opioids to treat chronic non-cancer pain to prescribers through in-person detailing and speakers' bureau events.

**6. Actavis**

602. Defendant Actavis made and/or disseminated deceptive statements, and concealed material facts in such a way to make their statements deceptive, including, but not limited to, the following:

a. Making deceptive statements concerning the use of opioids to treat chronic non-cancer pain to prescribers through in-person detailing;

b. Creating and disseminating advertisements that contained deceptive statements that opioids are safe and effective for the long-term treatment of chronic non-cancer pain and that opioids improve quality of life;

c. Creating and disseminating advertisements that concealed the risk of addiction in the long-term treatment of chronic, non-cancer pain; and

605. The Marketing Defendants created a vastly and dangerously larger market for opioids. All of the Defendants compounded this harm by facilitating the supply of far more opioids that could have been justified to serve that market. The failure of the Defendants to maintain effective controls, and to investigate, report, and take steps to halt orders that they knew or should have known were suspicious breached both their statutory and common law duties.

606. Marketing Defendants' scheme was resoundingly successful. Chronic opioid therapy—the prescribing of opioids long-term to treat chronic pain—has become a commonplace, and often first-line, treatment. Marketing Defendants' deceptive marketing caused prescribing not only of their opioids, but also of opioids as a class, to skyrocket. According to the CDC opioid prescriptions, as measured by number of prescriptions and morphine milligram equivalent ("MME") per person, tripled from 1999 to 2015. In 2015, on an average day, more than 650,000 opioid prescriptions were dispensed in the U.S. While previously a small minority of opioid sales, today between 80% and 90% of opioids (measured by weight) used are for chronic pain. Approximately 20% of the population between the ages of 30 and 44, and nearly 30% of the population over 45, have used opioids.

607. In a 2016 report, the CDC explained that "[o]pioid pain reliever prescribing has quadrupled since 1999 and has increased in parallel with [opioid] overdoses."[271] Patients receiving opioid prescriptions for chronic pain account for the majority of overdoses. For these reasons, the CDC concluded that efforts to rein in the prescribing of opioids for chronic pain are critical "to reverse the epidemic of opioid drug overdose deaths and prevent opioid-related morbidity."[272]

---

[271] 2000-2014 Increases in Drug and Opioid Overdose Deaths, *supra* n. 47.

[272] *Id.*

611. State law further requires that a manufacturer, distributor, or wholesaler of prescription drugs must comply "with requirements to maintain and/or make available to the board or to federal, state, or local law enforcement officials those records required [under] federal, state or local laws," among other requirements by the Board. Tenn. Comp. R. & Regs. 1140-09-.03(1)(g). This includes the common law of fraud, statutes designed to generally prohibit unfair and deceptive acts in commerce, as well as statutes specifically prohibiting deceptive practice relating to drugs.

612. Chapter 11 of the Tennessee Food, Drug and Cosmetic Act ("TDCA"), forbids distribution of controlled substances in an unauthorized manner, T.C.A. § 53-11-401, and prohibits fraudulent narcotic drug and drug control violations. T.C.A. § 53-11-402.[274]

---

[274] Chapter 34 of The Drug Control Act (the "VDCA") of Virginia. Va. Code Ann. §§ 54.1-3400 *et seq*. The DCA makes it unlawful for a "permitted manufacturer or wholesaler" of schedule II drugs, which includes "opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate," to sell the drugs without "official written orders or pursuant to an electronic order in compliance with federal laws and regulations governing the electronic ordering of Schedule II drugs." Va. Code Ann. §§ 54.1-3415 and 3448. The DCA also requires Defendants to keep accurate sales records including "the date of selling, administering, or dispensing, the name and address of the person to whom or for whose use, or the owner and species of animal for which the drugs were sold, administered or dispensed, and the kind and quantity of drugs." Va. Code Ann. § 54.1-3404(D). In addition, Defendants shall maintain "effective controls against diversion of controlled substances into other than legitimate medical, scientific, or industrial channels" and comply with "applicable state and local law" in order to "obtain annually a controlled substances registration certificate issued by the Board." Va. Code Ann. §§ 54.1-3422(A) and 3423(A). The registration certificates are subject to revocation when Defendants have "furnished false or fraudulent material information in an application filed under this chapter;" or "been convicted of a felony under any state or federal law relating to any controlled substance;" or "had [its] federal registration to manufacture, distribute or dispense controlled substances suspended or revoked" or "violated or cooperated with others in violating any provision of this chapter or regulations of the Board relating to the manufacture, distribution or dispensing of controlled substances." Va. Code Ann. § 54.1-3424(A).

616. The foreseeable harm resulting from a breach of these duties is the diversion of prescription opioids for nonmedical purposes and subsequent plague of opioid addiction, with costs and damages necessarily inflicted on and incurred by Plaintiffs and others.

617. The foreseeable harm resulting from the diversion of prescription opioids for nonmedical purposes is abuse, addiction, morbidity and mortality, along with the costs imposed upon Plaintiffs and others associated with the treatment of these conditions and related health consequences caused by opioid abuse.

618. Finding it impossible to legally achieve their ever-increasing sales ambitions, Defendants engaged in the common purpose of increasing the supply of opioids and fraudulently increasing the quotas that governed the manufacture and distribution of their prescription opioids.

619. Wholesale distributors such as the Distributor Defendants had close financial relationships with both Marketing Defendants and customers, for whom they provide a broad range of value-added services that render them uniquely positioned to obtain information and control against diversion. These services often otherwise would not be provided by manufacturers to their dispensing customers and would be difficult and costly for the dispenser to reproduce. For example, "[w]holesalers have sophisticated ordering systems that allow customers to electronically order and confirm their purchases, as well as to confirm the availability and prices of wholesalers' stock." *Fed. Trade Comm'n v. Cardinal Health, Inc.*, 12 Supp. 2d 34, 41 (D.D.C. 1998). Through their generic source programs, wholesalers are also able "to combine the purchase volumes of customers and negotiate the cost of goods with manufacturers." Wholesalers typically also offer marketing programs, patient services, and other software to assist their dispensing customers.

> Mr. Friedman: Well, we use that information to understand what is happening in terms of the development of use of our product in any area.
>
> Mr. Greenwood. And so the use of it--and I assume that part of it--a large part of it you want is to see how successful your marketing techniques are so that you can expend money in a particular region or among a particular group of physicians-- you look to see if your marketing practices are increased in sales. And, if not, you go back to the drawing board with your marketers and say, how come we spent "X" number of dollars, according to these physicians, and sales haven't responded. You do that kind of thing. Right?
>
> Mr. Friedman: Sure.[277]

623. The contractual relationships among the Defendants also include vault security programs. Defendants are required to maintain certain security protocols and storage facilities for the manufacture and distribution of their opiates. The Defendants negotiated agreements whereby the Marketing Defendants installed security vaults for the Distributor Defendants in exchange for agreements to maintain minimum sales performance thresholds. These agreements were used by the Defendants as a tool to violate their reporting and diversion duties in order to reach the required sales requirements.

### 1. <u>Defendants' Use of Trade and Other Organizations</u>

624. In addition, Defendants worked together to achieve their common purpose through trade or other organizations, such as the Pain Care Forum ("PCF") and the HDA.

#### a. Pain Care Forum

625. PCF has been described as a coalition of drug makers, trade groups, and dozens of non-profit organizations supported by industry funding, including the Front Groups described in this Complaint. The PCF recently became a national news story when it was discovered that

---

[277] *Oxycontin: Its Use and Abuse*, *supra* n. 105.

**b. Healthcare Distribution Alliance**

628. Additionally, the HDA led to the formation of interpersonal relationships and an organization among the Defendants. Although the entire HDA membership directory is private, the HDA website confirms that each of the Distributor Defendants and the Marketing Defendants, including Actavis, Endo, Purdue, Mallinckrodt and Cephalon, were members of the HDA.[282] Additionally, the HDA and each of the Distributor Defendants, eagerly sought the active membership and participation of the Marketing Defendants by advocating for the many benefits of members, including "strengthening . . . alliances."[283]

629. Beyond strengthening alliances, the benefits of HDA membership included the ability to, among other things, "network one on one with manufacturer executives at HDA's members-only Business and Leadership Conference," "networking with HDA wholesale distributor members," "opportunities to host and sponsor HDA Board of Directors events," "participate on HDA committees, task forces and working groups with peers and trading partners," and "make connections."[284] The HDA and the Supply Chain Defendants used membership in the HDA as an opportunity to create interpersonal and ongoing organizational relationships and "alliances" between the Marketing and Supply Chain Defendants.

630. The application for manufacturer membership in the HDA further indicates the level of connection among the Defendants and the level of insight that they had into each other's

---

282 *Manufacturer Membership*, Healthcare Distribution Alliance, https://www.healthcaredistribution.org/about/membership/manufacturer (last accessed Aug. 1, 2018).

283 *Id.*

284 *Id.*

for the Marketing and Distributor Defendants to interact at a high-level of leadership. The Marketing Defendants embraced this opportunity by attending and sponsoring these events.[288]

634. After becoming members of the HDA, Defendants were eligible to participate on councils, committees, task forces and working groups, including:

a. Industry Relations Council: "This council, composed of distributor and manufacturer members, provides leadership on pharmaceutical distribution and supply chain issues."

b. Business Technology Committee: "This committee provides guidance to HDA and its members through the development of collaborative e-commerce business solutions. The committee's major areas of focus within pharmaceutical distribution include information systems, operational integration and the impact of e-commerce." Participation in this committee includes distributor and manufacturer members.

c. Logistics Operation Committee: "This committee initiates projects designed to help members enhance the productivity, efficiency and customer satisfaction within the healthcare supply chain. Its major areas of focus include process automation, information systems, operational integration, resource management and quality improvement." Participation in this committee includes distributor and manufacturer members.

d. Manufacturer Government Affairs Advisory Committee: "This committee provides a forum for briefing HDA's manufacturer members on federal and state legislative and regulatory activity affecting the pharmaceutical distribution channel. Topics discussed include such issues as prescription drug traceability, distributor licensing, FDA and DEA regulation of distribution, importation and Medicaid/Medicare reimbursement." Participation in this committee includes manufacturer members.

e. Contracts and Chargebacks Working Group: "This working group explores how the contract administration process can be streamlined through process improvements or technical efficiencies. It also creates and exchanges industry knowledge of interest to contract and

---

[288] *2015 Distribution Management Conference and Expo*, Healthcare Distribution Alliance, https://www.healthcaredistribution.org/events/2015-distribution-management-conference. (last accessed Aug. 1, 2018).

As the HDA explained in an amicus brief, the Industry Compliance Guidelines were the result of "[a] committee of HDMA members contribut[ing] to the development of this publication" beginning in late 2007.

639. This statement by the HDA and the Industry Compliance Guidelines support the allegation that Defendants utilized the HDA to form agreements about their approach to their duties under the law. As John M. Gray, President/CEO of the HDA stated to the Energy and Commerce Subcommittee on Health in April 2014, it is "difficult to find the right balance between proactive anti-diversion efforts while not inadvertently limiting access to appropriately prescribed and dispensed medications." Here, it is apparent that all of the Defendants found the same balance – an overwhelming pattern and practice of failing to identify, report or halt suspicious orders, and failure to prevent diversion.

640. The Defendants' scheme had a decision-making structure driven by the Marketing Defendants and corroborated by the Distributor Defendants. The Marketing Defendants worked together to control the government's responses to the manufacture and distribution of prescription opioids by increasing production quotas through a systematic refusal to maintain effective controls against diversion and identify suspicious orders and report them to the DEA.

641. The Defendants worked together to control the flow of information and to influence governments to pass legislation that supported the use of opioids and limited the authority of law enforcement to rein in illicit or inappropriate prescribing and distribution. The Marketing and Distributor Defendants did this through their participation in the PCF and HDA.

642. The Defendants also worked together to ensure that the Aggregate Production Quotas, Individual Quotas, and Procurement Quotas allowed by the DEA remained artificially high. In so doing, they ensured that suspicious orders were not reported to the DEA, and, further,

deviate from these checks and balances, the closed system of distribution, designed to prevent diversion, collapses.[290]

647. Defendants were well aware they had an important role to play in this system, and also knew or should have known that their failure to comply with their obligations would have serious consequences.

### 3. Defendants Kept Careful Track of Prescribing Data and Knew About Suspicious Orders and Prescribers

648. The data that reveals and/or confirms the identity of each wrongful opioid distributor is hidden from public view in the DEA's Confidential Automation of Reports and Consolidated Orders System (ARCOS) database. The data necessary to identify with specificity the transactions that were suspicious is in possession of the Supply Chain Defendants and Marketing Defendants but has not been disclosed to the public.

649. Publicly available information confirms that the Supply Chain Defendants and Marketing Defendants funneled far more opioids into Tennessee, southwest Virginia and communities across the United States than could have been expected to serve legitimate medical use and ignored other red flags of suspicious orders. This information, along with the information known only to Distributor and Marketing Defendants, would have alerted them to potentially suspicious orders of opioids.

650. This information includes the following facts:

a. distributors and manufacturers have access to detailed transaction-level data on the sale and distribution of opioids, which can be broken down by zip code, prescriber, and pharmacy and includes the volume of opioids, dose, and the distribution of other controlled and non-controlled substances;

---

[290] *See* Rannazzisi Decl. ¶ 10, *Cardinal Health, Inc. v. Holder*, No. 1:12-cv-00185-RBW, Doc. No. 14-2 (D.D.C. Feb. 10, 2012).

prescription opioids.[291] The "know your customer" questionnaires informed the Defendants of the number of pills that the pharmacies sold, how many non-controlled substances were sold compared to controlled substances, whether the pharmacy purchased opioids from other distributors, and the types of medical providers in the area, including pain clinics, general practitioners, hospice facilities, cancer treatment facilities, and others. These questionnaires put the recipients on notice of suspicious orders.

654. Defendants purchased nationwide, regional, state, and local prescriber- and patient-level data from the Data Vendors that allowed them to track prescribing trends, identify suspicious orders, identify patients who were doctor shopping, identify pill mills, etc. The Data Vendors' information purchased by the Defendants allowed them to view, analyze, compute, and track their competitors' sales, and to compare and analyze market share information.[292]

655. IMS Health, for example, provided Defendants with reports detailing prescriber behavior and the number of prescriptions written between competing products.[293]

---

[291] U.S. Dep't of Justice Drug Enforcement Administration, *Suggested Questions a Distributor should ask prior to shipping controlled substances*, https://www.deadiversion.usdoj.gov/mtgs/pharm_industry/14th_pharm/levinl_ques.pdf; Richard Widup, Jr. & Kathleen H. Dooley, Esq. *Pharmaceutical Product Diversion: Beyond the PDMA*, Purdue Pharma and McGuireWoods LLC, https://www.mcguirewoods.com/news-resources/publications/lifesciences/product_diversion_beyond_pdma.pdf.

[292] A Verispan representative testified that the Supply Chain Defendants use the prescribing information to "drive market share." *Sorrell v. IMS Health Inc.*, No. 10-779, 2011 WL 661712, *9-10 (Feb. 22, 2011).

[293] Paul Kallukaran & Jerry Kagan, *Data Mining at IMS HEALTH: How we Turned a Mountain of Data into a Few Information-rich Molehills*, http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.198.349&rep=rep1&type=pdf, Figure 2 at p. 3 (last accessed Aug. 1, 2018).

of Administrative Law Judges. These numbers include 76 actions involving orders to show cause and 41 actions involving immediate suspension orders, all for failure to report suspicious orders.[297]

659. Sales representatives were also aware that the prescription opioids they were promoting were being diverted, often with lethal consequences. As a sales representative wrote on a public forum:

> Actions have consequences - so some patient gets Rx'd the 80mg OxyContin when they probably could have done okay on the 20mg (but their doctor got "sold" on the 80mg) and their teen son/daughter/child's teen friend finds the pill bottle and takes out a few 80's... next they're at a pill party with other teens and some kid picks out a green pill from the bowl... they go to sleep and don't wake up (because they don't understand respiratory depression). Stupid decision for a teen to make...yes... but do they really deserve to die?

660. Moreover, Defendants' sales incentives rewarded sales representatives who happened to have pill mills within their territories, enticing those representatives to look the other way even when their in-person visits to such clinics should have raised numerous red flags. In one example, a pain clinic in South Carolina was diverting massive quantities of OxyContin. People traveled to the clinic from towns as far as 100 miles away to get prescriptions, the DEA's diversion unit raided the clinic, and prosecutors eventually filed criminal charges against the doctors. But Purdue's sales representative for that territory, Eric Wilson, continued to promote OxyContin sales at the clinic. He reportedly told another local physician that this clinic accounted for 40% of the OxyContin sales in his territory. At that time, Wilson was Purdue's top-ranked sales representative.[298] In response to news stories about this clinic, Purdue issued a statement, declaring

---

[297] *Id.*

[298] *Pain Killer*, *supra* n. 98, at 298-300.

sales strategy to pay particular attention to actual and potential prolific prescribers, which the Board and senior officers understood to account for approximately 10% of overall revenues.

663. Purdue also tracked prescribers from whom there was a substantial possibility of opioids having been diverted, or, at a minimum, grossly over-prescribed. It described these prescribers as, collectively, "Region Zero," and even generated a map, given to members of the Board, correlating these prescribers with poison control calls and pharmacy thefts.




*Map presented to the Purdue Board in 2011*

664. Once prescribers were categorized as part of "Region Zero," Purdue would eventually stop promoting to them, but it would *not* stop selling to them, and it would *not* report them to authorities. This would have been costly. Indeed, an internal Purdue study showed that the financial penalties imposed on drug companies for illegal marketing were "relatively small"

in the newspaper [of Dr. Paolino] is of a horrible, bad actor, someone who preyed upon this community, who caused untold suffering. And he fooled us all. He fooled law enforcement. He fooled the DEA. He fooled local law enforcement. He fooled us."[302]

669. But given the closeness with which they monitored prescribing patterns through IMS Health data, the Defendants either knew or chose not to know of the obvious drug diversions. In fact, a local pharmacist had noticed the volume of prescriptions coming from Paolino's clinic and alerted authorities. Purdue had the prescribing data from the clinic and alerted no one. Indeed, a Purdue executive referred to Purdue's tracking system and database as a "gold mine" and acknowledged that Purdue could identify highly suspicious volumes of prescriptions.

670. As discussed below, Endo knew that Opana ER was being widely abused. Yet, the New York Attorney General revealed, based on information obtained in an investigation into Endo, that Endo sales representatives were not aware that they had a duty to report suspicious activity and were not trained on the company's policies or duties to report suspicious activity, and Endo paid bonuses to sales representatives for detailing prescribers who were subsequently arrested for illegal prescribing.

671. Sales representatives making in-person visits to such clinics were likewise not fooled. But as pill mills were lucrative for the manufacturers and individual sales representatives alike, Marketing Defendants and their employees turned a collective blind eye, allowing certain clinics to dispense staggering quantities of potent opioids and feigning surprise when the most egregious examples eventually made the nightly news.

---

[302] *Pain Killer, supra* n. 98, at 179.

a. "timely identify suspicious orders of controlled substances and inform the DEA of those orders, as required by 21 C.F.R. §1301.74(b)";

b. "maintain effective controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels, as required by 21 C.F.R. §1301.74, including the failure to make records and reports required by the CSA or DEA's regulations for which a penalty may be imposed under 21 U.S.C. §842(a)(5)"; and

c. "execute, fill, cancel, correct, file with the DEA, and otherwise handle DEA 'Form 222' order forms and their electronic equivalent for Schedule II controlled substances, as required by 21 U.S.C. §828 and 21 C.F.R. Part 1305."

676. In 2012, the State of West Virginia sued AmerisourceBergen and Cardinal, as well as several smaller wholesalers, for numerous causes of action, including violations of the CSA, consumer credit and protection and antitrust laws, and the creation of a public nuisance. Unsealed court records from that case demonstrate that AmerisourceBergen, along with Cardinal, shipped 423 million pain pills to West Virginia between 2007 and 2012. AmerisourceBergen itself shipped 80.3 million hydrocodone pills and 38.4 million oxycodone pills during that time period. These quantities demonstrate that the Defendants failed to control the supply chain or to report and take steps to halt suspicious orders. In 2016, AmerisourceBergen agreed to settle the West Virginia lawsuit for $16 million to the state; Cardinal settled for $20 million.

677. Henry Schein, too, is a repeat offender. Since the company's inception, it has been subjected to repeated disciplinary actions across the United States for its sale and/or distribution of dangerous drugs to persons or facilities not licensed or otherwise authorized to possess such drugs.

678. In 2014, Henry Schein Animal Health was investigated by the State of Ohio Board of Pharmacy due to its sale/distribution of wholesale dangerous drugs to an entity not holding a

our world more sustainable, while governing our activities as a good corporate citizen in compliance with all regulatory requirements and with a belief that doing 'the right thing' serves everyone." Defendant Cardinal likewise claims to "lead [its] industry in anti-diversion strategies to help prevent opioids from being diverted for misuse or abuse." Along the same lines, it claims to "maintain a sophisticated, state-of-the-art program to identify, block and report to regulators those orders of prescription-controlled medications that do not meet [its] strict criteria." Defendant Cardinal also promotes funding it provides for "Generation Rx," which funds grants related to prescription drug misuse. A Cardinal executive recently claimed that Cardinal uses "advanced analytics" to monitor its supply chain; Cardinal assured the public it was being "as effective and efficient as possible in constantly monitoring, identifying, and eliminating any outside criminal activity."

684. Along the same lines, Defendant AmerisourceBergen has taken the public position that it is "work[ing] diligently to combat diversion and [is] working closely with regulatory agencies and other partners in pharmaceutical and healthcare delivery to help find solutions that will support appropriate access while limiting misuse of controlled substances." A company spokeswoman also provided assurance that: "At AmerisourceBergen, we are committed to the safe and efficient delivery of controlled substances to meet the medical needs of patients."

685. Moreover, in furtherance of their effort to affirmatively conceal their conduct and avoid detection, the Supply Chain Defendants, through their trade associations, HDMA and NACDS, filed an amicus brief in *Masters Pharmaceuticals*, which made the following statements:[303]

a. "HDMA and NACDS members not only have statutory and regulatory responsibilities to guard against diversion of controlled

[303] Brief for HDMA and NACDS, *supra* n. 284, at *3-4, *25.

689. At the heart of Purdue's public outreach is the claim that it works hand-in-glove with law enforcement and government agencies to combat opioid abuse and diversion. Purdue has consistently trumpeted this partnership since at least 2008, and the message of close cooperation is in virtually all of Purdue's recent pronouncements in response to the opioid epidemic.

690. Touting the benefits of ADF opioids, Purdue's website asserts: "[W]e are acutely aware of the public health risks these powerful medications create . . .. That's why we work with health experts, law enforcement, and government agencies on efforts to reduce the risks of opioid abuse and misuse . . . ."[305] Purdue's statement on "Opioids Corporate Responsibility" likewise states that "[f]or many years, Purdue has committed substantial resources to combat opioid abuse by partnering with . . . communities, law enforcement, and government."[306] And, responding to criticism of Purdue's failure to report suspicious prescribing to government regulatory and enforcement authorities, the website similarly proclaims that Purdue "ha[s] a long record of close coordination with the DEA and other law enforcement stakeholders to detect and reduce drug diversion."[307]

691. These public pronouncements create the false impression that Purdue is proactively working with law enforcement and government authorities nationwide to root out drug diversion, including the illicit prescribing that can lead to diversion. It aims to distance Purdue from its past

---

[305] Purdue, *Opioids With Abuse-Deterrent Properties*, http://www.purduepharma.com/healthcare-professionals/responsible-use-of-opioids/opioids-with-abuse-deterrent-properties/ (last accessed Aug. 1, 2018).

[306] *Id.*

[307] *Setting The Record Straight On Our Anti-Diversion Programs*, *supra* n. 312. Contrary to its public statements, Purdue seems to have worked behind the scenes to push back against law enforcement.

chargeback is a payment made by a manufacturer to a distributor after the distributor sells the manufacturer's product at a price below a specified rate. After a distributor sells a manufacturer's product to a pharmacy, for example, the distributor requests a chargeback from the manufacturer and, in exchange for the payment, the distributor identifies to the manufacturer the product, volume and the pharmacy to which it sold the product. Thus, the Marketing Defendants knew – just as the Distributor Defendants knew – the volume, frequency, and pattern of opioid orders being placed and filled. The Marketing Defendants built receipt of this information into the payment structure for the opioids provided to the opioid distributors.

696. The Department of Justice has recently confirmed the suspicious order obligations clearly imposed by law upon opioid manufacturers, fining Mallinckrodt $35 million for failure to report suspicious orders of controlled substances, including opioids, and for violating recordkeeping requirements.[308]

697. In the press release accompanying the settlement, the Department of Justice stated: "[Mallinckrodt] did not meet its obligations to detect and notify DEA of suspicious orders of controlled substances such as oxycodone, the abuse of which is part of the current opioid epidemic. These suspicious order monitoring requirements exist to prevent excessive sales of controlled substances, like oxycodone." . . . "Mallinckrodt's actions and omissions formed a link in the chain of supply that resulted in millions of oxycodone pills being sold on the street. . . . Manufacturers

---

[308] *See* Press Release, U.S. Dep't of Justice, Mallinckrodt Agrees to Pay Record $35 Million Settlement for Failure to Report Suspicious Orders of Pharmaceutical Drugs and for Recordkeeping Violations (July 11, 2017), https://www.justice.gov/opa/pr/mallinckrodt-agrees-pay-record-35-million-settlement-failure-report-suspicious-orders.

700. The 2017 Mallinckrodt MOA further details the DEA's allegations regarding Mallinckrodt's failures to fulfill its legal duties as an opioid manufacturer:

a. With respect to its distribution of oxycodone and hydrocodone products, Mallinckrodt's alleged failure to distribute these controlled substances in a manner authorized by its registration and Mallinckrodt's alleged failure to operate an effective suspicious order monitoring system and to report suspicious orders to the DEA when discovered as required by and in violation of 21 C.F.R. § 1301.74(b). The above includes, but is not limited to Mallinckrodt's alleged failure to: conduct adequate due diligence of its customers;

b. Detect and report to the DEA orders of unusual size and frequency;

c. Detect and report to the DEA orders deviating substantially from normal patterns including, but not limited to, those identified in letters from the DEA Deputy Assistant Administrator, Office of Diversion Control, to registrants dated September 27, 2006 and December 27, 2007:

i. orders that resulted in a disproportionate amount of a substance which is most often abused going to a particular geographic region where there was known diversion,

ii. orders that purchased a disproportionate amount of substance which is most often abused compared to other products, and

iii. orders from downstream customers to distributors who were purchasing from multiple different distributors, of which Mallinckrodt was aware;

d. Use "chargeback" information from its distributors to evaluate suspicious orders. Chargebacks include downstream purchasing information tied to certain discounts, providing Mallinckrodt with data on buying patterns for Mallinckrodt products; and

e. Take sufficient action to prevent recurrence of diversion by downstream customers after receiving concrete information of diversion of Mallinckrodt product by those downstream customers.[312]

---

[312] *Id.* at 2-3.

industry-wide among opioid manufacturers and distributors, including the other Marketing and Distributor Defendants.

705. Through, *inter alia*, the charge back data, the Marketing Defendants could monitor suspicious orders of opioids.

706. The Marketing Defendants failed to monitor, report, and halt suspicious orders of opioids as required by law.

707. The Marketing Defendants' failures to monitor, report, and halt suspicious orders of opioids were intentional and unlawful.

708. The Marketing Defendants have misrepresented their compliance with the laws regulating controlled substances.

709. The wrongful actions and omissions of the Marketing Defendants that caused the diversion of opioids and which were a substantial contributing factor to and/or proximate cause of the opioid crisis are alleged in greater detail in Plaintiffs' allegations of Defendants' unlawful acts below.

710. The Marketing Defendants' actions and omissions in failing to effectively prevent diversion and failing to monitor, report, and prevent suspicious orders have enabled the unlawful diversion of opioids throughout the United States.

## C. The Distributor Defendants' Unlawful Distribution of Opioids

711. The Distributor Defendants owe a duty under, *inter alia*, common law and statutory law, to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids as well as those orders which the Distributor Defendants knew or should have known were likely to be diverted.

order does not matter and the order should be reported as suspicious. Likewise, a wholesale distributor need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious. The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the wholesale distributor's responsibility to report the order as suspicious. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the wholesale distributor's customer base and the patterns throughout the relevant segment of the wholesale distributor industry.

718. In addition to reporting all suspicious orders, distributors must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the distributor can determine that the order is not likely to be diverted into illegal channels. *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007); *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, No. 15-11355 (D.C. Cir. June 30, 2017). Regardless, all flagged orders must be reported. *Id.*

719. These prescription drugs are regulated for the purpose of providing a "closed" system intended to reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control.

720. Because distributors are the first major line of defense in the movement of legal pharmaceutical controlled substances from legitimate channels into the illicit market, it is incumbent on them to maintain effective controls to prevent diversion of controlled substances.

deliver controlled substances only for lawful purposes."[318] The DEA warns that "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."

724. The DEA sent a second letter to each of the Distributor Defendants on December 27, 2007.[319] This letter reminds the Distributor Defendants of their statutory and regulatory duties to "maintain effective controls against diversion" and "design and operate a system to disclose to the registrant suspicious orders of controlled substances."[320] The letter further explains:

> The regulation also requires that the registrant inform the local DEA Division Office of suspicious orders when discovered by the registrant. Filing a monthly report of completed transactions (e.g., "excessive purchase report" or "high unity purchases") does not meet the regulatory requirement to report suspicious orders.
>
> The regulation specifically states that suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of an unusual frequency. These criteria are disjunctive and are not all inclusive.
>
> Lastly, registrants that routinely report suspicious orders, yet fill these orders without first determining that order is not being diverted into other than legitimate medical, scientific, and industrial channels, may be failing to maintain effective controls against diversion. Failure to maintain effective controls against diversion is inconsistent with the public interest as that term is used in 21 USC 823 and 824, and may result in the revocation of the registrant's DEA Certificate of Registration.[321]

725. Finally, the DEA letter references the Revocation of Registration issued in *Southwood Pharmaceuticals, Inc.*, 72 Fed. Reg. 36,487-01 (July 3, 2007), which discusses the

---

[318] *Id.* at 1.

[319] *Id.* at 2.

[320] *See* Letter from Joseph T. Rannazzisi to Cardinal Health, *supra* n. 323.

[321] *Id.*

728. The Federal Trade Commission ("FTC") has recognized the unique role of distributors. Since their inception, Distributor Defendants have continued to integrate vertically by acquiring businesses that are related to the distribution of pharmaceutical products and health care supplies. In addition to the actual distribution of pharmaceuticals, as wholesalers, Distributor Defendants also offer their pharmacy, or dispensing, customers a broad range of added services. For example, Distributor Defendants offer their pharmacies sophisticated ordering systems and access to an inventory management system and distribution facility that allows customers to reduce inventory carrying costs. Distributor Defendants are also able to use the combined purchase volume of their customers to negotiate the cost of goods with manufacturers and offer services that include software assistance and other database management support. *See Fed. Trade Comm'n v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 41 (D.D.C. 1998) (granting the FTC's motion for preliminary injunction and holding that the potential benefits to customers did not outweigh the potential anti-competitive effect of a proposed merger between Cardinal, Inc. and Bergen Brunswig Corp.). As a result of their acquisition of a diverse assortment of related businesses within the pharmaceutical industry, as well as the assortment of additional services they offer, Distributor Defendants have a unique insight into the ordering patterns and activities of their dispensing customers.

729. The DEA also repeatedly reminded the Defendants of their obligations to report and decline to fill suspicious orders. Responding to the proliferation of pharmacies operating on the internet that arranged illicit sales of enormous volumes of opioids to drug dealers and customers, the DEA began a major push to remind distributors of their obligations to prevent these kinds of abuses and educate them on how to meet these obligations. Since 2007, the DEA has hosted at least five conferences that provided registrants with updated information about diversion

threshold increases, detecting, blocking, and reporting suspicious orders, and terminating and/or suspending customers, were often assigned to operations, sales and administrative employees who had no experience with regulatory compliance of any kind.

### 2. Inadequate Scrutiny of Customers

737. None of the Distributor Defendants had a consistent practice of conducting appropriate due diligence of either prospective new customers or their existing customers. New customers were routinely on-boarded despite the acknowledged presence of unresolved red flags, and none of the Distributor Defendants ensured that additional investigations were conducted when existing customers made suspicious orders, even when compliance staff flagged those orders as suspicious, blocked them, and reported them to the State.

738. Indeed, the Distributor Defendants routinely allowed their customers to make multiple suspicious orders within the same month, week, or even year, without conducting any additional due diligence of those customers. In fact, salespeople would warn customers when they were approaching their monthly threshold limits for ordering certain categories of controlled substances, putting them in a position to assist their customers in *evading* compliance reviews that would have otherwise occurred by manipulating the timing and volume of their orders.

739. Even where customers had to be blocked from ordering opioids in excess of their monthly threshold allowance multiple times within that month, the Distributor Defendants would allow those customers to resume ordering opioids the next month, at the same volume levels as before, without requiring any follow up investigation.

740. And none of the Distributor Defendants conducted periodic, unexpected due diligence audits of their customers, even among the easily identifiable and relatively small groups of pharmacies that consistently ordered the highest volumes of opioids. Instead, these pharmacies could go for years without the Distributor Defendants updating their knowledge of those

that exceeded a customer's monthly threshold limit for a particular category of controlled substances would actually trigger a compliance review. As a result, untold numbers of opioid orders that should have been reviewed due to their unusual size or frequency, or their departure from the customers' normal ordering patterns, were never even checked to determine whether they were suspicious. Because the Distributor Defendants routinely allowed their customers to obtain information about the monthly threshold limits governing their orders of opioid products, orders customers made within the limits after being enabled to "game" them were improperly excluded from compliance review, when they all should have been checked to see whether the customers were deliberately structuring their orders to evade scrutiny.

747. Even as to orders that exceeded customers' monthly thresholds, the Distributor Defendants, over varying time periods, routinely failed to accurately identify those orders as suspicious. Instead, they released those orders for delivery based on perfunctory and unverified information provided by the customer, or for no documented reason at all. Moreover, even when the Distributor Defendants did identify orders as suspicious and did block them from delivery to customers, they routinely failed to report those suspicious orders to the State, sometimes going months or years without reporting any at all. When they did make suspicious-order reports, the reports were routinely incomplete, for example, by failing to identify all of the relevant suspicious orders for a customer, even when they were made within the same month, week, or even day.

748. The sheer volume of prescription opioids distributed to pharmacies in various areas, and/or to pharmacies from which the Distributor Defendants knew the opioids were likely to be diverted, was excessive for the medical need of the community and facially suspicious. Some red

already been identified, unless they had personally handled the earlier investigation, and happened to remember the prescriber's name. Similarly, they made no effort to collect and compare information about pharmacies that made high-volume orders of opioids, had been flagged for making suspicious orders, or had been suspended or terminated for suspicious or illegal practices. As a result, compliance staff had no way of knowing that a pharmacy they were investigating shared ordering patterns or top prescribers with another risky, suspicious, and/or previously disciplined customer.

### 6. The Distributor Defendants Failed to Report Violations to Government Authorities

752. The Distributor Defendants failed to promptly report compliance violations to the State of Tennessee, and other governments. Indeed, even when they actually detected failures in their compliance systems, they made no effort to report those known incidents. More broadly, due to the combination of systematic failures riddling their compliance systems described above, none of the Distributor Defendants had the competence to effectively detect their own violations.

753. For example, if any of the relevant Distributor Defendants had conducted periodic audits of their own records of customers' orders, those customers' patterns of ordering in excess of their monthly threshold allowance for opioid products, the number of times those orders were released without justification, and the number of times those orders were blocked as suspicious without being reported to government agencies and/or triggering additional investigations, suspensions, or terminations, they would have each been obliged to report hundreds, if not thousands, of violations at a time.

754. In short, the Distributor Defendants deliberately lied to Tennessee and other states, both expressly and by omission, year in and year out, about the effectiveness of their compliance

b. Allowed onboarding of new accounts even where customers failed to provide requested information about other suppliers, dispensing data, and top prescriber information; and

c. Allowed compliance staff to release a customer's first order in excess of its monthly threshold, regardless of whether the customer made other orders in excess of the same drug threshold at the same time.

#### ii. Cardinal's Failure to Effectively Prevent Diversion in Practice

759. At all relevant times, Cardinal failed to employ qualified compliance staff to implement these policies, failed to adequately train those compliance staff or its sales representatives concerning Cardinal's anti-diversion duties, and failed to enforce even the defective policies it had in place.

760. Cardinal failed to install qualified personnel in key compliance positions. For example, Cardinal's front-line "New Account Specialists" and "Analysts," responsible for onboarding new customers and monitoring existing customers, respectively, were routinely recruited from the ranks of the company's existing pool of administrative assistants. These employees, who had no experience in regulatory compliance, were generally supervised by pharmacists or other professionals with no prior experience in supervising investigative functions.

761. Moreover, Cardinal failed to provide meaningful training to either these unqualified compliance personnel or sales representatives. Instead, Cardinal expected the compliance staff to "learn on the job" through informal in-person "team meetings." Due to the lack of proper training and clear guidelines, compliance staff did not fully understand critical components of their jobs and often developed their own procedures and benchmarks for reviewing customers.

762. Unsurprisingly, these unqualified and untrained staff routinely failed to follow even the most basic procedures required under the company's various SOPs. In addition, Cardinal

766. Even where Cardinal did block customers' orders and report them as, it routinely took no steps to suspend or terminate those customers pending further investigation, and instead allowed them to continue receiving their threshold amount of opioids month after month thereafter, regardless of whether the customer continued to make additional suspicious orders.

767. Between 2012 and 2017, for example, Cardinal reported twelve or more opioid related suspicious orders for at least one year-the equivalent of one per month-for hundreds of pharmacies nationwide. Those pharmacies had several known red flags m their shipment orders and prescription data. More than half of these pharmacies: (a) exceeded the 90th percentile in the State in terms of opioid volume shipped; (b) exceeded the 90th percentile in the State in terms of oxycodone volume shipped; and (c) exceeded the 90th percentile in the State in terms of median strength of opioids prescribed per day. Nonetheless, even after reporting twelve or more opioid-related suspicious orders for one of these pharmacies, Cardinal continued to ship opioids, on average, for *more than three years*. Within this group of suspect pharmacies that Cardinal did nothing to control, these included particularly egregious cases in which Cardinal reported more than 50 opioid-related suspicious orders per year-the equivalent of *one suspicious order per week* to the authorities for *three or more* consecutive *years*.

768. In still other instances, neither Cardinal nor other distributors reported numerous suspicious orders, but almost certainly should have, given that a handful of prescribers were responsible for writing an unusually high percentage of the pharmacy's opioid prescriptions. By itself, having a high concentration of opioid prescriptions written by a small number of providers is a known red flag for opioid diversion. Subsequently, these pharmacies had among the highest percentage of prescriptions written by providers who were indicted or convicted on opioid-related prescribing and distribution charges.

773. To date, Cardinal has paid a total of $98 million in fines and other amounts involving multiple DEA and various state actions relating to its improper management and distribution of opioids to pharmacies across the United States.

774. In 2008, Cardinal paid a $34 million penalty to settle allegations about opioid diversion taking place at seven warehouses around the United States (the "2008 Cardinal Settlement Agreement").[327] These allegations included failing to report to the DEA thousands of suspicious orders of hydrocodone that Cardinal then distributed to pharmacies that filled illegitimate prescriptions originating from rogue Internet pharmacy websites.[328]

775. In connection with the 2008 Cardinal Settlement Agreement, the DEA stated that "[d]espite [its] repeated attempts to educate Cardinal on diversion awareness and prevention, Cardinal engaged in a pattern of failing to report blatantly suspicious orders for controlled substances filled by its distribution facilities located throughout the United States."[329] The DEA concluded that "Cardinal's conduct allowed the 'diversion' of millions of dosage units of hydrocodone from legitimate to non-legitimate channels."[330]

---

[327] Settlement and Release Agreement and Administrative Memorandum of Agreement (Sept. 30, 2008), a cached version is *available at* https://webcache.googleusercontent.com/search?q=cache:O7Te0HbVfplJ:https://www.dea.gov/divisions/hq/2012/cardinal_agreement.pdf+&cd=2&hl=en&ct=clnk&gl=us; Press Release, U.S. Att'y Office, Dist. of Colo., Cardinal Health Inc., Agrees to Pay $34 Million to Settle Claims that it Failed to Report Suspicious Sales of Widely-Abused Controlled Substances (Oct. 2, 2008), https://www.justice.gov/archive/usao/co/news/2008/October08/10_2_08.html.

[328] *Id.*

[329] U.S. Att'y Office, Dist. of Colo., *Cardinal Health Inc. Agrees to Pay $34 Million to Settle Claims that It Failed to Report Suspicious Sales of Widely-Abused Controlled Substances* (Oct. 2, 2008), https://www.justice.gov/archive/usao/co/news/2008/October08/10_2_08.html.

[330] *Id.*

year license suspension for supplying more than 12 million dosage units to only four area pharmacies, nearly fifty times as much oxycodone as it shipped to the rest of Florida and an increase of 241% in only two years.[335] The DEA found that Cardinal's own investigator warned Cardinal against selling opioids to these pharmacies, but that Cardinal did nothing to notify the DEA or cut off the supply of drugs to the suspect pharmacies.[336] Instead, Cardinal's opioid shipments to the pharmacies increased.[337]

778. In the 2012 Cardinal Settlement Agreement, Cardinal agreed that it had (i) failed to maintain effective controls against the diversion of controlled substances, including failing to conduct meaningful due diligence to ensure that controlled substances were not diverted; (ii) failed to detect and report suspicious orders of controlled substances as required by the CSA, on or before May 14, 2012; and (iii) failed to adhere to the provisions of the 2008 Cardinal Settlement Agreement.[338]

779. In December 2016, Cardinal again settled charges that it had violated the CSA by failing to prevent diversion of oxycodone for illegal purposes, this time for $44 million (the "2016 Cardinal Settlement Agreement").[339] The settlement covered DEA allegations that Cardinal had

---

2012), https://www.dea.gov/pubs/pressrel/pr051512.html (hereinafter "Administrative Memorandum of Agreement (May 14, 2012)").

[335] *Id.*

[336] *Id.*

[337] *Id.*

[338] Administrative Memorandum of Agreement (May 14, 2012), *supra* n. 342.

[339] U.S. Att'y Office, Dist. of Md., *Cardinal Health Agrees to $44 Million Settlement for Alleged Violations of Controlled Substances Act* (Dec. 23, 2016) https://www.justice.gov/usao-md/pr/cardinal-health-agrees-44-million-settlement-alleged-violations-controlled-substances-act.

784. Cardinal profited in two ways from its marketing activities: (1) it was paid by the drug manufacturers to promote their prescription opioids, and/or (2) it was paid from increases in pharmacy drug sales that resulted from these marketing efforts.

785. The targeting of pharmacists by Cardinal in its marketing activities was particularly problematic because of Cardinal's existing and often long-term business relationships with pharmacies—with whom Cardinal shared a legal responsibility to prevent diversion. Opioid distributors, like Cardinal, were in a unique and trusted position in the controlled substances supply chain from which they could have spoken truthfully to their pharmacy customers about the serious risks posed by opioids (including the risk of diversion). They could have remained silent about the benefits and risks of opioids, and simply filled orders and shipped drugs. Instead, Cardinal abused its unique position for profit, by contributing to the chorus of deception surrounding opioids.

786. To engage in the promotion of controlled substances at all, under the circumstances detailed in this Complaint, was a dereliction of Cardinal's duties to prevent opioid diversion. Through these marketing activities, Cardinal contributed to and reinforced the deceptive and misleading marketing messages that healthcare providers received about opioids through other channels. Moreover, much of the Cardinal's marketing content was deceptive, because it either affirmatively misrepresented the benefits and risks of prescription opioids, or it omitted important information about the risks of prescription opioids. Cardinal knew or should have known that these marketing messages—particularly those that misrepresented or omitted material information about the potential for diversion or risks of addiction associated with prescription opioids—were deceptive.

787. Through marketing activities, Cardinal built upon, reinforced, and profited from the drug manufacturers' campaign to deceive healthcare providers about the risks and benefits of

customer procedure, and controlled substances could account for up to-of prescriptions dispensed before triggering additional investigation.

791. AmerisourceBergen does not require new customers to provide usage reports or dispensing data as part of the on boarding process. By relying on these customers to self-report without any documented verification, AmerisourceBergen does not fulfill its obligation of truly knowing its customers' business practices.

792. Both prior to and after program revision, AmerisourceBergen's policies have allowed for frequent threshold manipulation to avoid orders being held for review, rejected from shipment, or reported as suspicious. Staff reviewing the form have high benchmarks for these numbers before considering them red flags.

793. AmerisourceBergen's policies are not sufficient to comply with the requirements of T.C.A. § 53-1-101 and similar requirements of other states. Under AmerisourceBergen's deficient policies, it does not hold for review orders that only meet one of these qualifications. By limiting the orders even held for review, AmerisourceBergen's policy does not fulfill its obligation to identify even orders of interest, much less suspicious orders.

794. Examples of egregious cases identified recently in a complaint filed by a state attorney general included:

a. A pharmacy at or above both the 99th percentile in terms of both number of opioid orders and total opioid weight, at which, between 2014 and 2016, more than 10% of its prescriptions were written by prescribers who were later indicted or convicted of opioid-related prescribing and distribution charges, concerning which AmerisourceBergen reported nearly 200 SORs in 2013-14, and to which as of 2018, AmerisourceBergen was still serving as this pharmacy's primary opioid distributor;

b. A pharmacy where, between 2013 and 2017, 77% of its prescriptions, on average, were written by prescribers who were later indicted or convicted, including 90% in 2014, and to which Amerisource appears to have only stopped shipping in 2017; and

to failing to perform even this baseline screening. Bellco Generics customers, for example, regularly completed the 590 Form independently, submitted it to Bellco, and were on boarded thereafter without receiving a site visit.

799. Disjunction between AmerisourceBergen and Bellco has led to many compliance failures. Until system integration in or around November 2015, staff had no systematic way of identifying dual customers. The lack of an integrated system also meant that thresholds were not coordinated between AmerisourceBergen and Bellco at any point. As a result, a dual customer could have high thresholds set with both, could be exceeding both thresholds, or even having its threshold periodically increased with both, without detection. In or around April 2013, AmerisourceBergen implemented a policy for dual customers that prevented both AmerisourceBergen and Bellco from supplying controlled substances to the same customer, but implementation was spotty, and, in practice, only a small percentage of orders flagged for review are cancelled, and even fewer are deemed suspicious.

800. AmerisourceBergen has a high tolerance for compliance issues before it will terminate a customer. It still lacks an internal rule or policy that requires investigation of a customer based on a specific number of suspicious order reports. Even when customers were restricted, blocked, or terminated, AmerisourceBergen's system failed to ensure their accounts were de-activated.

801. The one area in which AmerisourceBergen has consistently stood out as compared to its major competitors is its unwillingness to identify suspicious orders, even among customers that regularly exceeded their thresholds and presented multiple red flags of diversion. During this time, numerous AmerisourceBergen opioid customers exhibited several common indicators of suspicious activity for multiple years. These flags included:

Internet pharmacies.[343] Over the course of one year, AmerisourceBergen had distributed 3.8 million dosage units of hydrocodone to "rogue pharmacies."[344] The DEA suspended AmerisourceBergen's registration after determining that "the continued registration of this company constitutes an imminent danger to public health and safety."[345]

805. Again in 2012, AmerisourceBergen was implicated for failing to protect against diversion of particular controlled substances into non-medically necessary channels.[346]

### 8. The Distributor Defendants Sought to Avoid and Have Misrepresented Their Compliance with Their Legal Duties

806. The Distributor Defendants have repeatedly misrepresented their compliance with their legal duties under Tennessee and Virginia law and have wrongfully and repeatedly disavowed those duties in an effort to mislead regulators and the public regarding the Distributor Defendants' compliance with their legal duties.

807. Distributor Defendants have refused to recognize any duty beyond reporting suspicious orders. In *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017), the Healthcare Distribution Management Association, n/k/a HDA, a trade association run by the Distributor Defendants, and the National Association of Chain Drug Stores ("NACDS"), an

---

[343] Press Release, Drug Enf't Admin., *DEA Suspends Orlando Branch of Drug Company from Distributing Controlled Substances* (Apr. 24, 2007), https://www.dea.gov/divisions/mia/2007/mia042407p.html.

[344] *Id.*

[345] *Id.*

[346] Jeff Overley, *AmerisourceBergen Subpoenaed by DEA Over Drug Diversion*, Law360.com (Aug. 9, 2012), *available at* https://www.law360.com/articles/368498/amerisourcebergen-subpoenaed-by-dea-over-drug-diversion.

orders, but left it to DEA and its agents to investigate and halt suspicious orders."[351]

f. Also inaccurately, the Associations argued that, "[i]mposing a duty on distributors – which lack the patient information and the necessary medical expertise – to investigate and halt orders may force distributors to take a shot-in-the-dark approach to complying with DEA's demands."[352]

808. The positions taken by the trade groups is emblematic of the position taken by the Distributor Defendants in a futile attempt to deny their legal obligations to prevent diversion of the dangerous drugs.[353]

809. The Court of Appeals for the District of Columbia Circuit recently issued its opinion affirming that a wholesale drug distributor does, in fact, have duties beyond reporting. In *Masters Pharmaceuticals*, the Court upheld the revocation of Masters Pharmaceutical's license and determined that DEA regulations require that in addition to reporting suspicious orders, distributors must "decline to ship the order, or conduct some 'due diligence' and—if it is able to determine that the order is not likely to be diverted into illegal channels—ship the order." Masters Pharmaceutical was in violation of legal requirements because it failed to conduct necessary investigations and filled suspicious orders. A distributor's investigation must dispel all the red flags giving rise to suspicious circumstance prior to shipping a suspicious order. The Circuit Court also rejected the argument made by the HDMA and NACDS (quoted above), that, allegedly, the DEA had created or imposed new duties.

---

[351] *Id.* at *24–25

[352] *Id.* at 26.

[353] *See* Brief of HDMA in Support of Cardinal, *supra* n. 331, at *3 (arguing the wholesale distributor industry "does not know the rules of the road because" they claim (inaccurately) that the "DEA has not adequately explained them").

Distribution Center ("Stafford Facility") for failure to maintain effective controls against diversion of hydrocodone;

f. On September 30, 2008, Cardinal entered into a *Settlement and Release Agreement and Administrative Memorandum of Agreement* with the DEA related to its Auburn Facility, Lakeland Facility, Swedesboro Facility and Stafford Facility. The document also referenced allegations by the DEA that Cardinal failed to maintain effective controls against the diversion of controlled substances at its distribution facilities located in McDonough, Georgia ("McDonough Facility"), Valencia, California ("Valencia Facility") and Denver, Colorado ("Denver Facility");

g. On February 2, 2012, the DEA issued an *Order to Show Cause and Immediate Suspension Order* against the Cardinal Lakeland, Florida Distribution Center ("Lakeland Facility") for failure to maintain effective controls against diversion of oxycodone; and

h. On December 23, 2016, Cardinal agreed to pay a $44 million fine to the DEA to resolve the civil penalty portion of the administrative action taken against its Lakeland, Florida Distribution Center.

811. Rather than abide by their non-delegable duties under public safety laws, the Distributor Defendants, individually and collectively through trade groups in the industry, pressured the U.S. Department of Justice to "halt" prosecutions and lobbied Congress to strip the DEA of its ability to immediately suspend distributor registrations. The result was a "sharp drop in enforcement actions" and the passage of the "Ensuring Patient Access and Effective Drug Enforcement Act" which, ironically, raised the burden for the DEA to revoke a distributor's license from "imminent harm" to "immediate harm" and provided the industry the right to "cure" any violations of law before a suspension order can be issued.[356]

---

[356] *See* Lenny Bernstein & Scott Higham, *Investigation: The DEA Slowed Enforcement While the Opioid Epidemic Grew Out of Control*, WASHINGTON POST, Oct. 22, 2016, https://www.washingtonpost.com/investigations/the-dea-slowed-enforcement-while-the-opioid-epidemic-grew-out-of-control/2016/10/22/aea2bf8e-7f71-11e6-8d13-d7c704ef9fd9_story.html?utm_term=.2f757833e3c4; Lenny Bernstein & Scott Higham,

fines as a cost of doing business in an industry that generates billions of dollars in annual revenue. They hold multiple DEA registration numbers and when one facility is suspended, they simply ship from another facility.

817. The wrongful actions and omissions of the Distributor Defendants which have caused the diversion of opioids and which have been a substantial contributing factor to and/or proximate cause of the opioid crisis are alleged in greater detail in Plaintiffs' allegations of Defendants' unlawful acts below.

818. The Distributor Defendants have abandoned their duties imposed under state law, taken advantage of a lack of adequate law enforcement, and abused the privilege of distributing controlled substances.

### D. The National Retail Pharmacies Were on Notice of and Contributed to Illegal Diversion of Prescription Opioids

819. National retail pharmacy chains earned enormous profits by flooding the country with prescription opioids.[358] They were keenly aware of the oversupply of prescription opioids through the extensive data and information they developed and maintained as both distributors and dispensaries. Yet, instead of taking any meaningful action to stem the flow of opioids into communities, they continued to participate in the oversupply and profit from it.

820. Each of the National Retail Pharmacies does substantial business throughout the United States. This business includes the distribution and dispensing of prescription opioids.

821. Data shows that the National Retail Pharmacies distributed and dispensed substantial quantities of prescription opioids, including fentanyl, hydrocodone, and oxycodone in Tennessee and southwest Virginia. In addition, they distributed and dispensed substantial

[358] Plaintiffs' allegations of wrongdoing are pointing to the National Retail Pharmacies not the pharmacy industry who in general serve a vital healthcare function in the United States.

the United States Drug Enforcement Administration (DEA) and shall comply with applicable state, local and DEA regulations." Tenn. Comp. R. & Regs. 1140-09-.05(9)(b). *See also* Va. Code Ann. § 54.1-3423. Under 21 C.F.R. § 1306.04(a),"[t]he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription." Because pharmacies themselves are registrants under the CSA, the duty to prevent diversion lies with the pharmacy entity, not the individual pharmacist alone.

825. The DEA, among others, has provided extensive guidance to pharmacies concerning their duties to the public. The guidance advises pharmacies how to identify suspicious orders and other evidence of diversion.

826. Suspicious pharmacy orders include orders unusually large size, orders that are disproportionately large in comparison to the population of a community served by the pharmacy, orders that deviate from a normal pattern and/or orders of unusual frequency and duration, among others.

827. Additional types of suspicious orders include: (1) prescriptions written by a doctor who writes significantly more prescriptions (or in larger quantities or higher doses) for controlled substances compared to other practitioners in the area; (2) prescriptions which should last for a month in legitimate use, but are being refilled on a shorter basis; (3) prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time; (4) prescriptions that look "too good" or where the prescriber's handwriting is too legible; (5) prescriptions with quantities or doses that differ from usual medical usage; (6) prescriptions that do not comply with standard abbreviations and/or contain no abbreviations; (7) photocopied prescriptions; or (8) prescriptions containing

833. In consideration of a reasonable opportunity for further investigation and discovery, Plaintiffs allege that this problem was compounded by the National Retail Pharmacies' failure to adequately train their pharmacists and pharmacy technicians on how to properly and adequately handle prescriptions for opioid painkillers, including what constitutes a proper inquiry into whether a prescription is legitimate, whether a prescription is likely for a condition for which the FDA has approved treatments with opioids, and what measures and/or actions to take when a prescription is identified as phony, false, forged, or otherwise illegal, or when suspicious circumstances are present, including when prescriptions are procured and pills supplied for the purpose of illegal diversion and drug trafficking.

834. In consideration of a reasonable opportunity for further investigation and discovery, Plaintiffs allege that the National Retail Pharmacies also failed to adequately use data available to them to identify doctors who were writing suspicious numbers of prescriptions and/or prescriptions of suspicious amounts of opioids, or to adequately use data available to them to do statistical analysis to prevent the filling of prescriptions that were illegally diverted or otherwise contributed to the opioid crisis.

835. In consideration of a reasonable opportunity for further investigation and discovery, Plaintiffs allege that the National Retail Pharmacies failed to analyze: (a) the number of opioid prescriptions filled by individual pharmacies relative to the population of the pharmacy's community; (b) the increase in opioid sales relative to past years; (c) the number of opioid prescriptions filled relative to other drugs; and (d) the increase in annual opioid sales relative to the increase in annual sales of other drugs.

836. In consideration of a reasonable opportunity for further investigation and discovery, Plaintiffs allege that the National Retail Pharmacies also failed to conduct adequate internal or

at 9,700 retail locations. CVS could be a force for good in connection with the opioid crisis, but like other Defendants, CVS sought profits over people.

841. CVS is a repeat offender; the company has paid fines totaling over $40 million as the result of a series of investigations by the DEA and the DOJ. It nonetheless treated these fines as the cost of doing business and has allowed its pharmacies to continue dispensing opioids in quantities significantly higher than any plausible medical need would require, and to continue violating its recordkeeping and dispensing obligations under the law.

842. As recently as March 2019, CVS entered into a $535,000 settlement with the U.S. Attorney's Office for the District of Rhode Island regarding allegations that its pharmacies in Rhode Island violated federal law "including by… in 39 instances between September 9, 2015 and June 18, 2017, filling a prescription for a Schedule II drug under circumstances … that the CVS pharmacist filling the prescription knew or had reason to know that the prescription in question was invalid or unauthorized…"

843. This fine was preceded by numerous others throughout the county.

844. In July 2017, CVS entered into a $5 million settlement with the U.S. Attorney's Office for the Eastern District of California regarding allegations that its pharmacies failed to keep and maintain accurate records of Schedule II, III, IV, and V controlled substances.[359]

---

[359] Press Release, U.S. Attorney's Office E. Dist. of Cal., CVS Pharmacy Inc. Pays $5M to Settle Alleged Violations of the Controlled Substance Act, U.S. Dep't of Just. (July 11, 2017), https://www.justice.gov/usao-edca/pr/cvs-pharmacy-inc-pays-5m-settle-alleged-violationscontrolled-substance-act.

849. In August 2015, CVS entered into a $450,000 settlement with the U.S. Attorney's Office for the District of Rhode Island to resolve allegations that several of its Rhode Island stores violated the CSA by filling invalid prescriptions and maintaining deficient records. The United States alleged that CVS retail pharmacies in Rhode Island filled a number of forged prescriptions with invalid DEA numbers, and filled multiple prescriptions written by psychiatric nurse practitioners for hydrocodone, despite the fact that these practitioners were not legally permitted to prescribe that drug. Additionally, the government alleged that CVS had recordkeeping deficiencies.[364]

850. In May 2015, CVS agreed to pay a $22 million penalty following a DEA investigation that found that employees at two pharmacies in Sanford, Florida, had dispensed prescription opioids, "based on prescriptions that had not been issued for legitimate medical purposes by a health care provider acting in the usual course of professional practice. CVS also acknowledged that its retail pharmacies had a responsibility to dispense only those prescriptions that were issued based on legitimate medical need."[365]

---

[364] Press Release, U.S. Attorney's Office Dist. of R.I., Drug Diversion Claims Against CVS Health Corp. Resolved With $450,000 Civil Settlement, U.S. Dep't of Just. (Aug. 10, 2015), https://www.justice.gov/usao-ri/pr/drug-diversion-claims-against-cvs-health-corp-resolved-450000-civil-settlement.

[365] Press Release, U.S. Attorney's Office M. Dist. of Fla., United States Reaches $22 Million Settlement Agreement with CVS For Unlawful Distribution of Controlled Substances, U.S. Dep't of Just. (May 13, 2015), https://www.justice.gov/usao-mdfl/pr/united-states-reaches-22- million-settlement-agreement-cvs-unlawful-distribution.

allegations that it committed an unprecedented number of recordkeeping and dispensing violations of the CSA, including negligently allowing controlled substances such as oxycodone and other prescription painkillers to be diverted for abuse and illegal black-market sales.[369]

856. As part of the settlement, Walgreens admitted that it failed to uphold its obligations as a DEA registrant regarding the above-described conduct.[370]

857. The settlement resolved investigations into and allegations of CSA violations in Florida, New York, Michigan, and Colorado that resulted in the diversion of millions of opioids into illicit channels.

858. Walgreens' Florida operations at issue in this settlement highlight its egregious conduct regarding diversion of prescription opioids. Walgreens' Florida pharmacies each allegedly ordered more than one million dosage units of oxycodone in 2011—more than ten times the average amount.[371]

859. They increased their orders over time, in some cases as much as 600% in the space of just two years, including, for example, supplying a town of 3,000 with 285,800 orders of oxycodone in a one-month period. Yet Walgreens' corporate officers not only turned a blind eye, but provided pharmacists with incentives through a bonus program that compensated them based on the number of prescriptions filled at the pharmacy. In fact, corporate attorneys at Walgreens

---

[369] Press Release, U.S. Attorney's Office S. Dist. of Fla., Walgreens Agrees to Pay a Record Settlement of $80 Million for Civil Penalties Under the Controlled Substances Act, U.S. Dep't of Just. (June 11, 2013), https://www.justice.gov/usao-sdfl/pr/walgreens-agrees-pay-recordsettlement-80-million-civil-penalties-under-controlled.

[370] *Id.*

[371] Order to Show Cause and Immediate Suspension of Registration, *In the Matter of Walgreens Co.* (Drug Enf't Admin. Sept. 13, 2012).

862. Walgreens has also settled with a number of state attorneys general, including West Virginia ($575,000) and Massachusetts ($200,000).[375]

863. The Massachusetts Attorney General's Medicaid Fraud Division found that, from 2010 through most of 2015, multiple Walgreens stores across the state failed to monitor the opioid use of some Medicaid patients who were considered high-risk.

864. In January 2017, an investigation by the Massachusetts Attorney General found that some Walgreens pharmacies failed to monitor patients' drug use patterns and didn't use sound professional judgment when dispensing opioids and other controlled substances—despite the context of soaring overdose deaths in Massachusetts. Walgreens agreed to pay $200,000 and follow certain procedures for dispensing opioids.[376]

**c. Rite Aid**

865. With approximately 4,600 stores in 31 states and the District of Columbia, Rite Aid is the largest drugstore chain on the East Coast and the third-largest in the United States, with annual revenue of more than $21 billion.

866. In 2009, as a result of a multi-jurisdictional investigation by the DOJ, Rite Aid and nine of its subsidiaries in eight states were fined $5 million in civil penalties for its violations of the CSA.[377]

---

[375] Felice J. Freyer, *Walgreens to pay $200,000 settlement for lapses with opioids*, BOSTON GLOBE, Jan. 18, 2017, https://www.bostonglobe.com/metro/2017/01/18/walgreens-agrees-better-monitor-opioid-dispensing/q0B3FbMo2k3wPt4hvmTQrM/story.html.

[376] *Id.*

[377] Press Release, Dep't of Justice, Rite Aid Corporation and Subsidiaries Agree to Pay $5 Million in Civil Penalties to Resolve Violations in Eight States of the Controlled Substances Act, U.S.

diversion. Additional information was provided by news reports, and state and federal regulatory actions, including prosecutions of pill mills in the area.

872. On information and belief, the National Retail Pharmacies knew or reasonably should have known about the devastating consequences of the oversupply and diversion of prescription opioids, including spiking opioid overdose rates in the community.

873. On information and belief, because of (among others sources of information) regulatory and other actions taken against the National Retail Pharmacies directly, actions taken against others pertaining to prescription opioids obtained from their retail stores, complaints and information from employees and other agents, and the massive volume of opioid prescription drug sale data that they developed and monitored, the National Retail Pharmacies were well aware that their distribution and dispensing activities fell far short of legal requirements.

874. The National Retail Pharmacies' actions and omissions in failing to effectively prevent diversion and failing to monitor, report, and prevent suspicious orders have contributed significantly to the opioid crisis by enabling, and failing to prevent, the diversion of opioids.

## VII. DEFENDANTS' UNLAWFUL CONDUCT AND BREACHES OF LEGAL DUTIES CAUSED THE HARM AND SUBSTANTIAL DAMAGE ALLEGED HEREIN

875. As the Marketing Defendants' efforts to expand the market for opioids increased so have the rates of prescription and sale of their products — and the rates of opioid-related substance abuse, hospitalization, and death among the people of the United States, including Tennessee and southwest Virginia. The Distributor Defendants have continued to unlawfully ship these massive quantities of opioids.

reached a consent judgment alleging that he was purchasing hydrocodone/APAP tablets (hydrocodone and acetaminophen), from Henry Schein on as many as fourteen separate dates within a one-year period, and, subsequently dispensed 11,500 hydrocodone tablets without maintaining purchase and dispensing records as required by the CSA.

881. As shown above, the opioid epidemic has escalated with devastating effects: substantial opiate-related substance abuse, hospitalization, and death that goes hand in hand with Defendants' increased distribution of opioids.

882. Because of the well-established relationship between the use of prescription opioids and the use of non-prescription opioids, like heroin, the massive distribution of opioids by Defendants has caused the opioid epidemic to include heroin addiction, abuse, and death.

883. Defendants repeatedly and purposefully breached their duties under federal and Tennessee and Virginia law, and such breaches are direct and proximate causes of, and/or substantial factors leading to, the widespread diversion of prescription opioids for nonmedical purposes and the foreseeable, inevitable financial burdens imposed on and incurred by hospitals and other health care providers.

884. Hospitals are integral to the solution to the opioid epidemic, because they can "aid in the proper treatment of postoperative pain while also helping to combat a nationwide epidemic."[384] Indeed, "*[h]ospital* pharmacists...are in an ideal position to help address the opioid epidemic and make sure these agents are used appropriately."[385] But Defendants' wrongful conduct has jeopardized the ability of Plaintiffs and other hospital purchasers to properly limit

---

[384] Opioid Exit Plan, *supra* n. 160.

[385] Joey Sweeney, *Hospital Pharmacists Can Help Reduce Opioid Prescriptions*, PHARMACY TODAY (July 2016) (emphasis added), *available at* https://www.pharmacytoday.org/article/S1042-0991(16)30505-9/fulltext.

addicted baby. Defendants relied on Plaintiffs to provide a safety net to prevent overdose deaths and treat health consequences arising from opioid addictions and depended on hospitals themselves to mitigate the health consequences of their illegal activities.[388] In 2011, it is "estimated that [there were] greater than 420[,000 emergency room] visits related to the misuse of abuse of narcotic pain relievers" in the United States.[389] Hospitals bear an enormous burden in providing care, as insurance covers only a portion of the cost.

888. The increased financial burdens on hospitals include, but are not limited to the following:

a. Unreimbursed costs for providing healthcare and medical care, additional diagnostic, therapeutic and other treatments for patients suffering from opioid-related addiction or disease, including physical and mental disabilities, overdoses and deaths.;

b. Costs associated with patient counseling with respect to pain management, necessitated by overprescription to the general population and dissemination of false and misleading information to prospective patients and others; as hospitals and other providers question their patients' self-reporting, it necessitates further steps to be taken in all phases of treatment and counseling;

c. Unreimbursed costs of opioids purchased by hospitals themselves, which were direct targets of the Defendants' marketing campaigns;

d. Unreimbursed costs of prescription drugs used to treat addiction;

e. Costs of training additional personnel in the proper treatment of drug overdoses;

f. Costs associated with obtaining and training staff in the application of naloxone—an opioid antagonist used to block the deadly effects of opioids in the context of overdose;

---

[388] *Id.* at ¶ 19.

[389] Cindy Williams, Vice President and Chief Pharmacy Officer, Riverside Health System, *Establishment of an Opioid Stewardship Program*, *available at* http://www.vshp.org/uploads/6/3/6/0/6360223/williams-opioid_1_per_page.pdf (hereinafter described as the "Va. Hospital Pharmacists Paper").

one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Purdue Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

894. The Purdue Defendants entered into a conspiracy, common enterprise, and/or common course of conduct. During all times relevant hereto, the Purdue Defendants, collectively and individually, initiated a course of conduct that was designed to and did misrepresent the properties of opioids, and facilitate the distribution of opioids. The Purdue Defendants did so in order to maximize the profits Purdue would receive from opioid sales. In furtherance of this plan, conspiracy, and course of conduct, the Purdue Defendants collectively and individually, took the actions set forth herein.

895. Each of the Purdue Defendants aided and abetted and rendered substantial assistance in the wrongs committed by their respective co-conspirators complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Purdue Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**B. <u>Conspiracy Among the Marketing Defendants</u>**

896. The Marketing Defendants agreed among themselves to set up, develop, and fund an unbranded promotion and marketing network to promote the use of opioids for the management of pain in order to mislead physicians, patients, health care providers such as hospitals, and health care payors through misrepresentations and omissions regarding the appropriate uses, risks, and safety of opioids in order to increase sales, revenue, and profit from their opioid products.

897. This interconnected and interrelated network relied on the Marketing Defendants' collective use of unbranded marketing materials, such as KOLs, scientific literature, CMEs, patient

902. The Marketing Defendants' unbranded promotion and marketing network was a wildly successful marketing tool that achieved marketing goals that would have been impossible to have been met by a single or even a handful of the network's distinct corporate members.

903. For example, the network members pooled their vast marketing funds and dedicated them to expansive and normally cost-prohibitive marketing ventures, such as the creation of Front Groups. These collaborative networking tactics allowed each Marketing Defendant to diversify its marketing efforts, all the while sharing any risk and exposure, financial and/or legal, with other Marketing Defendants

904. The most unnerving tactic utilized by the Marketing Defendants' network was their unabashed mimicry of the scientific method of citing "references" in their materials. In the scientific community, cited materials and references are rigorously vetted by objective unbiased and disinterested experts in the field, and an unfounded theory or proposition would, or should, never gain traction.

905. Marketing Defendants put their own twist on the scientific method: they worked together to manufacture wide support for their unfounded theories and propositions involving opioids. Due to their sheer numbers and resources, the Marketing Defendants were able to create a false consensus through their materials and references.

906. An illustrative example of the Marketing Defendants' utilization of this tactic is the wide promulgation of the Porter & Jick Letter, which declared the incidence of addiction "rare" for patients treated with opioids. The authors had analyzed a database of hospitalized patients who were given opioids in a controlled setting to ease suffering from acute pain. These patients were not given long-term opioid prescriptions or provided opioids to administer to themselves at home, nor was it known how frequently or infrequently and in what doses the patients were given their

Defendants and Supply Chain Defendants did so to increase sales, revenue, and profit from their opioid products.

910. The interaction and length of the relationships between and among the Marketing Defendants and Supply Chain Defendants reflects a deep level of interaction and cooperation between the Marketing Defendants and Supply Chain Defendants in a tightly knit industry. The Marketing and Supply Chain Defendants were not two separate groups operating in isolation or two groups forced to work together in a closed system. The Marketing Defendants and Supply Chain Defendants operated together as a united entity, working together on multiple fronts, to engage in the unlawful sale of prescription opioids.

911. The Marketing Defendants and Supply Chain Defendants collaborated to expand the opioid market in an interconnected and interrelated network in the following ways, as set forth more fully below including, for example, membership in the Healthcare Distribution Alliance.

912. The Marketing Defendants and Supply Chain Defendants utilized their membership in the HDA and other forms of collaboration to form agreements about their approach to their duties under the TDCA and other laws to report suspicious orders. The Marketing Defendants and Supply Chain Defendants overwhelmingly agreed on the same approach – to fail to identify, report, or halt suspicious opioid orders, and fail to prevent diversion. The Marketing Defendants and Supply Chain Defendants' agreement to restrict reporting provided an added layer of insulation from DEA scrutiny for the entire industry as the Marketing Defendants and Supply Chain Defendants were thus collectively responsible for each other's compliance with their reporting obligations. The Marketing Defendants and Supply Chain Defendants were aware, both individually and collectively, of the suspicious orders that flowed directly from the Marketing Defendants and Supply Chain Defendants' facilities.

high levels of quotas for their products and to ensure that suspicious orders would not be reported to regulators.

918. Defendants' conduct was so willful and deliberate that it continued in the face of numerous enforcement actions, fines, and other warnings from state and local governments and regulatory agencies. Defendants paid their fines, made promises to do better, and continued on with their marketing and supply schemes. This ongoing course of conduct knowingly, deliberately, and repeatedly threatened and accomplished harm and risk of harm to public health and safety, and large-scale economic loss to communities, governments, families, communities, hospitals and health care providers across the country.

919. As all of the governmental actions against the Marketing Defendants and against all the Defendants show, Defendants knew that their actions were unlawful, and yet deliberately refused to change their practices because compliance with their legal obligations would have decreased their sales and their profits.

### A. The Marketing Defendants Persisted in Their Fraudulent Scheme Despite Repeated Admonitions, Warnings, and Even Prosecutions

920. So determined were the Marketing Defendants to sell more opioids that they simply ignored multiple admonitions, warnings, and prosecutions, as described more fully below.

#### 1. FDA Warnings to Janssen Failed to Deter Janssen's Misleading Promotion of Duragesic

921. On February 15, 2000, the FDA sent Janssen a letter concerning the dissemination of "homemade" promotional pieces that promoted the Janssen drug Duragesic in violation of the Federal Food, Drug, and Cosmetic Act. In a subsequent letter, dated March 30, 2000, the FDA explained that the "homemade" promotional pieces were "false or misleading because they contain misrepresentations of safety information, broaden Duragesic's indication, contain unsubstantiated

925. Notwithstanding letters, an FDA safety alert, DOJ and state investigations, and the massive settlement, Cephalon has continued its deceptive marketing strategy.

### 3. FDA Warnings Did Not Prevent Cephalon from Continuing False and Off-Label Marketing of Fentora

926. On September 27, 2007, the FDA issued a public health advisory to address numerous reports that patients who did not have cancer or were not opioid tolerant had been prescribed Fentora, and death or life-threatening side effects had resulted. The FDA warned: "Fentora should not be used to treat any type of short-term pain." Indeed, the FDA specifically denied Cephalon's application, in 2008, to broaden the indication of Fentora to include treatment of non-cancer breakthrough pain and use in patients who were not already opioid-tolerant.

927. Flagrantly disregarding the FDA's refusal to broaden the indication for Fentora, Cephalon nonetheless marketed Fentora beyond its approved indications. On March 26, 2009, the FDA warned Cephalon against its misleading advertising of Fentora ("Warning Letter"). The Warning Letter described a Fentora Internet advertisement as misleading because it purported to broaden "the indication for Fentora by implying that any patient with cancer who requires treatment for breakthrough pain is a candidate for Fentora . . . when this is not the case." It further criticized Cephalon's other direct Fentora advertisements because they did not disclose the risks associated with the drug.

928. Despite this warning, Cephalon continued to use the same sales tactics to push Fentora as it did with Actiq. For example, on January 13, 2012, Cephalon published an insert in Pharmacy Times titled "An Integrated Risk Evaluation and Mitigation Strategy (REMS) for FENTORA (Fentanyl Buccal Tablet) and ACTIQ (Oral Transmucosal Fentanyl Citrate)." Despite the repeated warnings of the dangers associated with the use of the drugs beyond their limited

producers, along with their associated nonprofits, spent nearly $900 million dollars on lobbying and political contributions - eight times what the gun lobby spent during that period.

931. Since at least 2002, Purdue has maintained a database of health care providers suspected of inappropriately prescribing OxyContin or other opioids. Physicians could be added to this database based on observed indicators of illicit prescribing such as excessive numbers of patients, cash transactions, patient overdoses, and unusual prescribing of the highest-strength pills (80 mg OxyContin pills or "80s," as they were known on the street, were a prime target for diversion). Purdue claims that health care providers added to the database no longer were detailed, and that sales representatives received no compensation tied to these providers' prescriptions.

932. Yet, Purdue failed to cut off these providers' opioid supply at the pharmacy level—meaning Purdue continued to generate sales revenue from their prescriptions—and failed to report these providers to state medical boards or law enforcement. Purdue's former senior compliance officer acknowledged in an interview with the Los Angeles Times that in five years of investigating suspicious pharmacies, the company never stopped the supply of its opioids to a pharmacy, even where Purdue employees personally witnessed the diversion of its drugs.

933. The same was true of prescribers. For example, as discussed above, despite Purdue's knowledge of illicit prescribing from one Los Angeles clinic which its district manager called an "organized drug ring" in 2009, Purdue did not report its suspicions until long after law enforcement shut it down and not until the ring prescribed more than 1.1 million OxyContin tablets.

934. Indeed, the New York Attorney General found that Purdue placed 103 New York health care providers on its "No-Call" List between January 1, 2008 and March 7, 2015, and that Purdue's sales representatives had detailed approximately two-thirds of these providers, some

> JOE RANNAZZISI: The three largest distributors are Cardinal Health, McKesson, and AmerisourceBergen. They control probably 85 or 90 percent of the drugs going downstream.
>
> [INTERVIEWER]: You know the implication of what you're saying, that these big companies knew that they were pumping drugs into American communities that were killing people.
>
> JOE RANNAZZISI: That's not an implication, that's a fact. That's exactly what they did.

939. Another DEA veteran similarly stated that these companies failed to make even a "good faith effort" to "do the right thing." He explained that "I can tell you with 100 percent accuracy that we were in there on multiple occasions trying to get them to change their behavior. And they just flat out ignored us."[391]

940. Government actions against the Distributor Defendants with respect to their obligations to control the supply chain and prevent diversion include:

a. On April 24, 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against the AmerisourceBergen Orlando, Florida distribution center ("Orlando Facility") alleging failure to maintain effective controls against diversion of controlled substances. On June 22, 2007, AmerisourceBergen entered into a settlement that resulted in the suspension of its DEA registration;

b. On November 28, 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against the Cardinal Auburn, Washington Distribution Center ("Auburn Facility") for failure to maintain effective controls against diversion of hydrocodone;

c. On December 5, 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against the Cardinal Lakeland, Florida Distribution Center ("Lakeland Facility") for failure to maintain effective controls against diversion of hydrocodone;

d. On December 7, 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against the Cardinal Swedesboro, New Jersey Distribution Center ("Swedesboro Facility") for failure to maintain effective controls against diversion of hydrocodone;

---

[391] *Id.*

## XI. TOLLING AND FRAUDULENT CONCEALMENT

945. Defendants, individually and acting through their employees and agents, knowingly and intentionally concealed material facts and knowledge from Plaintiffs and others to induce them to purchase and administer opioids as set forth in detail above.

946. The Defendants invented the term "pseudoaddiction" and promoted it to the medical community, including Plaintiffs. Defendants provided the medical community, including Plaintiffs, with false and misleading information about ineffectual medical strategies to avoid or control opioid addiction. Manufacturer Defendants recommended to the medical community that dosages be increased, without disclosing the risks. Defendants spent millions of dollars over a period of years on a misinformation campaign aimed at highlighting opioids' alleged benefits, disguising the risks, and promoting sales.

947. In overstating the benefits of and evidence for the use of opioids for chronic pain and understating their very serious risks, including the risk of addition and death; in falsely promoting abuse-deterrent formulations as reducing abuse; in falsely claiming that OxyContin provides 12 hours of relief; in falsely portraying their efforts or commitment to rein in the supply and diversion of opioids; and doing all of this while knowing full well that their statements were misrepresentations of facts material, Defendants have engaged in intentional, fraudulent misrepresentations and concealment of the material fact, as detailed herein.

948. Defendants intended that Plaintiffs would rely on their misrepresentations, omissions, and concealment, knew that Plaintiffs would rely on their misrepresentations, and that such reliance would cause harm to Plaintiffs. The medical community, including Plaintiffs, were duped by the Defendants' campaign to misrepresent and conceal the truth about the opioid drugs that they were aggressively pushing in Tennessee and southwest Virginia.

954. Plaintiffs suffered actual pecuniary damages proximately caused by Defendants concealment of material fact, which include but are not limited to, expending funds on emergency services, emergency response, additional training, additional security, and other services Plaintiffs would not have incurred.

955. Plaintiffs have incurred expenditures for special programs over and above their ordinary hospital services.

956. Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergency of the sort a hospital would reasonably expect to occur and is not part of the normal and expected costs of a hospital's existence. Plaintiffs allege wrongful acts which were neither discrete nor of the sort a hospital can reasonably expect.

## XII. WAIVER OF CERTAIN CLAIMS FOR RELIEF

957. Plaintiffs expressly disclaim and waive any and all right to recovery, whether financial, injunctive, or equitable, relating to or arising out of the distribution by any person of any product, or the provision of any service, pursuant to McKesson Corporation's Pharmaceutical Prime Vendor Contract with the United States Department of Veteran Affairs ("PVV Contract"). Plaintiffs further commit that they will not, in any forum, rely on or raise the PPV Contract in connection with their allegations and/or prosecution in this matter.

958. Plaintiffs agree that should Defendants present evidence sufficient for the trier of fact to determine that Plaintiffs' injuries were caused, in whole or in part, by the distribution of products or provision of services through the PPV, Defendants are entitled to a reduction of their liability proportionately by the extent to which the trier of fact determines that any injury to Plaintiffs was caused by goods or products distributed and/or services provided through the PPV.

963. As provided under T.C.A. § 47-18-109(3), "[i]f the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper, except that the court may not award exemplary or punitive damages for the same unfair or deceptive practice."

964. Each of the Plaintiffs is a "person" for purposes of this statute. T.C.A. § 47-18-103(13).

965. As alleged herein, and upon information and belief, Defendants committed unfair, false, misleading, and/or deceptive acts with regard to the sale and distribution of opioids within Tennessee.

966. Defendants engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of prescription drugs in violation of the TCPA.

967. During the relevant period and as detailed further herein, the Marketing Defendants have each engaged in unfair and deceptive acts or practices in commerce in violation of the TCPA statute by actively promoting and marketing the use of opioids for indications not federally approved, circulating false and misleading information concerning opioids' safety and efficacy, and downplaying or omitting the risk of addiction arising from their use.

968. Each of the Defendants have engaged in unfair and/or deceptive trade practices by omitting the material fact of its failure to design and operate a system to disclose suspicious orders of controlled substances, as well as by failing to actually disclose such suspicious orders, as required of "registrants" by the federal CSA, 21 C.F.R. § 1301.74(b). The CSA defines "registrant"

977. By reason of their reliance on Defendants' misrepresentations and omissions of material fact, Plaintiffs, physicians, patients, and/or others suffered actual pecuniary damage.

978. Defendants' conduct was willful, wanton, and malicious and was directed at the public generally.

979. Plaintiffs have suffered an ascertainable loss of money or property and/or other things of value as a result of the use or employment by Defendants of an unfair or deceptive act or practice described in T.C.A. § 47-18-104(b).

980. Plaintiffs are entitled to recover its damages caused by Defendants' violation of the TCPA in an amount to be determined at trial, including treble damages if the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of the TCPA, as well as attorneys' fees.

981. Plaintiffs also seek injunctive relief pursuant to T.C.A. §47-18-109.

## SECOND CLAIM FOR RELIEF

### Negligence
### (Against All Defendants)

982. Plaintiffs repeat, reallege, and incorporate by reference all other paragraphs of this Complaint, as if fully set forth herein.

983. This claim is brought under the common law of negligence.

A. **Defendants Owed a Duty of Care**

984. Each Defendant had a duty to exercise reasonable care in the manufacturing, marketing, selling, and distributing of highly dangerous opioid drugs. Defendants knew or should have known that opioids were unreasonably dangerous and were likely to cause addiction. Each Defendant owed its aforesaid duties to Plaintiffs because the injuries alleged herein were foreseeable by the Defendants.

988. Each Defendant's actions were in violation of Chapter 11 of TDCA, as set out above, including but not limited to T.C.A. § 53-11-401, which forbids distribution of controlled substances in an unauthorized manner; T.C.A. § 53-11-402, which forbids which prohibits fraudulent narcotic drug and drug control violations.

989. Likewise, the Virginia Drug Control Act (the "VDCA") imposes certain specific responsibilities on Defendants, who manufacture and sell pharmaceutical drugs in Virginia. Va. Code Ann. § 54.1-3457. Among those responsibilities is the requirement that drug manufacturers refrain from the "dissemination of any false advertisement" in the promotion of their drugs. *Id.* "Advertisement" is defined as "all representations disseminated in any manner or by any means, other than by labeling, for the purpose of inducing, or which are likely to induce, directly or indirectly, the purchase of drugs or devices." Va. Code Ann. § 54.1- 3401.

990. Defendants also failed to comply with the requirements of and Va. Code. Ann. § 54.1-3404(D), which requires Defendants to keep accurate sales records including "the date of selling, administering, or dispensing, the name and address of the person to whom or for whose use, or the owner and species of animal for which the drugs were sold, administered or dispensed, and the kind and quantity of drugs." As described more fully above, Defendants continually violated the requirements of the VDCA.

991. Defendants' failure to comply with Tennessee law, Virginia law, and the CSA constitutes negligence *per se.*

992. The TDCA, the VDCA and the CSA require that the Defendants know their customers, which includes an awareness of the customer base, knowledge of the average prescriptions filled each day, the percentage of controlled substances compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions

within the class of persons the TDCA, the VDCA and the CSA was intended to protect. The harm that has occurred is the type of harm that the TDCA, the VDCA and the CSA was intended to guard against.

999. Defendants' violations constitute negligence *per se*.

**2. Defendants Breached Their Duty of Reasonable Care**

1000. Alternatively, to the extent that Defendants' statutory violations do not obviate the need to show breaches of the duty of care, each Defendant breached its aforesaid duties of care.

**a. Negligent Marketing**

1001. Defendants marketed opioids in a negligent and improper manner by:

a. Overstating the benefits of chronic opioid therapy, promising improvement in patients' function and quality of life, and failing to disclose the lack of evidence supporting long-term use;

b. Trivializing or obscuring opioids' serious risks and adverse outcomes, including the risk of addiction, overdose and death;

c. Overstating opioids' superiority compared with other treatments, such as other non-opioid analgesics, physical therapy, and other alternatives;

d. Mischaracterizing the difficulty of withdrawal from opioids and the prevalence of withdrawal symptoms;

e. Marketing opioids for indications and benefits that were outside of the opioids' labels and not supported by substantial evidence.

1002. It was Defendants' marketing – and not any medical breakthrough – that rationalized prescribing opioids for chronic pain and opened the floodgates of opioid use and abuse. The result has been catastrophic.

1003. Defendants disseminated many of their false, misleading, imbalanced, and unsupported statements indirectly, through KOLs and Front Groups, and in unbranded marketing materials. These KOLs and Front Groups were important elements of Defendants' marketing plans, which specifically contemplated their use, because they seemed independent and therefore

### c. The Marketing and Supply Chain Defendants' Breaches of Care Were Intentional, Willful, Wanton and/or Reckless

1006. Marketing and Supply Chain Defendants' breaches of care were intentional, willful, wanton and/or reckless. Marketing and Supply Chain Defendants purposely overstated the benefits of chronic opioid therapy and opioids' superiority compared with other treatments, such as other non-opioid analgesics, physical therapy, and other alternatives; actively and continuously promoted the use of opioids for improvement in patients' function and quality of life but failed to disclose the lack of evidence supporting the long-term use, as well as mischaracterized the difficulty of withdrawal from opioids and the prevalence of withdrawal symptoms; intentionally trivialized or obscured opioids' serious risks and adverse outcomes, including the risk of addiction, overdose, and death; continuously marketed opioids for indications and benefits that were outside of the opioids' labels and not supported by substantial evidence.

1007. Marketing and Supply Chain Defendants have willfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to retailers and dispensers who are serving a customer base substantially comprised of individuals who are abusing and/or diverting prescription medications, many of whom are addicted and all of whom can reasonably be expected to become addicted. Marketing and Supply Chain Defendants conducted themselves with reckless indifference to the consequences of their acts and omissions, in that they were conscious of their conduct and were aware, from their knowledge of existing circumstances and conditions, that their conduct would inevitably or probably result in injury to others, specifically hospitals such as Plaintiffs, which would be subjected to providing unreimbursed healthcare treatment to patients with opioid conditions, as well as other costs associated with diagnosis, treatment of opioid-related conditions and operation of its business in the opioid epidemic.

as well as the adverse social, economic, and human health outcomes associated with widespread illegal opioid use.

1015. Defendants, individually and acting through their employees and agents, through fraudulent and deceptive marketing and other fraudulent schemes as described herein, created and maintained the opioid epidemic in Plaintiffs' communities, which is harmful and disruptive to and substantially and unreasonable annoys, injuriously affects, endangers, and interferes with the safety, health, morals, comfort, and general welfare of the public.

1016. Defendants' nuisance-causing activities include selling or facilitating the sale of prescription opioids to the patients of Plaintiffs, as well as to unintended users, including children, people at risk of overdose or suicide, and criminals.

1017. Defendants' nuisance-causing activities also include failing to implement effective controls and procedures in their supply chains to guard against theft, diversion and misuse of controlled substances, and their failure to adequately design and operate a system to detect, halt and report suspicious orders of controlled substances.

1018. Defendants' activities unreasonably interfere with Plaintiffs' economic rights and the reasonable use of Plaintiffs' property. Plaintiffs' resources are being unreasonably consumed in efforts to address the opioid epidemic, thereby eliminating available resources which could be used to benefit the community within the geographic area served by Plaintiffs as well as other health care areas.

1019. The Defendants' interference with these rights of Plaintiffs is unreasonable because it:

a. Has harmed and will continue to harm the public health services of and public peace of Plaintiffs;

b. Has harmed and will continue to harm the communities and neighborhoods

Defendants' nuisance-causing activity, including, but not limited to, costs of hospital services and healthcare. In short, the Defendants created a mess, leaving to the Plaintiffs and other hospitals the costs of cleaning it up. This is a classic nuisance.

1026. As a result of Defendants' actions, Plaintiffs have suffered a special injury, different from that suffered by the public at large by individual users and by governmental entities, namely that Plaintiffs have provided uncompensated care for patients suffering from opioid-related conditions and incurred elevated operational costs.

1027. The public nuisance – i.e., the opioid epidemic – created, perpetuated, and maintained by Defendants can be abated and further recurrence of such harm and inconvenience can be abated.

1028. Defendants should be required to pay the expenses Plaintiffs have incurred or will incur in the future to fully abate the nuisance.

1029. The Purdue Individual Defendants directed and participated in the tortious conduct of Purdue and are individually liable.

1030. Therefore, Plaintiffs demand judgment in their favor against the Defendants for injunctive relief, abatement of the public nuisance, and for damages in an amount to be determined by a jury, together with all cost of this action, including prejudgment interest, post-judgment interest, costs and expenses, attorney fees, and such other relief as this Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Against All Defendants)

1031. Plaintiffs repeat, reallege, and incorporate by reference all other paragraphs of this Complaint, as if fully set forth herein.

1039. As described above, the benefit was received and retained under such circumstances that it would be inequitable and unconscionable to permit Defendants to avoid payment therefor.

1040. Defendants have therefore been unjustly enriched at the expense of Plaintiffs.

1041. By reason of the foregoing, Defendants must disgorge their unjustly acquired profits and other monetary benefits resulting from its unlawful conduct and provide restitution to the Plaintiffs.

## FIFTH CLAIM FOR RELIEF

### Fraud and Deceit
### (Against All Defendants)

1042. Plaintiffs repeat, reallege, and incorporate by reference all other paragraphs of this Complaint, as if fully set forth herein.

1043. This claim is brought under the common law of fraud and deceit.

1044. As alleged herein, Defendants violated their duty not to actively deceive by intentionally and unlawfully making knowingly false statements, and by intentionally and unlawfully omitting and/or concealing information.

1045. Defendants made misrepresentations and failed to disclose material facts to physicians and consumers throughout Tennessee and the United States, to induce the physicians to prescribe and administer, and consumers to purchase and consume, opioids as set forth herein.

1046. Specifically, the Marketing Defendants' knowing deceptions during the relevant period, which were intended to induce reliance, include but are not limited to:

a. Marketing Defendants' misrepresentations overstating the benefits of, and evidence for, the use of opioids in chronic pain;

b. Marketing Defendants' misrepresentations that the risks of long-term opioid use, especially the risk of addiction, were overblown;

q. Cephalon's unsubstantiated claims that Actiq and Fentora were appropriate for treatment of non-cancer pain;

r. Marketing Defendants' use of front groups to misrepresent that the deceptive statements from the sources described in this Complaint came from objective, independent sources;

s. Marketing Defendants' creation of a body of deceptive, misleading and unsupported medical and popular literature, advertisements, training materials, and speaker presentations about opioids that (1i) understated the risks and overstated the benefits of long-term use; (ii) appeared to be the result of independent, objective research; and (iii) was thus more likely to be relied upon by physicians, patients, and payors; and,

t. Such other misrepresentations and deceptions outlined above.

1047. By engaging in the acts and practices alleged herein, Marketing Defendants, in the relevant time period and with the intent that others rely on their omissions or suppression of information, omitted material facts that Marketing Defendants had a duty to disclose by virtue of these Defendants' other representations, including but not limited to:

a. Opioids are highly addictive and may result in overdose or death;

b. No credible scientific evidence supports the use of screening tools as a strategy for reducing abuse or diversion;

c. High dose opioids subject the user to greater risks of addiction, other injury, and/or death;

d. Opioids present the risks of hyperalgesia, hormonal dysfunction, decline in immune function, mental clouding, confusion, dizziness, increased falls and fractures in the elderly, NAS, and potentially fatal interactions with alcohol or benzodiazepines; these omissions were made while Defendants exaggerated the risks of competing products such as NSAIDs;

e. Claims regarding the benefits of chronic opioid therapy lacked scientific support or were contrary to the scientific evidence;

f. Purdue's 12-hour OxyContin fails to last a full twelve hours in many patients;

reliance would be induced by these Defendants' misrepresentations and omissions; and, Defendants intended and knew that such reliance would cause Plaintiffs to suffer loss.

1052. The Marketing Defendants were not alone in this, the Supply Chain Defendants were also knowingly deceptive during the relevant period, and their deception was intended to induce reliance. These deceptions include but are not limited to:

a. Acknowledgment of the Distributor Defendants by and through their front group, the HDMA, that distributors are at the center of a sophisticated supply chain and therefore, are uniquely situated to perform due diligence in order to help support the security of the controlled substances they deliver to their customers;

b. Acknowledgment of the Distributor Defendants that because of their unique position within the "closed" system, they were to act as the first line of defense in the movement of legal pharmaceutical controlled substances from legitimate channels into the illicit market;

c. Cardinal Health claims to "lead [its] industry in anti-diversion strategies to help prevent opioids from being diverted for misuse or abuse;"

d. AmerisourceBergen took a same position as its counterpart within the industry and stated that it was "work[ing] diligently to combat diversion and [is] working closely with regulatory agencies and other partners in pharmaceutical and healthcare to help find solutions that will support appropriate access while limiting misuse of controlled substances;"

e. More holistically, Distributor Defendants misrepresented that not only do its members (Distributor Defendants) have statutory and regulatory responsibilities to guard against diversion of controlled prescription drugs, but undertake such efforts as responsible members of society; and

f. Such other omissions or concealments as described above in this Complaint.

1053. By engaging in the acts and practices alleged herein, Supply Chain Defendants, in the relevant time period and with the intent that others rely on their omissions or suppression of information, omitted material facts that Supply Chain Defendants had a duty to disclose by virtue of these Defendants' other representations, including but not limited to:

a. There being no legitimate medical purpose for the copious amounts of opioids shipped into and around Plaintiffs' communities;

1057. As a result of these representations and/or omissions, Plaintiffs proceeded under the misapprehension that the opioid crisis was simply a result of conduct by persons other than Defendants. As a consequence, these Defendants Plaintiffs prevented from a timelier and effective response to the opioid epidemic.

1058. Defendants' false representations and omissions were material and were made and omitted intentionally and recklessly.

1059. Defendants' misconduct alleged in this case is ongoing and persistent.

1060. Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergency of the sort Plaintiffs would reasonably expect to occur and is not part of the normal and expected costs of a hospital's healthcare services. Plaintiffs allege wrongful acts which are neither discrete nor of the sort a hospital can reasonably expect.

1061. Plaintiffs have incurred expenditures for special programs over and above ordinary hospital healthcare services.

1062. These Defendants' conduct was accompanied by wanton and willful disregard of person who foreseeably might be harmed by their acts and omissions.

1063. Defendants acted with actual malice because Defendants acted with a conscious disregard for the rights and safety of other persons, and said actions had a great probability of causing substantial harm.

1064. The Purdue Individual Defendants directed and participated in the tortious conduct of Purdue and are individually liable.

1065. Plaintiffs have suffered monetary damages as aforesaid. As such Plaintiffs seek all legal and equitable relief as allowed by law, including *inter alia* injunctive relief, restitution,

deceptive practices to promote and distribute opioids for the treatment of chronic pain by making and disseminating false, unsubstantiated, and misleading statements and misrepresentations to prescribers and consumers. Defendants enlisted various KOLs and Front Groups to make and disseminate these statements in furtherance of their common strategy to increase the sale and distribution of opioids, and Defendants—along with the KOLs and Front Groups with whom each of them conspired—knew that the statements they made and disseminated served this purpose.

1072. By engaging in the conduct described in this Complaint, Defendant Cephalon agreed with Front Groups FSMB and APF that they would deceptively promote the risks, benefits and superiority of opioid therapy. As part of its agreements with FSMB and APF, Cephalon provided support for FSMB's and APF's deceptive statements promoting opioids and FSMB and APF used that support to more broadly disseminate deceptive messaging promoting opioids, which would benefit Cephalon's drugs. *Responsible Opioid Prescribing* (Cephalon and FSMB) and *Treatment Options: A Guide for People Living with Pain* (Cephalon and APF) are publications that contained a number of deceptive statements about opioids as outlined *supra*. They are products of these conspiracies, and the collaboration between Cephalon and each of these entities in creating and disseminating these publications is further evidence of each conspiracy's existence.

1073. By engaging in the conduct described in this Complaint, Defendant Endo agreed with Front Groups APF, NICP, AGS and FSMB that they would deceptively promote the risks, benefits, and superiority of opioid therapy. As part of its agreements with APF, NIPC, AGS and FSMB, Endo provided support for APF, NICP, AGS and FSMB's deceptive statements promoting opioids and APF, NICP, AGS and FSMB used that support to more broadly disseminate deceptive messaging promoting opioids, which would benefit Endo's drugs. *Persistent Pain in the Older Adult* (Endo, APF, and NIPC), *Persistent Pain in the Older Patient* (Endo, APF, and NIPC),

FSMB, and AGS used that support to more broadly disseminate deceptive messaging promoting opioids, which would benefit Purdue's drugs. The *Partners Against Pain* website (Purdue and APF), *A Policymaker's Guide to Understanding Pain & Its Management* (Purdue and APF), *Treatment Options: A Guide for People Living with Pain* (Purdue and APF), *Exit Wounds* (Purdue and APF),[392] *Responsible Opioid Prescribing* (Purdue and FSMB), and a CME promoting the *Pharmacological Management of Persistent Pain in Older Persons* (Purdue and AGS) are publications, CMEs, and websites that contained a number of deceptive statements about opioids as outlined *supra*. They are products of these conspiracies, and the collaboration between Purdue and each of these entities in creating and disseminating these publications, CME's and websites is further evidence of each conspiracy's existence.

1076. Each of the participants to the conspiracies outlined above was aware of the misleading nature of the statements they planned to issue and of the role they played in each scheme to deceptively promote opioids as appropriate for the treatment of chronic pain. These Defendants and third parties nevertheless agreed to misrepresent the risks, benefits, and superiority of using opioids to Plaintiffs in return for increased pharmaceutical sales, financial contributions, reputational enhancements, and other benefits.

1077. Each of the participants to the conspiracies outlined above was aware of the nuisance resulting from their conduct, and agreed to continue the practices described above that resulted in the maintenance of that nuisance.

1078. Distributor Defendants utilized their membership in the HDA and other forms of collaboration to form agreements about their approach to their duties under the CSA to report

---

[392] Purdue's collaboration with APF through APF's "Corporate Roundtable" and Purdue and APF's active collaboration in running PCF constitute additional evidence of the conspiracy between Purdue and APF to deceptively promote opioids.

1084. Defendants acted with a common understanding or design to commit unlawful acts, as alleged herein, acted purposely, without a reasonable or lawful excuse, which directly caused the injuries alleged herein.

1085. Defendants acted with malice, purposely, intentionally, unlawfully, and without a reasonable or lawful excuse.

1086. Defendants acted with actual malice because Defendants acted with a conscious disregard for the rights and safety of other persons, and said actions had a great probability of causing substantial harm.

1087. As outlined above, Defendants played an active role in determining the substance of the misleading messages issued by KOLs and Front Groups, including by providing content themselves, editing and approving content developed by their co-conspirators, and providing slide decks for speaking engagements. Defendants further ensured that these misstatements were widely disseminated, by both distributing the misstatements themselves and providing their co-conspirators with funding and other assistance with distribution. The result was and unrelenting stream of misleading information about compliance with state and federal legislation as related to opioid distribution, and the risks, benefits, and superiority of using opioids to treat chronic pain from sources Defendants knew were trusted by prescribers and consumers. Defendants exercised direct editorial control over most of these statements. However, even if Defendants did not directly disseminate or control the content of these misleading statements, they are liable for conspiring with the third parties who did.

1088. Defendants conduct in furtherance of the conspiracy described herein was not mere parallel conduct because each Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities, which they had

1096. Plaintiffs therefore request this Court to enter an order awarding judgment in their favor against Defendants, compelling Defendants to pay the direct and consequential damages, and awarding Plaintiffs such other, further, and different relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that the Court:

A. Enter judgment against Defendants, jointly and severely, and in favor of Plaintiffs;

B. Award compensatory damages in an amount sufficient to fairly and completely compensate Plaintiffs for all damages; treble damages; punitive damages; pre-judgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate; and such equitable relief against Defendants as the Court should find appropriate, including disgorgement of illicit proceeds and other orders;

C. Award Plaintiffs their cost of suit, including reasonable attorneys' fees as provided by law;

D. Enter judgment against Defendants, jointly and severely, and in favor of Plaintiffs; and

E. Award such further and additional relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202)789-3960

Steve Martino
**TAYLOR MARTINO, P.C.**
51 St. Joseph St.
Mobile, AL 36602
Tel: (251) 433-3131

Gerald M. Abdalla, Jr.
**ABDALLA LAW, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Tel: (601) 487-4590

*Attorneys for All Plaintiffs*

**COST BOND**

I hereby acknowledge myself surety for all costs and taxes incurred in this case in accordance with T.C.A. §20-12-120.

This the 11th day of July, 2019.

Gary E. Brewer, Esq.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV225 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Henry Schein, Inc.**
**c/o Corporation Service Company**
**2908 Poston Ave.**
**Nashville, TN 37203-1312**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Dans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Purdue Pharma, L.P.**
**c/o The Prentice-Hall Corporation System, Inc.**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

____________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

____________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants. **ALIAS SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Purdue Pharma, Inc.**
**c/o United Corporate Services, Inc.**
**10 Bank Street, Suite 560**
**White Plains, New York, 10606**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 26th day of August 2019, 2019, at 3:30 o'clock P.M.

C Shipp... 
Clerk

[signature]
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ________________________

________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **The Purdue Frederick Company**
**c/o Corporation Service Company**
**80 State Street**
**Albany, New York 12207-2543**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ___________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Richard Sackler**
**5310 North Ocean Drive, Apt. 801**
**Riviera Beach, FL 33404**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB

Jury Demanded

v.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Beverly Sackler**
**60 Field Point Circle**
**Greenwich, CT 06830**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: David Sackler**
**250 East 53rd Street, Apt. 3001**
**New York, NY 10022**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheard
Clerk

P Dans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________________
________________________________________________
________________________________________________

failed to serve this summons within 30 days after its issuance because ______________________
________________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Ilene Sackler Lefcourt**
**146 Central Park West, Apt. 12D**
**New York, NY 10023**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock AM.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

____________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

____________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Jonathan Sackler**
**75 Field Point Circle**
**Greenwich, CT 06830**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of __________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Mortimer D.A. Sackler**
**15 East 62nd Street**
**New York, NY 10065**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Kathe Sackler**
**76 Clapboard Hill Road**
**Westport, CT 06880**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **John Stewart**
**2847 Harbor Blvd**
**Ventura, CA 93001-4103**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ___________________________

failed to serve this summons within 30 days after its issuance because ___________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Theresa Sackler**
**980 5th Avenue**
**New York, NY 10075**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

D Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Craig Landau**
**1 Stamford Forum**
**Stamford, CT 06901-3516**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ____________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

# State of Tennessee
# Circuit Court of Greene County
# at Greeneville

TAKOMA REGIONAL HOSPITAL, INC.

Plaintiff,

V.

NO. CC-19-CV-275 BB

Jury Demanded

PURDUE PHARMA, L.P., et al

Defendants.

TO THE ABOVE NAMED DEFENDANT:

**TO: Mark Timney**
**195 Shore Road**
**Old Greenwich, CT 06870**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**312 Rosa L. Parks Avenue North**
**6th Floor, William Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046 a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 9th day of August, 2019, at 2:30 o'clock p .M.

Chris Shepard
Clerk

Jamie Tolley
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the _____ day of _______________, 2019, ______________________________
Deputy Sheriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiff's attorney.

(2). All original exhibits filed with the anser shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Amneal Pharmaceuticals, LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of __________, 2019. ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________

______________________________________

______________________________________

failed to serve this summons within 30 days after its issuance because ____________________

______________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Amneal Pharmaceuticals, Inc.**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 B3
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Russell Gasdia**
**40 Five Gate Lane**
**North Falmouth, MA 02556-2319**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sherrod
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ___________________________

failed to serve this summons within 30 days after its issuance because ___________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Andrew T. Stokes**
**229 Shadowood Dr.**
**Johnson City, TN 37604-1128**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Teva Pharmaceutical Industries, LTD.**
**5 Basel Street**
**P.O. Box 3190**
**Petach Tikva 4951033 Israel**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheard
Clerk

P. Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Teva Pharmaceuticals USA, Inc.**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Clerk Chris Shepard

Deputy Clerk P Davis

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________

Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

v.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Johnson & Johnson**
**One Johnson & Johnson Plaza**
**New Brunswick, New Jersey 08933**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ____________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Cephalon, Inc.**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV395 BB

Jury Demanded

v.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Janssen Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BD
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Abbott Laboratories**
**c/o C T Corporation System**
**208 So. LaSalle St., Suite 814**
**Chicago, IL 60604**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

____________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

____________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Janssen Pharmaceutica, Inc.**
**c/o Johnson & Johnson**
**One Johnson & Johnson Plaza**
**New Brunswick, New Jersey 08933**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV29568

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Abbott Laboratories, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Jans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

______________________________________________________________

______________________________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

______________________________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BD
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Assertio Therapeutics, Inc.**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of __________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of __________, 2019, I served this summons together with the Complaint as follows: ____________________

____________________

failed to serve this summons within 30 days after its issuance because ____________________

____________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Endo Health Solutions, Inc.**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Sans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ____________, 2019. ______________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________

________________________________________

________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs. NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Endo Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Dams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ___________________

___________________

failed to serve this summons within 30 days after its issuance because ___________________

___________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Mallinckrodt LLC**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Mallinckrodt PLC**
**3 Lotus Park, The Causeway**
**Surrey TW18 3 AG**
**United Kingdom**
**Staines-Upon-Thames**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **SpecGx LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St.**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Jams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ___________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BD
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Allergan PLC**
**c/o Deborah Griffin**
**425 Privet Road**
**Horsham, Pennsylvania 19044**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

Polain
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Watson Laboratories, Inc.**
**c/o Corporate Creations Network, Inc.**
**8275 South Eastern Avenue #200**
**Las Vegas, Nevada 89123**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Actavis LLC**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A .M.

Chris Shepherd
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Actavis Pharma, Inc.**
**c/o Corporate Creations Network, Inc.**
**205 Powell PL**
**Brentwood, TN 37027-7522**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________

______________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV29566
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Anda, Inc.**
**c/o Corporate Creations Network, Inc.**
**11380 Prosperity Farms Road #221E**
**Palm Beach Gardens, FL 33410**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **H.D. Smith, LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St.**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________________

________________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Henry Babenco**
**6350 Clinton Rd**
**Paducah, KY 42001-9394**

**Method of Service:**
**TN Department Of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ________________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: AmerisourceBergen Drug Corporation**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Jans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________

______________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Miami-Luken, Inc.**
**c/o William Powers**
**265 Pioneer Blvd.**
**Springboro, OH 45066**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Cardinal Health, Inc.**
**c/o C T Corporation System**
**4400 Easton Commons Way**
**Suite 125**
**Columbus, OH 43219**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ____________, 2019, ____________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________________________

failed to serve this summons within 30 days after its issuance because ________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Rite Aid of Maryland, Inc.**
**c/o The Corporation Trust, Inc.**
**2405 York Road**
**Suite 201**
**Lutherville Timonium, MD 21093-2264**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

________________________________________________________________

________________________________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **The Kroger Co.**
**c/o Corporation Service Company**
**2908 Poston Ave**
**Nashville, TN 37203-1312**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ____________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________

failed to serve this summons within 30 days after its issuance because ____________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, NO. CC19CV29566

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Kroger Limited Partnership II**
**1014 Vine St**
**Cincinnati, OH 45202**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **CVS Health Corporation**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

D Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

| | |
|---|---|
| **TO: CVS Indiana, L.L.C.**<br>**c/o CT Corporation System**<br>**150 West Market Street, Suite 800**<br>**Indianapolis, IN, 46204** | **Method of Service:**<br>**TN Department of State**<br>**Division of Business Services**<br>**Summons Section**<br>**6th Floor, William R. Snodgrass Tower**<br>**Nashville, TN 37243** |

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

________________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

________________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CCACV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Wal-Mart Inc.**
**c/o C T Corporation System**
**800 S Gay St., Ste. 2021**
**Knoxville, TN 37929-9710**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Dain
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ___________________________________________

_____________________________________________________________

_____________________________________________________________

failed to serve this summons within 30 days after its issuance because ___________________________

_____________________________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Wal-Mart Stores East, LP**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

______________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Walgreens Boots Alliance, Inc.**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ___________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Noramco, Inc.**
**c/o Thomas C. Crawford**
**3401 W End Ave S 215**
**Nashville, TN 37203**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Adams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019. ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________

failed to serve this summons within 30 days after its issuance because ____________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **P&S Pharmacy**
**613 Watauga St.**
**Kingsport, TN 37660**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Jones
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ____________, 2019, ______________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Lowell B. Grizzle**
**2613 Rivermont Cir**
**Kingsport, TN 37660**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sheriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV29563

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Henry Babenco**
**6350 Clinton Rd**
**Paducah, KY 42001-9394**

**Method of Service:**
**TN Department Of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________

Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Sharon Naylor**
**101 Willow Tree Ln**
**Jacksboro, TN 37757-4610**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________
______________________________________________
______________________________________________

failed to serve this summons within 30 days after its issuance because ____________________
______________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Alicia ~~Taylor~~ Naylor**
**2105 Leatherwood Rd**
**Oneida, TN 37841-7025**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ______________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

_______________________________________________________________

_______________________________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

_______________________________________________________________.

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

TO: **CVS Pharmacy, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

TO: **Gregory Madron**
**295 Sawmill Cir**
**Jacksboro, TN 37757-5215**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________

______________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **P&S Pharmacy**
**613 Watauga St.**
**Kingsport, TN 37660**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Rebecca Long
~~Deputy Sherriff~~ PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: P & S Pharmacy - Vanessa Shaffer pharmacist signed for the copy on behalf of the Pharmacy, who is authorized to accept service via hand delivery

failed to serve this summons within 30 days after its issuance because

Rebecca Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

X Vanessa Shaffer

**Rebecca Long**
P.O. Box 1303
Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Lowell B. Grizzle**
**2613 Rivermont Cir**
**Kingsport, TN 37660**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Rebecca Long
~~Deputy Sheriff~~ PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: served Lowell B Grizzle via hand delivery

failed to serve this summons within 30 days after its issuance because

Rebecca Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

X Lowell B Grizzle

P.O. Box 1303
Morristown, TN 37816
**Rebecca Long**

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: AmerisourceBergen Drug Corporation**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff JS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served AmerisourceBergen Drug Corporation c/o CT Corporation System accepted service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303
Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: CVS Pharmacy, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served CVS Pharmacy c/o CT Corporation System Accepted Service Something Sorted via hand delivery

failed to serve this summons within 30 days after its issuance because ______

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303
Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC., et al. | : | |
| Plaintiffs, | : | NO. CC19CV295BB |
| | : | Jury Demanded |
| V. | : | |
| PURDUE PHARMA, L.P., et al. | : | |
| Defendants. | : | |

TO THE ABOVE NAMED DEFENDANTS:

**TO: Wal-Mart Stores East, LP**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Wal-Mart Stores East LP c/o CT Corporation accepted Service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______________________

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1[illegible] Morristown, TN [illegible]7816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Wal-Mart Inc.**
**c/o C T Corporation System**
**800 S Gay St., Ste. 2021**
**Knoxville, TN 37929-9710**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Sain
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff 105

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Wal-Mart Inc c/o CT Corporation System accepted service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303 Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295B

Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Abbott Laboratories, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheparel
Clerk

P. Jans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Abbott Laboratories Inc c/o CT Corporation System accepted summons System via hand delivery

failed to serve this summons within 30 days after its issuance because

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303 Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Endo Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Endo Pharmaceuticals Inc c/o CT Corporation System accepted Service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ____________

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303
Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Mallinckrodt LLC**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Mallinckrodt LLC c/o CT Corporation System accepted service Samantha Snow on hand delivery

failed to serve this summons within 30 days after its issuance because

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303
Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, NO. CC19CV395 BB

Jury Demanded

v.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Janssen Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheppard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Janssen Pharmaceuticals Inc to CT Corporation accepted Service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1[illegible] Morristown, TN 37816

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs.

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Alicia** [redacted] TAYLOR
**2105 Leatherwood Rd**
**Oneida, TN 37841-7025**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 23 day of July, 2019, I served this summons together with the Complaint as follows: Served in Person at 4:35 pm

Tim Woodward

failed to serve this summons within 30 days after its issuance because ____________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **The Kroger Co.**
**c/o Corporation Service Company**
**2908 Poston Ave**
**Nashville, TN 37203-1312**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure

Received this the 24 day of July, 2019, [signature] Deputy Sheriff

THE MUSIC CITY PROCESS
KEVIN FAHERTY
PO BOX 90331
NASHVILLE, TN 37209
615-480-8785

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 25 day of July, 2019, I served this summons together with the Complaint as follows: Delivered to Cathy Jones - CSC
2908 Poston Ave, Nashville TN

failed to serve this summons within 30 days after its issuance because

[signature]

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV225 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

TO: **Henry Schein, Inc.**
**c/o Corporation Service Company**
**2908 Poston Ave.**
**Nashville, TN 37203-1312**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

THE MUSIC CITY PROCESS
KEVIN FAHERTY
PO BOX 90331
NASHVILLE, TN 37209
615-480-8785

Received this the 24 day of July, 2019. ______
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 25 day of July, 2019, I served this summons together with the Complaint as follows: Delivered to Cathy Jones – CSC 2908 Poston Ave, Nashville TN

failed to serve this summons within 30 days after its issuance because ______

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Actavis Pharma, Inc.**
**c/o Corporate Creations Network, Inc.**
**205 Powell Pl.**
**Brentwood, TN 37027-7522**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 24 day of July 2019. [signature]
Deputy Sherriff

THE MUSIC CITY PROCESS
KEVIN FAHERTY
PO BOX 90331
NASHVILLE, TN 37209
615-480-8785

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 26 day of July, 2019, I served this summons together with the Complaint as follows: Delivered to Corporate Creations Network - Hailey Reece 205 Powell Pl Brentwood TN

failed to serve this summons within 30 days after its issuance because

[signature]

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Andrew T. Stokes**
**229 Shadowood Dr.**
**Johnson City, TN 37604-1128**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

[signature]
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the 26 day of July, 2019. Rebecca Long
~~Deputy Sheriff~~ PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 26 day of July, 2019, I served this summons together with the Complaint as follows: Served Andrew Stokes via hand delivery

failed to serve this summons within 30 days after its issuance because ______

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

X [signature]

P.O. Box 1303
Morristown, TN 37816

**Rebecca Long**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MIAMI-LUKEN, INC.
265 PIONEER BLVD
: C/O WILLIAM POWERS
SPRINGBORO, OH 45066

9590 9402 4611 8323 2557 21

2. Article Number *(Transfer from service label)*

7018 0360 0000 7608 5571

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addresse

B. Received by *(Printed Name)*

C. Date of Deliver

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
ured Mail Restricted Delivery
er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

2-21

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Miami-Luken, Inc.**
**c/o William Powers**
**265 Pioneer Blvd.**
**Springboro, OH 45066**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ___________________________

___________________________

failed to serve this summons within 30 days after its issuance because ___________________________

___________________________

2019 JUL 29 PM 1:07
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Timney mark
354 Park Ave
Keene NH 03431

9590 9402 4923 9032 2145 37 7/31

2. Article Number *(Transfer from service label)*

7018 0360 0000 7609 1541

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☑ Addressee

B. Received by *(Printed Name)* C. Date of Delivery 8-3-19

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV293BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

TO: **Mark Timney**
**354 Pako Avenue**
**Keene, New Hampshire 03431-5023**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

______________________________________________

2019 JUL 29 PM 1:05
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

Division of Business Services
Department of State
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

BREWER & TERRY PC
PO BOX 2046
MORRISTOWN, TN 37816-2046

## Receipt Detail

Receipt ID: 004944136
Receipt Date: 07/30/2019
Receipt Total: $20.00

| Item | Description | Check/Ref # | DLN # | Price | # | Amount |
|---|---|---|---|---|---|---|
| Summons | Summons | 07784584 | | $20.00 | 1 | $20.00 |
| Payment-Account | BREWER & TERRY PC, MORRISTOWN, TN | 49296 | | $20.00 | 1 | ($20.00) |

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BABENCO, HENRY
6350 CLINTON RD
PADUCAH, KY 42001-9394

9590 9402 3902 8060 5913 99

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8643

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X H. D. Bl
☐ Agent
☐ Addressee

B. Received by (Printed Name)
H. D. B.

C. Date of Delivery
8-3-19

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
il
il Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV29563
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Henry Babenco**
**6350 Clinton Rd**
**Paducah, KY 42001-9394**

**Method of Service:**
**TN Department Of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:11
SECRETARY OF STATE

Tre Hargett
Secretary of State

Division of Business Services
Department of State
State of Tennessee
312 Rosa L. Parks AVE. 6th FL
Nashville, TN 37243-1102

# AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295BB** 08/06/2019

Certified #: **70180360000076058643** SOS Summons #: 07784933

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against BABENCO, HENRY whose address is: 6350 CLINTON RD, PADUCAH, KY 42001-9394, and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/05/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/06/2019.

Tre Hargett
Secretary of State

By: Anne Hackney

Sworn to and subscribed before me this 6 day of August 2019

Notary Public

My Commission Expires 07·06·2020

DAWN M. WHITTAKER STATE OF TENNESSEE NOTARY PUBLIC DAVIDSON

SS-4201(Rev 9/15) RDA 1003

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery
8/5/19

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

ANDA INC
#221E
11380 PROSPERITY FARMS ROAD
: C/O CORPORATE CREATIONS NETWORK INC
PALM BEACH GARDENS, FL 33410

9590 9402 3902 8060 5913 75

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8629

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295DD
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Anda, Inc.**
**c/o Corporate Creations Network, Inc.**
**11380 Prosperity Farms Road #221E**
**Palm Beach Gardens, FL 33410**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ____________, 2019, ________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

2019 JUL 29 PM 12:52
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

THE GREAT SEAL OF THE STATE OF TENNESSEE
XVI AGRICULTURE COMMERCE 1796

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/12/2019
Case #: **CC19CV295BB**
Certified #: **70180360000076058629**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  see attached green card
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Tre Hargett
Secretary of State

**FILED**
TIME 10:22
AUG 15 2019
Chris Shepard
Circuit Court Clerk

Enclosures: Original Documents

IN THE CIRCUIT COURT FOR GREENE COUNTY
AT GREENVILLE, TENNESSEE

---

**TAKOMA REGIONAL HOSPITAL INC.,**
***et al.*,**

**Plaintiffs,**

**v.** **No. CC19CV295BB**
**JURY DEMANDED**

**PURDUE PHARMA L.P., *et al.***

**Defendants.**

---

**NOTICE OF APPEARANCE**

---

Nathan A. Bicks and Ryan G. Saharovich of the law firm of Burch, Porter & Johnson, PLLC, hereby give notice of their appearance as counsel of record in this case for Defendants, CVS Pharmacy, Inc., CVS Health Corporation, and CVS Indiana, L.L.C.

This notice of appearance is without waiver of any available to CVS Pharmacy, Inc., CVS Health Corporation, and CVS Indiana, L.L.C including, but not limited to, the right to challenge personal jurisdiction in this matter.

FILED
TIME 9:31 A.M.
AUG 05 2019
Chris Shepard by D. Justis
CIRCUIT COURT CLERK

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

[signature]

Nathan A. Bicks (#10903)
Ryan G. Saharovich (#36185)
130 North Court Avenue
Memphis, Tennessee 38103
Telephone: 901-524-5000
Facsimile: 901-524-5024
nbicks@bpjlaw.com

# BURCH, PORTER & JOHNSON PLLC

130 N. Court Avenue
Memphis, TN 38103

TELEPHONE: 901.524.5000
FACSIMILE: 901.524.5024

9:31 A.m.
AUG 0
Chris Shepard by D Justis
CIRCUIT COURT CLERK

**FACSIMILE COVER LETTER**

DATE: Date August 2, 2019

| TO: NAME | COMPANY/FIRM | FAX NO. | |
|---|---|---|---|
| Christopher Shepard<br>Court Clerk | Greene County Circuit Court,<br>Greenville, Tennessee | 423-798-1763 | |

Total number of pages including this cover page:

FROM: Ryan G. Saharovich by
Leslie Luther-Fulton
Direct Dial: 901.524.5111

RE: *Takoma Regional Hospital, Inc, et al. v. Purdue Pharma, LP, et al*
No. CC19CV296BB

Dear Mr. Shepard:

Attached for filing with the Court, please find a *Notice of Appearance* for Nathan A. Bicks and Ryan G. Saharovich.

Please do not hesitate to contact this office should you have questions regarding this filing.

Very truly yours,

Leslie Luther-Fulton
Legal Assistant

LLF
Attachment

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AMNEAL PHARMACEUTICALS INC
251 LITTLE FALLS DRIVE
: C/O CORPORATION SERVICE COMPANY
WILMINGTON, DE 19808

9590 9402 3902 8060 5913 51

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8605

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Sheila Wilks

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

2019

19808

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 7 21 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Amneal Pharmaceuticals, Inc.**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheparl
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:01
SECRETARY OF STATE
RECEIVED

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE. 6th FL
Nashville. TN 37243-1102

## AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295BB** 08/12/2019

Certified #: **70180360000076058605** SOS Summons #: 07783788

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against AMNEAL PHARMACEUTICALS INC AKA/POE: C/O CORPORATION SERVICE COMPANY
whose address is: 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808
and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/08/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/12/2019.

Tre Hargett
Tre Hargett
Secretary of State
By: Anne Hackney

Sworn to and subscribed before me this
12 day of August, 2019
Dawn M. Whittaker
Notary Public

My Commission Expires: 07-06-2020

DAWN M. WHITTAKER STATE OF TENNESSEE NOTARY PUBLIC

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RITE AID OF MARYLAND, INC.
SUITE 201
2405 YORK ROAD
: C/O THE CORPORATION TRUST, INC.
LUTHERVILLE TIMONIUM, MD 21093-2264

9590 9402 4611 8323 2556 84

2. Article Number (Transfer from service label)

7018 0360 0000 7609 1497

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature Jason D. Kehayias ☐ Agent ☐ Addressee

B. Received by (Printed Name) Jason D. Kehayias

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

7-31

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Rite Aid of Maryland, Inc.**
**c/o The Corporation Trust, Inc.**
**2405 York Road**
**Suite 201**
**Lutherville Timonium, MD 21093-2264**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

2019 JUL 29 PM 12: 53
TRE HARGETT
SECRETARY OF STATE

RECEIVED

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

# AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295 BB** 08/12/2019

Certified #: **70180360000076091497** SOS Summons #: 07784399

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against RITE AID OF MARYLAND, INC. AKA/POE: C/O THE CORPORATION TRUST, INC.
whose address is: 2405 YORK ROAD, LUTHERVILLE TIMONIUM, MD 21093-2264,
and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/08/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/12/2019.

Tre Hargett
Secretary of State
By: Anne Hackney

Sworn to and subscribed before me this
12 day of August, 2019

Notary Public

My Commission Expires: 07-06-2020

DAWN M. WHITTAKER STATE OF TENNESSEE NOTARY PUBLIC GREENE COUNTY

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

BREWER & TERRY PC
PO BOX 2046
MORRISTOWN, TN 37816-2046

## Receipt Detail

**Receipt ID:** 004944042
Receipt Date: 07/30/2019
Receipt Total: $20.00

| Item | Description | Check/Ref # | DLN # | Price | # | Amount |
|---|---|---|---|---|---|---|
| Summons | Summons | 07784399 | | $20.00 | 1 | $20.00 |
| Payment-Account | BREWER & TERRY PC, MORRISTOWN, TN | 49296 | | $20.00 | 1 | ($20.00) |

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PURDUE PHARMA, L.P.
251 LITTLE FALLS DRIVE
: C/O THE PRENTICE-HALL CORPORATION SYS
WILMINGTON, DE 19808

9590 9402 4611 8323 2556 91

2. Article Number (Transfer from service label)

7018 0360 0000 7609 1480

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ☐ Agent ☐ Addresse

B. Received by (Printed Name) C. Date of Deliver

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

USPS 19808 — POST OFFICE — AUG 2019

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL. INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Purdue Pharma, L.P.**
**c/o The Prentice-Hall Corporation System, Inc.**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

**(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)**

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ___________________________________________

_______________________________________________________________________

failed to serve this summons within 30 days after its issuance because ________________

_______________________________________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 12:57
SECRETARY OF STATE

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295 BB** 08/12/2019

Certified #: **70180360000076091480** SOS Summons #: 07784358

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against PURDUE PHARMA, L.P. AKA/POE: C/O THE PRENTICE-HALL CORPORATION SYSTEM, INC.
whose address is: 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808,
and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/08/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/12/2019.

Tre Hargett
Secretary of State

By: Anne Hackney

Sworn to and subscribed before me this

12 day of August, 2019

Notary Public

My Commission Expires: 07-06-2020

DAWN M. WHITTAKER
STATE OF TENNESSEE NOTARY PUBLIC
DAVIDSON COUNTY

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ALLERGAN PLC
425 PRIVET ROAD
: C/O DEBORAH GRIFFIN
HORSHAM, PA 19044

9590 9402 3902 8060 5913 44

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8599

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature]
☐ Agent
☐ Addressee

B. Received by (Printed Name)
[handwritten name]

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

HORSHAM PA 19044
AUG - 4 2019

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
)0)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Allergan PLC**
**c/o Deborah Griffin**
**425 Privet Road**
**Horsham, Pennsylvania 19044**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________

________________________________

failed to serve this summons within 30 days after its issuance because ____________________

________________________________

2019 JUL 29 PM 12:49
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

THE GREAT SEAL OF THE STATE OF TENNESSEE
XVI
AGRICULTURE
COMMERCE
1796

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/12/2019
Case #: **CC19CV295BB**
Certified #: **70180360000076058599**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  SEE GREEN CARD
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Tre Hargett
Secretary of State

Enclosures: Original Documents

SS-4210 (Rev. 8/15)

RDA 1003

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB

Jury Demanded

v.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Craig Landau**
**1 Stamford Forum**
**Stamford, CT 06901-3516**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019. I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

SECTION | TION ON DELIV

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Deliver

1. Article Addressed to:

WATSON LABORATORIES, INC.
#200
8275 SOUTH EASTERN AVENUE
: C/O CORPORATE CREATIONS NETWORK, INC
LAS VEGAS, NV 89123

ldress different from item 1? ☐ Yes
delivery address below: ☐ No

9590 9402 4611 8323 2556 15

2. Article Number (Transfer from service label)

7018 0360 0000 7609 1565

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
sured Mail
sured Mail Restricted Delivery
ver $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

7-21

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Watson Laboratories, Inc.**
**c/o Corporate Creations Network, Inc.**
**8275 South Eastern Avenue #200**
**Las Vegas, Nevada 89123**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

D. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

2019 JUL 29 PM 1:09
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/12/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076091565**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

SEE GREEN CARD

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SS-4210 (Rev. 8/15)

RDA 1003

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addresse |
| | B. Received by (Printed Name) — C. Date of Deliver |
| 1. Article Addressed to: | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

PURDUE PHARMA, INC.
80 STATE STREET
: C/O CORPORATION SERVICE COMPANY
ALBANY, NY 12207

RECEIVED
AUG 05 19
CSC
COURIER

9590 9402 4611 8323 2557 07

2. Article Number (Transfer from service label)
7018 0360 0000 7609 1473

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

7-31

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

# State of Tennessee
# Circuit Court of Greene County
# at Greeneville

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Purdue Pharma, Inc.**
**c/o Corporation Service Company**
**80 State Street**
**Albany, New York 12207**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Lanis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of __________, 2019. ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ____________________

____________________

failed to serve this summons within 30 days after its issuance because ____________________

____________________

2019 JUL 29 PM 1:00
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

THE GREAT SEAL OF THE STATE OF TENNESSEE
XVI
AGRICULTURE
COMMERCE
1796

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076091473**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  ILLEGIBLE
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SS-4210 (Rev. 8/15) RDA 1003

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

THE PURDUE FREDERICK COMPANY
80 STATE STREET
: C/O CORPORATION SERVICE COMPANY
ALBANY, NY 12207-2543

9590 9402 4611 8323 2557 14

2. Article Number *(Transfer from service label)*

7018 0360 0000 7608 5588

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addresse

B. Received by *(Printed Name)*

C. Date of Deliver

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
AUG 05 19
CSC
COURIER

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ured Mail
ured Mail Restricted Delivery
er $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 7-31 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **The Purdue Frederick Company**
**c/o Corporation Service Company**
**80 State Street**
**Albany, New York 12207-2543**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

2019 JUL 29 PM 12:58
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076085588**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

ILLEGIBLE

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

USPS TRACKING #

9590 9402 4611 8323 2556 46

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

**State of Tennessee**
**Department of State**
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks Avenue, 6th Floor
Nashville, TN 37243

# State of Tennessee
# Circuit Court of Greene County
# at Greeneville

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Teva Pharmaceuticals USA, Inc.**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you. exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Sans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019, ____________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ________________________________________
________________________________________
________________________________________
failed to serve this summons within 30 days after its issuance because ________________
________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:13
SECRETARY OF STATE

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076091534**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

ILLEGIBLE

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SS-4210 (Rev 8/15) RDA 1003

# State of Tennessee
# Circuit Court of Greene County
# at Greeneville

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV29563
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Russell Gasdia**
**40 Five Gate Lane**
**North Falmouth, MA 02556-2319**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Sheard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

2019 JUL 29 PM 1:06
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #:**CC19CV295BB**
Certified #:**70180360000076058704**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

RUSSELL GASDIA

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 GB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: CVS Indiana, L.L.C.**
**c/o CT Corporation System**
**150 West Market Street, Suite 800**
**Indianapolis, IN, 46204**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CEPHALON INC
TATNALL BUILDING STE 104
3411 SILVERSIDE ROAD
C/O CORPORATE CREATIONS NETWORK INC
WILMINGTON, DE 19810

9590 9402 3902 8060 5914 12

2. Article Number *(Transfer from service label)*

7018 0360 0000 7605 8667

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

AUG - 5

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

TO: **Cephalon, Inc.**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ___________________________

failed to serve this summons within 30 days after its issuance because ___________________________

2019 JUL 29 PM 1:15
RECEIVED
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

THE GREAT SEAL OF THE STATE OF TENNESSEE XVI AGRICULTURE COMMERCE 1796

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

# AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295BB** 08/14/2019

Certified #: **70180360000076058667** SOS Summons #: 07785077

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against CEPHALON INC AKA/POE: C/O CORPORATE CREATIONS NETWORK INC
whose address is: 3411 SILVERSIDE ROAD, WILMINGTON, DE 19810,
and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/13/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/14/2019.

Tre Hargett (signature)
Tre Hargett
Secretary of State
By: Anne Hackney (signature)

Sworn to and subscribed before me this
14 day of August, 2019
Dawn M. Whittaker (signature)
Notary Public

My Commission Expires: 07-06-2020

DAWN M. WHITTAKER STATE OF TENNESSEE NOTARY PUBLIC DAVIDSON COUNTY

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**ACTAVIS LLC**
**TATNALL BUILDING STE 104**
**3411 SILVERSIDE ROAD**
**: C/O CORPORATE CREATIONS NETWORK INC**
**WILMINGTON, DE 19810**

9590 9402 3902 8060 5913 37

(Transfer from service label)

7018 0360 0000 7605 8582

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addresse

B. Received by (Printed Name)

C. Date of Deliver

address different from item 1? ☐ Yes
ter delivery address below: ☐ No

AUG - 5 2

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receip

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV29566
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Actavis LLC**
**c/o Corporate Creations Network, Inc.**
**3411 Silverside Road**
**Tatnall Building Ste. 104**
**Wilmington, DE 19810**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________

______________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________

2019 JUL 29 PM 1:02
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295BB**
Certified #: **70180360000076058582**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  SEE GREEN CARD
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1\.

ABBOTT LABORATORIES
SUITE 814
208 SO LASALLE ST
: C/O C T CORPORATION SYSTEM
CHICAGO, IL 60604

9590 9402 3902 8060 5913 20

2\. Article Number (Transfer from service label)

7018 0360 0000 7605 8575

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addresse

B. Received by (Printed Name)

C. Date of Delive

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3\. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
...ail
...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs.

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BD
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Abbott Laboratories**
**c/o C T Corporation System**
**208 So. LaSalle St., Suite 814**
**Chicago, IL 60604**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 4:15 o'clock P.M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

2019 JUL 29 PM 1:02
SECRETARY OF STATE

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

____________________________________________

failed to serve this summons within 30 days after its issuance because ____________________

____________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295BB**
Certified #: **70180360000076058575**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  SEE GREEN CARD
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOHNSON & JOHNSON
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ 08933

9590 9402 3902 8060 5914 67

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8711

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

KILMER LOBBY 08989
AUG 0 6 2019
USPS

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

7-7

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV293BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Johnson & Johnson**
**One Johnson & Johnson Plaza**
**New Brunswick, New Jersey 08933**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ____________________________________________

____________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

____________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

SECRETARY OF STATE
2019 JUL 29 PM 1:08

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #:**CC19CV295BB**
Certified #:**70180360000076058711**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  ILLEGIBLE
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**KROGER LIMITED PARTNERSHIP II**
**1014 VINE ST**
**CINCINNATI, OH 45202**

9590 9402 4611 8323 2557 45

2. Article Number *(Transfer from service label)*

7018 0360 0000 7608 5557

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X John Chesley
☐ Agent
☐ Addressee

B. Received by (Printed Name)
JOHN CHESLEY

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

CINCINNATI OH CARD CITY STATION
AUG 06 2019

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
ured Mail
ured Mail Restricted Delivery
er $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO: Kroger Limited Partnership II**
**1014 Vine St**
**Cincinnati, OH 45202**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

2019 JUL 29 PM 1:10
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/14/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076085557**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  JOHN CHESSEY
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: Janssen Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Janssen Pharmaceuticals Inc to CT Corporation accepted by Lester Sanders, Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______________________

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box [illegible]
Morristown, TN 37816

**IN THE CIRCUIT COURT FOR GREENE COUNTY**
**AT GREENEVILLE, TENNESSEE**

---

**TAKOMA REGIONAL HOSPITAL INC.,**
***et al.,***

**Plaintiffs,**

**v.** **No. CC19CV295BB**

**PURDUE PHARMA L.P., *et al.***

**Defendants.**

FILED
TIME 10:02a
AUG 15 2019
C. Shepard [signature]
Circuit Court Clerk

---

**CONSENT MOTION FOR ORDER EXTENDING**
**TIME TO FILE RESPONSE**

---

Now come Defendants The Kroger Co., Kroger Limited Partnership II, Walmart Inc.,[1] Wal-Mart Stores East, LP, and Walgreens Boots Alliance, Inc. (the "Kroger, Walmart, and Walgreens Defendants"), by their undersigned counsel, and move for a Consent Order extending the time to file their response to the Complaint. In support thereof, the Kroger, Walmart, and Walgreens Defendants state as follows:

1. Plaintiffs have agreed to a Consent Order (attached hereto) extending the time for the Kroger, Walmart, and Walgreens Defendants to file their response until October 1, 2019.

2. This extension is not sought for delay but made in the interests of judicial economy. The moving Defendants have not previously requested any extension of time to respond to the Complaint in this case.

---

[1] Plaintiffs named Wal-Mart Inc. as a defendant to this action. As of February 1, 2018, Wal-Mart Stores, Inc. became known as Walmart Inc., not Wal-Mart Inc.

51 Louisiana Avenue, N.W.
Washington, Washington, D.C. 20001-2113
T: 202.879.3939
F: 202.626.1700
jgeddes@jonesday.com

Christopher Lovrien*
Sarah G. Conway*
JONES DAY
555 S. Flower St., Fiftieth Floor
Los Angeles, CA 90071-2452
T: 213.489.3939
F: 213.243.2539
cjlovrien@jonesday.com
sgconway@jonesday.com

*Attorneys for Defendants Walmart Inc. and Wal-Mart Stores East, LP*

Matthew J. Evans signed w/ permission John V. ...

Matthew J. Evans (BPR #017973)
Paige Coleman (BPR #032690)
KAY GRIFFIN, PLLC
900 S. Gay Street, Suite 802
Knoxville, Tennessee 37902
(865) 314-8422
(865) 320-0894

*Counsel for Walgreens Boots Alliance, Inc.*

* *denotes national counsel who will seek pro hac vice admission*

JOSH HOEPPNER
ATTORNEY AT LAW

201 West Sullivan Street
Kingsport, TN 37660

ph 423 247 6151
Josh@HoeppnerLaw.com

HOEPPNERLAW.COM

August 13, 2019

Pam Venable
Greene County Circuit Court Clerk
101 South Main Street #302
Greeneville, TN 37743

Re: Takoma Regional Hospital, Inc., et. al. vs. Purdue Pharma, L.P., et. al.
Greene County Circuit Court Case No. CC19-CV-295BB

Dear Ms. Venable:

Please find the enclosed Consent Motion for Order Extending Time to File Response (and copy), regarding the above-styled case. I would appreciate if you could file the original and mark the copy filed, and then return it to me in the envelope I have provided.

If you have any questions or comments, do not hesitate to contact me.

Sincerely,

Josh Hoeppner
Attorney at Law

Enclosures

Cc: (As indicated by Certificate of Service)

FILED
TIME 10:02
AUG 15 2019
Circuit Court Clerk

IN THE CIRCUIT COURT OF GREENE COUNTY, TENNESSEE

TAKOMA REGIONAL HOSPITAL, INC. f/k/a, )
TAKOMA HOSPITAL, INC., et al. )
)
Plaintiffs, )
) Case No. CC19CV295BB
v. )
)
PURDUE PHARMA, L.P., et al., )
)
Defendants. )

FILED
TIME 12:4pm
AUG 15 2019
C. Shepard
Circuit Court Clerk

**CONSENT MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Plaintiffs and Defendants AmerisourceBergen Drug Corporation ("AmerisourceBergen") and Cardinal Health, Inc. ("Cardinal") hereby move for an extension of time through and including October 1, 2019, to respond to the Complaint in this matter. In support of this Motion, Plaintiffs and Defendants AmerisourceBergen and Cardinal assert the following:

1. AmerisourceBergen was served with Plaintiffs' Summons and Complaint on July 18, 2019. Pursuant to Tennessee Rule of Civil Procedure 12, AmerisourceBergen's response to the Complaint is due on or before August 19, 2019.

2. Cardinal was served with Plaintiffs' Summons and Complaint on August 5, 2019. Pursuant to Tennessee Rule of Civil Procedure 12, Cardinal's response to the Complaint is due on or before September 4, 2019.

3. The Complaint, which is brought by 22 named plaintiffs, contains 1,096 paragraphs of allegations over 336 pages and asserts six causes of action against dozens of defendants (and numerous distinct groups of defendants). Given the Complaint's length and complexity, defendants need additional time to respond to it.

4. Plaintiffs do not oppose the extension of time requested herein.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that an exact copy of this pleading has been served upon counsel for all parties in this action, or upon said parties themselves as required by law, by delivering a copy thereof, or by depositing a copy of the same in the United States Mail, with sufficient postage affixed thereto to ensure delivery to the following:

Gary E. Brewer
Brewer & Terry, P.C.
1702 W. Andrew Johnson Highway
Morristown, Tennessee 37814

Nathan Bicks
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103

This the 14th day of August, 2019.

**MILLER & MARTIN PLLC**

By: ____________________



17982912v1

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

AMNEAL PHARMACEUTICALS INC
251 LITTLE FALLS DRIVE
: C/O CORPORATION SERVICE COMPANY
WILMINGTON, DE 19808

9590 9402 3902 8060 5913 51

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8605

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Sheila Wilks

☐ Agent
☐ Addresse

B. Received by (Printed Name)

C. Date of Deliver

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

2016

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ail
...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs, : NO. CC 19CV295 BB

Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Amneal Pharmaceuticals, Inc.**
**c/o Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________

Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:01

SECRETARY OF STATE

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE. 6th FL
Nashville, TN 37243-1102

## AFFIDAVIT AND ENDORSEMENT

Case #: **CC19CV295BB** 08/12/2019

Certified #: **70180360000076058605** SOS Summons #: 07783788

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

I, ANNE HACKNEY, having been duly authorized by Tre Hargett, Secretary of State of Tennessee, do hereby make oath on his behalf and under authorization as follows:

That on 07/29/2019, I received from the plaintiff the original and certified copies of the process, notice or demand issued against AMNEAL PHARMACEUTICALS INC AKA/POE: C/O CORPORATION SERVICE COMPANY
whose address is: 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808
and that on 07/31/2019, I mailed by registered or certified return-receipt mail the certified copies of the process, notice, or demand to the above address together with a written notice that service was made.

I further make oath that the return receipt for the registered or certified letter was received at my office in Nashville, Tennessee, on 08/08/2019, and returned to GREENE COUNTY - CIRCUIT COURT of GREENEVILLE, TN on 08/12/2019.

Tre Hargett
Tre Hargett
Secretary of State
By: Anne Hackney

Sworn to and subscribed before me this
12 day of August, 2019
Dawn M. Whittaker
Notary Public

My Commission Expires: 07-06-2020

DAWN M. WHITTAKER STATE OF TENNESSEE NOTARY PUBLIC DAVIDSON

IN THE CIRCUIT COURT OF GREENE COUNTY, TENNESSEE

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. f/k/a, TAKOMA HOSPITAL, INC., et al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. CC19CV295BB |
| PURDUE PHARMA, L.P., et al., | ) | |
| Defendants. | ) | |

**ORDER GRANTING EXTENSION OF TIME TO RESPOND TO COMPLAINT**

After consideration of the Consent Motion for Extension of Time to Respond to Complaint, and for good cause shown, it is hereby:

**ORDERED** that Defendants AmerisourceBergen Drug Corporation and Cardinal Health, Inc. shall have an extension of time up to and including October 1, 2019, to respond to Plaintiffs' Complaint.

Entered this 15 day of Aug., 2019.

Beth Boniface

Greene County Circuit Court Judge

FILED
TIME 1:13pm
[illegible] 16 2019
Cheryl [illegible]
Circuit Court Clerk

# CERTIFICATE OF CLERK

I, Chris Shephard Clerk of Circuit Court for Greene County, do hereby certify that a true and exact copy of these documents have been served upon

Gary E Brewer, Esq @ 1702 W Andrew Johnson Hwy, Morristown TN 37814

Roger W Dickson @ 832 Georgia Avenue Suite1200, Chattanooga TN 37402

by placing a true and exact copy in the U.S. Mail, or by hand delivery, with sufficient postage to carry same to its destination.

This the 21st day of August ~ 2019

Chris Shepard
Clerk

Tonya Stills
Deputy Clerk

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

ASSERTIO THERAPEUTICS INC
CORPORATION TRUST CENTER
1209 ORANGE STREET
: C/O THE CORPORATION TRUST COMPANY
WILMINGTON, DE 19801

9590 9402 3902 8060 5913 82

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8636

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED

AUG 05 2019

CT CORPORATION

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Assertio Therapeutics, Inc.**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________

______________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________

2019 JUL 29 PM 1:03
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/20/2019
Case #:**CC19CV295BB**
Certified #:**70180360000076058636**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  C T CORPORATION
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CVS HEALTH CORPORATION
CORPORATION TRUST CENTER
1209 ORANGE ST
: C/O THE CORPORATION TRUST COMPANY
WILMINGTON, DE 19801

9590 9402 3902 8060 5914 29

2. Article Number (Transfer from service label)

7018 0360 0000 7605 8674

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED
AUG 05 2019
CT CORPORATION

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL. INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs.

NO. CC19CV295 BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **CVS Health Corporation**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A .M.

Chris Shepard
Clerk

P Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:07
SECRETARY OF STATE
RECEIVED

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE. 6th Fl.
Nashville. TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/20/2019
Case #: **CC19CV295BB**
Certified #: **70180360000076058674**

RE: **TAKOMA REGIONAL HOSPITAL INC F/K/A TAKOMA HOSPITAL INC ET AL**

VS: **PURDUE PHARMA LP ET AL**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  C T CORPORATION
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC., et al. | : | |
| Plaintiffs, | : | NO. CC19CV295 BB |
| | : | Jury Demanded |
| V. | : | |
| PURDUE PHARMA, L.P., et al. | : | |
| Defendants. | : | |

TO THE ABOVE NAMED DEFENDANTS:

TO: **Endo Pharmaceuticals, Inc.**
**c/o C T Corporation System**
**300 Montvue Rd.**
**Knoxville, TN 37919-5546**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Adams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the 17 day of July, 2019. Jerry Long Jerry Long
Deputy Sherriff PS

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the 18 day of July, 2019, I served this summons together with the Complaint as follows: Served Endo Pharmaceuticals Inc c/o CT Corporation System accepted service Samantha Sutton via hand delivery

failed to serve this summons within 30 days after its issuance because ______

Jerry Long

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**Jerry Long** P.O. Box 1303 Morristown, TN 37816

# State of Tennessee
# Circuit Court of Greene County
# at Greeneville

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO: H.D. Smith, LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St.**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Evans
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

---

Received this the ___ day of ___________, 2019. ______________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________

______________________________

failed to serve this summons within 30 days after its issuance because ______________________________

______________________________

2019 JUL 29 PM 1:12
SECRETARY OF STATE

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE. 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/20/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076091503**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

☑ Original Summons

☑ Affidavit and Endorsement

☑ Registered or Certified Return Receipt signed by:

C T CORPORATION

☐ Registered or Certified letter returned refused

☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Tre Hargett
Secretary of State

Enclosures: Original Documents

USPS TRACKING #

DV DANIELS

PM 3 L

9590 9402 4611 8323 2556 77

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**State of Tennessee**
**Department of State**
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks Avenue, 6th Floor
Nashville, TN 37243

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SPECGX LLC
1209 ORANGE ST
: C/O THE CORPORATION TRUST COMPANY/ C(
WILMINGTON, DE 19801

9590 9402 4611 8323 2556 60

2. Article Number *(Transfer from service label)*

7018 0360 0000 7609 1510

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addresse

B. Received by *(Printed Name)*

C. Date of Deliver

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

RECEIVED

AUG 0 5 2019

CT CORPORATION

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

7-31

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

V.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295 BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **SpecGx LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St.**
**Wilmington, DE 19801**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 12 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P. Davis
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019, ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of _____________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

2019 JUL 29 PM 1:00
SECRETARY OF STATE
RECEIVED

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE. 6th FL
Nashville, TN 37243-1102

HON. CHRIS SHEPARD
101 S MAIN ST
GREENEVILLE, TN 37743-5973

08/20/2019
Case #: **CC19CV295 BB**
Certified #: **70180360000076091510**

RE: **TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.**

VS: **PURDUE PHARMA, L.P. et al.**

Dear Clerk,

Enclosed are the following papers in the above styled case:

- ☑ Original Summons
- ☑ Affidavit and Endorsement
- ☑ Registered or Certified Return Receipt signed by:
  C T CORPORATION
- ☐ Registered or Certified letter returned refused
- ☐ Registered or Certified letter returned undelivered with notation:

Sincerely,

Tre Hargett
Secretary of State

Enclosures: Original Documents

SS-4210 (Rev. 8/15) RDA 1003

**BREWER AND TERRY, P.C.**
Attorneys at Law
1702 W. Andrew Johnson Highway
P. O. Box 2046
Morristown, TN 37816-2046

GARY E. BREWER
STEVEN W. TERRY
steve@brewerandterry.com

TELEPHONE (423) 587-2730
TELECOPIER (423) 585-0427

August 16, 2019

Christopher Shepard
Circuit Court Clerk
101 S. Main Street, Suite 302
Greeneville, TN 37743

**RE: Takoma Regional Hospital, Inc. f/k/a Takoma Hospital, Inc., et al.**
**v.**
**Purdue Pharma, L.P., et al.**

Dear Mr. Shephard:

Enclosed is the original Summons issued to Noramco, Inc. which we were unable to serve due to an insufficient address.

Sincerely,

Gary E. Brewer

/rpj

Enclosure

FILED
TIME 3:12pm
AUG 19 2019
C Shepard
Circuit Court Clerk

**IN THE CIRCUIT COURT FOR GREENE COUNTY, TENNESSEE**
**AT GREENVILLE**

TAKOMA REGIONAL HOSPITAL, *et al.*,

*Plaintiffs*,

v.

PURDUE PHARMA L.P., *et al.*,

*Defendants*.

Case No. CC19CV295

FILED
TIME 12:30
AUG 19 2019
C Shepard
Circuit Court Clerk

**MOTION BY AGREEMENT TO EXTEND TIME**
**TO ANSWER, MOVE TO DISMISS, OR OTHERWISE RESPOND**
**TO PLAINTIFF'S COMPLAINT**

In accordance with the Tennessee Rules of Civil Procedure, Plaintiffs and Defendants Abbott Laboratories and Abbott Laboratories Inc. (collectively, "Abbott"), by their respective undersigned counsel, hereby file this agreed motion to extend the time for Abbott to answer, move to dismiss, or otherwise respond to Plaintiffs' Original Complaint ("Complaint"), and in support state as follows:

1. Abbott's original deadline to respond to the Complaint has not expired.

2. Plaintiff is not opposed to extending the time for Abbott to answer, move to dismiss, or otherwise respond to Plaintiff's Complaint until October 1, 2019.

3. This Motion is not sought for delay but made in the interests of justice and judicial economy. Abbott has not previously requested any extension of time to respond to the Complaint in this case from this Court.

## CERTIFICATE OF SERVICE

This is to certify that on copies of the foregoing AGREED MOTION TO EXTEND THE DEADLINE FOR ABBOTT LABORATORIES AND ABBOTT LABORATORIES INC TO ANSWER, MOVE TO DISMISS, OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT will be served on all counsel of record.

*/s/ Gary E. Brewer*

VENABLE LLP

750 E PRATT STREET SUITE 900 BALTIMORE, MD 21202
T 410 244 7400 F 410 244 7742 www Venable com

**James K. O'Connor**

T 410-244-5217
F 410.244 7742
jko'connor@venable com

August 16, 2019

***VIA FEDERAL EXPRESS***

Clerk's Office
Greene County Circuit Court
101 S. Main Street, #302
Greeneville, TN 37743

***Re: Takoma Regional Hospital et al. v. Purdue Pharma L.P., et al.***
***Case No. CC19CV295BB***

Dear Clerk of Court:

Enclosed is an original and one copy of a Motion by Agreement to Extend Time to Answer, Move to Dismiss, or Otherwise Respond to Plaintiff's Complaint for filing in the above-captioned matter. Please date-stamp the enclosed copy and return it via the enclosed self-addressed, postage prepaid envelope.

Thank you for your assistance.

Sincerely,

James K. O'Connor

JKO/tfm
Enclosures
47456938

FILED
TIME 12:30
AUG 19 2019
Chris Shepard / J. Barham
Circuit Court Clerk

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

v.

PURDUE PHARMA, L.P., et al.

Defendants.

NO. CC19CV295BB
Jury Demanded

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Mark Timney**
**354 Pako Avenue**
**Keene, New Hampshire 03431-5023**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 13 day of July, 2019, at 9:15 o'clock A.M.

Chris Shepard
Clerk

P Sams
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ___________, 2019. ___________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ___________, 2019, I served this summons together with the Complaint as follows: ______________________________________________

______________________________________________

______________________________________________

failed to serve this summons within 30 days after its issuance because ______________________

______________________________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.

(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.

**BREWER AND TERRY, P.C.**
Attorneys at Law
1702 W. Andrew Johnson Highway
P. O. Box 2046
Morristown, TN 37816-2046

GARY E. BREWER
STEVEN W. TERRY
steve@brewerandterry.com

TELEPHONE (423) 587-2730
TELECOPIER (423) 585-0427

August 16, 2019

FILED
TIME 3:20pm
AUG 19 2019
C. Shepard/[illegible]
Circuit Court Clerk

Christopher Shepard
Circuit Court Clerk
101 S. Main Street, Suite 302
Greeneville, TN 37743

**RE: Takoma Regional Hospital, Inc. f/k/a Takoma Hospital, Inc., et al.**
**v.**
**Purdue Pharma, L.P., et al.**

Dear Mr. Shephard:

Enclosed is a Summons issued to Noramco, Inc. in the above captioned case. Please certify by placing your seal on the Summons, then return to me in the self-addressed stamped envelope which I have provided, and I will forward to the Secretary of State for service.

Sincerely,

Gary E. Brewer

/rpj

Enclosure

**IN THE CIRCUIT COURT FOR GREENE COUNTY, TENNESSEE**
**AT GREENEVILLE**

---

TAKOMA REGIONAL HOSPITAL, INC.,
F/K/A TAKOMA HOSPITAL, INC., *et al.*,

Plaintiffs,

vs. No. CC19CV295 BB

PURDUE PHARMA L.P., *et al.*,

Defendants.

---

**CONSENT MOTION FOR ORDER EXTENDING TIME TO FILE RESPONSE**

---

Defendant Rite Aid of Maryland, Inc. ("Rite Aid"), by its undersigned counsel, moves for a Consent Order extending the time to file its response to the Complaint. In support thereof, Rite Aid states as follows:

1. Plaintiffs have agreed to a Consent Order (attached hereto) extending the time for Rite Aid to file its response to the Complaint until October 1, 2019.

2. This extension is not sought for delay but made in the interest of judicial economy. Rite Aid has not previously requested any extension of time to respond to the Complaint in this case.

3. Rite Aid, in seeking a Consent Order extending the time to file its response to the Complaint, does not waive any of its defenses to this action, including, but not limited to, lack of personal jurisdiction or improper venue. All such defenses are specifically reserved. Further, Rite Aid does not waive its right to timely remove this action to federal court.

FILED
TIME 4pm
AUG 22 2019
[signature]
Circuit Court Clerk

**CERTIFICATE OF SERVICE**

I do hereby certify that I served all parties to this motion via email with a true and correct copy of the foregoing document on this the 22nd day of August, 2019.

By: ______________________

Larry H. Montgomery (#9579)
GLANKLER BROWN, PLLC
6000 Poplar Ave., Suite 400
Memphis, TN 38119
(901) 576-1718 Telephone
(901) 525-2389 Facsimile
lmontgomery@glankler.com
jalpert@glankler.com

4841-4307-1906, v. 1

**IN THE CIRCUIT COURT FOR GREENE COUNTY, TENNESSEE AT GREENVILLE**

TAKOMA REGIONAL HOSPITAL, INC. F/K/A TAKOMA HOSPITAL, INC., AMISUB (SFH), INC., BAPTIST WOMENS HEALTH CENTER, LLC, CAMPBELL COUNTY HMA, LLC, CLARKSVILLE HEALTH SYSTEM, G.P., CLEVELAND TENNESSEE HOSPITAL COMPANY, LLC, COCKE COUNTY HMA, LLC, DICKENSON COMMUNITY HOSPITAL, HAWKINS COUNTY MEMORIAL HOSPITAL F/K/A HAWKINS COUNTY MEMORIAL HOSPITAL, JEFFERSON COUNTY HMA, LLC, JOHNSTON MEMORIAL HOSPITAL, INC., LEBANON HMA, LLC F/KA LEBANON HMA, INC., LEXINGTON HOSPITAL CORPORATION, METRO KNOXVILLE HMA, LLC, MOUNTAIN STATES HEALTH ALLIANCE F/K/A JOHNSON CITY MEDICAL CENTER HOSPITAL, INC., NORTHEAST TENNESSEE COMMUNITY HEALTH CENTERS, INC., NORTON COMMUNITY HOSPITAL, SAINT FRANCIS HOSPITAL — BARTLETT, INC. F/KA TENET HEALTH SYSTEM BARTLETT, INC., SHELBYVILLE HOSPITAL COMPANY, LLC F/K/A SHELBYVILLE HOSPITAL CORPORATION, SMYTH COUNTY COMMUNITY HOSPITAL, TULLAHOMA HMA, LLC F/K/A TULLAHOMA HMA, INC., and WELLMONT HEALTH SYSTEM F/K/A BRMC/HVHMC, INC.,

Plaintiffs.

v.

PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY; RICHARD SACKLER; BEVERLY SACKLER; DAVID SACKLER; ILENE SACKLER LEFCOURT, JONATHAN SACKLER; KATHE SACKLER; MORTIMER D.A. SACKLER; THERESA SACKLER; JOHN STEWART; MARK TIMNEY; CRAIG LANDAU; RUSSELL GASDIA; ANDREW T. STOKES; AMNEAL PHARMACEUTICALS, LLC; AMNEAL PHARMACEUTICALS, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON;

No.: CC19CV295BB

JURY TRIAL DEMANDED

FILED
TIME 2:55pm
AUG 23 2019
C. Snapp and Taylor
Circuit Court Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been delivered to all counsel for parties at interest in this cause by placing a copy of the same in the Unites States mail, postage prepaid, in a properly addressed envelope, or by delivering same to each such attorney as follows:

| | |
|---|---|
| ☐ Hand<br>☑ Mail<br>☐ Fax<br>☐ FedEx<br>☐ Email | Gary E. Brewer, Esq.<br>Brewer & Terry, P.C.<br>1702 W Andrew Johnson Hwy<br>Morristown, TN 37814-3737<br>Attorney for Plaintiffs<br>robin@brewerandterry.com |
| ☐ Hand<br>☑ Mail<br>☐ Fax<br>☐ FedEx<br>☐ Email | John A. McCauley, Esq.<br>Venable, LLP<br>750 East Pratt Street, Suite 900<br>Baltimore, Maryland 21202<br>jamccauley@venable.com<br>Attorney for defendants<br>Abbott Laboratories Inc<br>And Abbott Laboratories |
| ☐ Hand<br>☑ Mail<br>☐ Fax<br>☐ FedEx<br>☐ Email | Roger Dickson, Esq.<br>Miller & Martin PLLC<br>Volunteer Building Suite 1200<br>Chattanooga, TN 37402-2289<br>roger.dickson@millermartin.com<br>Attorney for defendant<br>Amerisourcebergen Drug Corporation<br>And Cardinal Health Inc. |
| ☐ Hand<br>☑ Mail<br>☐ Fax<br>☐ FedEx<br>☐ Email | Nathan Bicks, Esq.<br>Burch, Porter & Johnson, PLLC<br>130 North Court Ave<br>Memphis TN 38103<br>nbicks@bpjlaw.com<br>Attorney for defendants<br>CVS Health Corporation<br>CVS Indiana LLC and<br>CVS Pharmacy Inc |
| ☐ Hand<br>☑ Mail<br>☐ Fax<br>☐ FedEx | Joshua Hoeppner, Esq.<br>201 West Sullivan Street<br>Kingsport, TN 37660<br>Josh@HoeppnerLaw.com |

HODGES DOUGHTY & CARSON
ATTORNEYS

August 22, 2019

**Via Hand-Delivery**
Mr. Christopher Shepard
Greene County Circuit Court Clerk
101 South Main Street
Suite 302
Greeneville, TN 37743

Re: ***Takoma Regional Hospital, Inc. et al. v. Purdue Pharma, L.P. and Andrew Stokes, et al.***
**Greene County Circuit Court Docket No.: CC19CV295BB**

Dear Mr. Shepard:

Please find enclosed for filing a ***Motion for Extension of Time to File Responsive Pleading*** and an ***Agreed Order Permitting Defendant Andrew T. Stokes Through October 1, 2019 to File Responsive Pleading*** in the captioned case.

Thank you for your cooperation and assistance in this matter. Should you have any questions or need additional information, please do not hesitate to contact me.

Very truly yours,

**HODGES, DOUGHTY & CARSON, PLLC**

Joshua J. Bond

JJB/mrm

Enclosures

cc: Gary E. Brewer, Esq.
John A. McCauley, Esq.
Roger Dickson, Esq.
Nathan Bicks, Esq.
Joshua Hoeppner, Esq.
John W. Reis, Esq.
Janelle Geddes, Esq.
Matthew B Evans, Esq.

FILED
TIME 2:55pm
AUG 23 2019
C Shepard
Circuit Court Clerk

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC., et al. | : | |
| | : | |
| Plaintiffs, | : | NO. CC19CV295BB Jury Demanded |
| | : | |
| V. | : | |
| | : | |
| PURDUE PHARMA, L.P., et al. | : | **WAIVER OF SERVICE** |

TO: Richard Sackler
Beverly Sackler
David Sackler
Ilene Sackler Lefcourt
Jonathan Sackler
Kathe Sackler
Mortimer D.A.Sackler
Theresa Sackler
c/o Robert Chapski, Esq.
Lewis, Thomason, King, Krieg & Waldrop, P.C.
424 Church St.
Suite 2500
P.O. Box 198615
Nashville, TN 37219

FILED
TIME 10:40a
AUG 23 2019
C Shepard Clerk
Circuit Court Clerk

I acknowledge receipt of your request that I waive service of a summons in the action of *Takoma Regional Hospital Inc. f/k/a Takoma Hospital, Inc., et al., Pudue Pharma, L.P., et al.*, which is case number CC19CV295BB in the Circuit Court of the State of Tennessee in and for the County of Greene at Greeneville. I also have received a copy of the complaint in the action and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the persons on whose behalf I am acting) be served with judicial process in the manner provided by the Tennessee Rules of Civil Procedure.

**BREWER AND TERRY, P.C.**
Attorneys at Law
1702 W. Andrew Johnson Highway
P. O. Box 2046
Morristown, TN 37816-2046

GARY E. BREWER
STEVEN W. TERRY
steve@brewerandterry.com

TELEPHONE (423) 587-2730
TELECOPIER (423) 585-0427

August 20, 2019

Christopher Shepard
Circuit Court Clerk
101 S. Main Street, Suite 302
Greeneville, TN 37743

**RE: Takoma Regional Hospital, Inc. f/k/a Takoma Hospital, Inc., et al.**
**v.**
**Purdue Pharma, L.P., et al.**

Dear Mr. Shepard:

You will find enclosed a Waiver of Service that the attorney for the eight Sackler defendants has signed. I would appreciate it if you would file the Waiver of Service in the record in this case.

Sincerely,

Gary E. Brewer

/rpj

Enclosure

FILED
TIME 10:40
AUG 23 2019
Chris Shepard
Circuit Court Clerk

FILED
TIME 4pm
AUG 23 2019
C Shepard [signature]
Circuit Court Clerk

JOHN STEWART BL.
2847 HARBOR
VENTURA, CA. 93001
805-642-8160
jhstewartiv@hotmail.com

TRE HARGETT
STATE CAPITOL
NASHVILLE, TENN. 37243-1102
615-741-2819

REF: CASE# CC19CV295-BB
SOS SUMMONS#: 0778529
CERTIFIED # 70180360000076091527
TAKOMA HOSPITAL V. PURDUE PHARMA.

GENTLEMEN -
I AM NOT THE "JOHN STEWART" YOU ARE SEEKING. I WAS SERVED LAST WEEK ON THIS. I SPOKE TO THE PLAINTIFF'S ATTORNEY, WHO TOLD ME, TO DISREGARD THIS.

REGARDS -

JOHN H. STEWART IV
DOB: 6/25/41
[signature]

Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

STEWART, JOHN
2847 HARBOR BLVD
VENTURA, CA 93001-4103

07/31/2019

RE: TAKOMA REGIONAL HOSPITAL, INC. f/k/a TAKOMA HOSPITAL, INC. et al.

VS: PURDUE PHARMA, L.P. et al.

## Notice of Service

The enclosed process, notice or demand is hereby officially served upon you by the Tennessee Secretary of State pursuant to Tennessee law. Please refer to the process, notice or demand for details concerning the legal matter. If you have any questions, please contact the clerk of the court that issued the process, notice or demand.

The process, notice or demand may have a court date and time that you must appear to defend yourself or the number of days from the date of service by which you are required to file an answer. Failure to appear in court at the time specified or failure to file an answer in the given time could result in a default judgement being rendered against you for relief sought in the lawsuit.

The Secretary of State's office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Tre Hargett
Secretary of State

Enclosures: Original Documents

**DOCUMENT INFORMATION**

SOS Summons # : 07784529
Case #: CC19CV295 BB
Certified #: 70180360000076091527

IN THE CIRCUIT COURT OF GREENE COUNTY, TENNESSEE

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. f/k/a, TAKOMA HOSPITAL, INC., et al. | ) | |
| Plaintiffs, | ) | Case No. CC19CV295BB |
| v. | ) | |
| PURDUE PHARMA, L.P., et al., | ) | |
| Defendants. | ) | |

**CONSENT MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Plaintiffs and Defendant H.D. Smith, LLC hereby move for an extension of time through and including October 1, 2019, for H.D. Smith, LLC to respond to the Complaint in this matter. In support of this Motion, Plaintiffs and Defendant H.D. Smith, LLC assert the following:

1. H.D. Smith, LLC was served with Plaintiffs' Summons and Complaint on or about August 16, 2019. Pursuant to Tennessee Rule of Civil Procedure 12, H.D. Smith's response to the Complaint is due on or before September 16, 2019.

2. The Complaint, which is brought by 22 named plaintiffs, contains 1,096 paragraphs of allegations over 336 pages and asserts six causes of action against dozens of defendants (and numerous distinct groups of defendants). Given the Complaint's length and complexity, defendants need additional time to respond to it.

3. Plaintiffs do not oppose the extension of time requested herein.

4. This Motion is filed in good faith and not for the purpose of unnecessary delay, and the granting of this Motion will not prejudice Plaintiffs.

**WHEREFORE**, it is respectfully requested that this Court grant Defendant H.D. Smith, LLC an extension of time up to and including October 1, 2019, to respond to the Complaint filed in this action.

FILED
TIME 12:23 pm
AUG 23 2019
Circuit Court Clerk

18028874v1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that an exact copy of this pleading has been served upon counsel for all parties in this action, or upon said parties themselves as required by law, by delivering a copy thereof, or by depositing a copy of the same in the United States Mail, with sufficient postage affixed thereto to ensure delivery to the following:

Gary E. Brewer
Brewer & Terry, P.C.
1702 W. Andrew Johnson Highway
Morristown, TN 37814

Nathan Bicks
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103

This the 22nd day of August, 2019.

**MILLER & MARTIN PLLC**

By: ______________________

**IN THE CIRCUIT COURT FOR GREENE COUNTY
AT GREENEVILLE, TENNESSEE**

**TAKOMA REGIONAL HOSPITAL INC.,
*et al.*,**

**Plaintiffs,**

**v.** **No. CC19CV295BB**

**PURDUE PHARMA L.P., *et al.***

**Defendants.**

**CONSENT ORDER EXTENDING TIME TO FILE RESPONSE**

It appearing to the Court, as evidenced by the signatures of counsel for the parties below, that there is no opposition to the request of the Defendants The Kroger Co., Kroger Limited Partnership II, Walmart Inc., Wal-Mart Stores East, LP, and Walgreens Boots Alliance, Inc. (the "Kroger, Walmart, and Walgreens Defendants") for an extension of time to file their response to the Complaint, the Court finds that the Kroger, Walmart, and Walgreens Defendants' request for an extension of time to file their response should be granted.

Nothing in this Order shall be construed as a waiver of any defenses available to the Kroger, Walmart, and Walgreens Defendants including, but not limited to, the right to challenge personal jurisdiction in this matter.

It is, therefore, ORDERED that the Kroger, Walmart, and Walgreens Defendants shall file their response to Plaintiffs' Complaint on or before October 1, 2019.

ENTERED this 20 day of August, 2019.

FILED
TIME 11:30 a
AUG 23 2019
Circuit Court Clerk



MB 538

Los Angeles, CA 90071-2452
T: 213.489.3939
F: 213.243.2539
cjlovrien@jonesday.com
sgconway@jonesday.com

*Attorneys for Defendants Walmart Inc. and Wal-Mart Stores East, LP*

Matthew J. Evans signed w/ permission John V. Harper

Matthew J. Evans (BPR #017973)
Paige Coleman (BPR #032690)
KAY GRIFFIN, PLLC
900 S. Gay Street, Suite 802
Knoxville, Tennessee 37902
(865) 314-8422
(865) 320-0894

*Counsel for Walgreens Boots Alliance, Inc.*

* *denotes national counsel who will seek pro hac vice admission*

Gary E. Brewer signed w/ permission John V. Harper

Gary. E. Brewer (#000942)
1702 W. Andrew Johnson Highway
Morristown, Tennessee 37814
Telephone: 423-587-2730
robin@brewerandterry.com

John W. Barrett
Sterling Starns
David McMullan, Jr.
Richard Barrett
404 Court Square North
Lexington, Mississippi 39095
Telephone: 662-834-9168
donbarrettpa@gmail.com

Warren Burns

## CERTIFICATE OF SERVICE

I do hereby certify that I served on all parties to this motion a true and correct copy of the foregoing document electronically, and on plaintiffs' counsel via United States Mail, First Class Postage prepaid, this the 13th day of August, 2019.

Josh Hoeppner B.P.R. #028908
Hoeppner Law PLLC
201 West Sullivan Street
Kingsport, TN 37660
Josh@HoeppnerLaw.com
(423) 247-6151

Gmail

Josh Hoeppner <josh@hoeppnerlaw.com>

## consent order

**Matthew Evans** <Matthew.Evans@kaygriffin.com> Mon, Aug 12, 2019 at 3:50 PM
To: Josh Hoeppner <josh@hoeppnerlaw.com>
Cc: Paige Coleman <Paige.coleman@kaygriffin.com>

Josh-
I have reviewed the pleading and you may sign our names to the pleading with permission and on behalf of Walgreen's.
Please forward a copy of the filed pleadings to us by email. Thanks for your help. Matthew

Matthew J Evans
Member
Kay Griffin PLLC

matthew.evans@kaygriffin.com

p. 865.314.8422 f: 865.320.0894

900 S. Gay St. Suite 802, Knoxville, TN 37902

Website

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (615) 742-4800 and return the message to us via e-mail. Thank you.

Sent from my BlackBerry - the most secure mobile device

[Quoted text hidden]

CERTIFICATE OF CLERK

I, Chris Shephard Clerk of Circuit Court for Greene County, do hereby certify that a true and exact copy of these documents have been served upon

Josh Hoeppner, Esq (SASE)

Janelle Geddes, Esq @ 51 Louisiana Avenue NW, Washington, Washington DC 20001-2113

Mattew J Evans, Esq @ 900 S Gay Street Suite-802, Knoxville TN 37902

Gary Brewer, Esq @ 1702 W Andrew Johnson Hwy, Morristown TN 37814

by placing a true and exact copy in the U.S. Mail, or by hand delivery, with sufficient postage to carry same to its destination.

This the 28th day of August, 2019

Chris Shepard

Clerk

Tonya Stills

Deputy Clerk

**IN THE CIRCUIT COURT FOR GREENE COUNTY
AT GREENVILLE, TENNESSEE**

**TAKOMA REGIONAL HOSPITAL INC.,
*et al.*,**

**Plaintiffs,**

**v.**

**No. CC19CV295BB
JURY DEMANDED**

**PURDUE PHARMA L.P., *et al.***

**Defendants.**

**CONSENT ORDER EXTENDING TIME TO FILE RESPONSE**

It appearing to the Court, as evidenced by the signatures of counsel for the parties below, that there is no opposition to Defendants CVS Health Corporation, CVS Pharmacy, Inc., and CVS Indiana, L.L.C.'s ("CVS Defendants") request for an extension of time to file their response to the Complaint, the Court finds that CVS Defendants request for an extension of time to file their response should be granted.

Nothing in this Order shall be construed as a waiver of any defenses available to CVS Defendants including, but not limited to, the right to challenge personal jurisdiction in this matter.

It is, therefore, ORDERED that the CVS Defendants shall file their response to Plaintiffs' Complaint on or before October 1, 2019.

ENTERED this 20 day of ~~July~~ Aug., 2019.

Beth Boniface
CIRCUIT COURT JUDGE

LODGED
DATE 8-5-19
TIME 8am
C Shepard / Walker
CIRCUIT COURT CLERK
(CIRCUIT, CRIMINAL, SESSIONS, JUVENILE)

FILED
TIME 11:36 A.m.
AUG 2 3 2019
Chris Shepard by D Justis
CIRCUIT COURT CLERK

New Orleans, Louisiana 70130
Telephone: 504-799-2845

Jonathan W. Cuneo
Monica Miller
Mark H. Dubester
David L. Black
Jennifer E. Kelly
Evelyn Li.
4725 Washington, D.C. 20016
Telephone: 202-789-3960

Steve Martino
51 St. Joseph St.
Mobile, Alabama 36602
Telephone: 251-433-3131

Gerald M. Abdalla, Jr.
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: 601-487-4590

*Attorneys for all Plaintiffs*

**CERTIFICATE OF SERVICE**

I do hereby certify that I served on the counsel of record or parties a true and correct copy of the foregoing document via United States Mail, First Class Postage prepaid, this the 2nd day of August 2019.

Ryan G. Saharovich

# CERTIFICATE OF CLERK

I, Chris Shephard __________ Clerk of Circuit Court for Greene ______ County, do hereby certify that a true and exact copy of these documents have been served upon

Nathan Bicks, Esq @ 130 North Court Avenue, Memphis TN 38103

Gary Brewer, Esq @ 1702 W Andrew Johnson Hwy, Morristown TN 37814

by placing a true and exact copy in the U.S. Mail, or by hand delivery, with sufficient postage to carry same to its destination.

This the 28th day of August ________, 20 19

Chris Shepard __________
Clerk

Tonya Stills
Deputy Clerk

FILED
TIME 11:05am
AUG 26 2019
Circuit Court Clerk

**IN THE CIRCUIT COURT FOR GREENE COUNTY**
**AT GREENEVILLE, TENNESSEE**

| | | |
|---|---|---|
| TAKOMA REGIONAL HOSPITAL, INC. F/K/A TAKOMA HOSPITAL, INC., *et al.* | ) | |
| Plaintiffs, | ) | |
| vs. | ) | JURY DEMAND No. CC19CV295BB |
| PURDUE PHARMA L.P., *et al.* | ) | |
| Defendants. | ) | |

---

**NOTICE OF SPECIAL LIMITED APPEARANCE OF COUNSEL FOR DEFENDANTS RICHARD SACKLER, BEVERLY SACKLER, DAVID SACKLER, ILENE SACKLER LEFCOURT, JONATHAN SACKLER, KATHE SACKLER, MORTIMER D.A. SACKLER AND THERESA SACKLER**

---

Without prejudice and reserving all rights and defenses, notice is hereby given of the special limited appearance of Robert F. Chapski, Whitney Henry Kimerling, Albert C. Harvey, Justin N. Joy and Mark A. Castleberry of the law firm of Lewis, Thomason, King, Krieg & Waldrop, P.C., as counsel for Defendants Richard Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler and Theresa Sackler in the above-styled case. By filing this Notice, the undersigned are putting the Court and the parties on notice of the undersigned's involvement, and Defendants are hereby reserving any and all defenses, both substantive and procedural, that the Defendants may have in this cause. Counsel notes, without waiving any other rights or defenses, that the Defendants assert and reserve any and all defenses to this matter, including those on the bases of improper venue and lack of jurisdiction. The clerk is requested to direct all mailings and notices in this case to

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all parties at interest in this cause as follows:

☒ By placing postage prepaid envelope in United States Mail Service, addressed to:

**Attorneys for All Plaintiffs:**

Gary E. Brewer, Esq.
BREWER & TERRY, P.C.
1702 W. Andrew Johnson Highway
Morristown, TN 37814

John W. ("Don") Barrett, Esq.
Sterling Starnes, Esq.
David McMullan, Jr., Esq.
Richard Barrett, Esq.
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

Warren Burns, Esq.
BURNS CHAREST, LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202

Korey A. Nelson, Esq.
Lydia A. Wright, Esq.
Rick Yelton, Esq.
BURNS CHAREST, LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130

Jonathan W. Cuneo, Esq.
Monica Miller, Esq.
Mark H. Dubester, Esq.
David L. Black, Esq.
Jennifer E. Kelly, Esq.
Evelyn Li, Esq.
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

**For Defendant Andrew T. Stokes**

Current service information and address unknown.

**For Amneal Pharmaceuticals Defendants**

Current service information and address unknown.

**For Teva Defendants**

Current service information and address unknown.

**For Defendant Cephalon, Inc.**

Current service information and address unknown.

**For Defendant Johnson & Johnson**

Current service information and address unknown.

**For Janssen Defendants**

Current service information and address unknown.

**For Abbott Laboratories Defendants**

Current service information and address unknown.

**For Defendant Assertio Therapeutics, Inc.**

Current service information and address unknown.

**For Endo Defendants**

Current service information and address unknown.

**For Mallinckrodt Defendants**

Current service information and address unknown.

**For Defendant SpecGx, LLC**

Current service information and address unknown.

**For Kroger Defendants**

Joshua Hoeppner, Esq.
Hoeppner Law, PLLC
201 West Sullivan Street
Kingsport, TN 37660

**For CVS Defendants:**

Nathan A. Bicks, Esq.
Ryan G. Saharovich, Esq.
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, TN 38103

**For Wal-Mart Defendants**

Janelle J. Geddes, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, Washington, D.C. 20001

**For Defendant Walgreens Boots Alliance, Inc.**

Matthew B. Evans, Esq.
Evans & Beier, LLP
818 West 1st North Street
Morristown, TN 37814

**For Defendant Noramco**

Current service information and address unknown.

**For Defendant P & S Pharmacy**

Current service information and address unknown.

**For Defendant Lowell B. Grizzle**

Current service information and address unknown.

**For Defendant Henry Babenco**

Current service information and address unknown.

LEWIS THOMASON

424 Church Street
Suite 2500
Nashville, TN 37219
T: (615) 259-1366 F: (615) 259-1389

**Robert F. Chapski**
DL: (615) 259-1378
rchapski@LewisThomason.com

August 23, 2019

Mr. Christopher Shepard, Clerk
Greene County Circuit Court
101 South Main Street
Greeneville, TN 37743

**RE: <u>Takoma Regional Hospital, Inc. v. Richard Sackler, Jonathan Sackler, David Sackler, and Beverly Sackler, et al.</u>**
**Greene County Circuit Court No. CC19CV295BB**

Dear Mr. Shepard:

Please file the enclosed the *Notice of Special Limited Appearance of Counsel for Defendants Richard Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler and Theresa Sackler* in the above-referenced matter. I have enclosed an additional copy that I would ask you stamp "filed" and return to me in the self-addressed stamped envelope.

Thank you for your attention to this matter and do not hesitate to contact me if you have any questions or concerns. Best regards.

Sincerely,

Robert F. Chapski

RFC/sps
Enclosure

**FILED**
TIME 11:06
AUG 26 2019
Chris Shepard / J Barner
Circuit Court Clerk

**State of Tennessee**
**Circuit Court of Greene County**
**at Greeneville**

TAKOMA REGIONAL HOSPITAL, INC.
f/k/a TAKOMA HOSPITAL, INC., et al.

Plaintiffs,

NO. CC19CV295BB
Jury Demanded

V.

PURDUE PHARMA, L.P., et al.

Defendants.

**ALIAS SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

**TO:** **Purdue Pharma, Inc.**
**c/o United Corporate Services, Inc.**
**10 Bank Street, Suite 560**
**White Plains, New York, 10606**

**Method of Service:**
**TN Department of State**
**Division of Business Services**
**Summons Section**
**6th Floor, William R. Snodgrass Tower**
**Nashville, TN 37243**

You are hereby summoned and required to serve upon Gary E. Brewer, plaintiffs' attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046, a true copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Issued this the 26th day of August 2019, 2019, at 3:30 o'clock P.M.

C Shepard
Clerk

[signature]
Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)

Received this the ___ day of ____________, 2019. ________________________
Deputy Sherriff

**RETURN ON SERVICE OF SUMMONS**

I hereby certify and return that on the _____ day of ____________, 2019, I served this summons together with the Complaint as follows: __________________________________________

failed to serve this summons within 30 days after its issuance because ________________________

**NOTICE**

(1) The original answer shall be filed with the Clerk of the Court simultaneously with service on plaintiffs' attorney.
(2). All original exhibits filed with the answer shall be filed with the Clerk of the Court.